

FILED BY_____D.C.

JUN 2 5 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| ALBERT J. SANTORO, ESQ., <br><br> Plaintiff, <br><br> v. <br><br> BRIAN L. TANNEBAUM, ESQ., BAST AMRON, L.L.P, DAVID A. ROTHSTEIN, ESQ., DIMOND KAPLAN & ROTHSTEIN, P.A., PETER J. TREMATERRA, THE PETER J. TREMATERRA FAMILY TRUST, ERIC J. NEUMAN, ESQ., PJT HOLDINGS, LLC, CHRISTOPHER D. BROWN, ESQ., BRENDAN EVERMAN, ESQ., ONE MIAMI MASTER ASSOC., INC., MARQUIS ASSOCIATION MANAGEMENT, LLC, CARLOS RUIZ, LORRAINE KYRIAZIS, MARC MAGID, JOSEPH LASICKI, MARTIN FENTON, MICHELLE WHITE, SONALI DESAI, WALTER CLARK, JOHN DOE a.k.a. ALEX WAR, ROBERT SZUMILAS, and VIOLETTA SZUMILAS, <br><br> Defendants. | Case No. _:25-cv-_____-___ <br><br> **COMPLAINT FOR CONSPIRACY TO PARTICIPATE AND PARTICIPATION IN AN ENTERPRISE ENGAGED IN A PATTERN OF RACKETEERING ACTIVITY IN VIOLATION OF FLORIDA'S RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (FL STAT. § 895), EXTORTION (FL STAT. § 836) TAMPERING WITH A WITNESS (FL STAT. § 914), INTERCEPTION OF WIRE, ORAL, OR ELECTRONIC COMMUNICATIONS (FL STAT. § 934), THEFT (FL STAT. § 812), FALSIFICATION OF BUSINESS RECORDS (FL STAT. § 817), CIVIL CONSPIRACY, ABUSE OF PROCESS, CONVERSION, TORTIOUS INTERFERENCE, INVASION OF PRIVACY, DEFAMATION, BREACH OF FIDUCIARY DUTY, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, UNJUST ENRICHMENT, AND AIDING AND ABETTING DEFAMATION** |

Plaintiff, Albert J. Santoro, Esq. ("Plaintiff"), files his complaint against Defendants Brian

L. Tannebaum, Esq., Bast Amron, L.L.P., David A. Rothstein, Esq., Dimond, Kaplan, and

Rothstein, P.A., Peter J. Trematerra, The Peter J. Trematerra Family Trust, Eric J. Neuman, Esq.,

1

PJT Holdings, LLC, Christopher D. Brown, Esq., Brendan Everman, Esq., One Miami Master Association, Inc., Marquis Association Management, LLC, Carlos Ruiz, Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas (collectively as the "Defendants"), respectfully demands a jury trial, and alleges the following:

## I. SUMMARY OF LITIGATION

### Wealth, Greed, Arrogance and a Ruthless Pursuit to Win at Any Cost

When a wildly successful and brilliant businessman decides that his hundreds of millions of lawfully earned dollars are not enough and instead chooses to misuse, mislead and defraud the courts and multiple attorney disciplinary agencies by knowingly filing false criminal allegations, meritless lawsuits, and baseless complaints in a ruthless pursuit "to win at any cost", he is no longer a businessman. He is a criminal. Peter J. Trematerra is a criminal.

When respected and highly-accomplished attorneys are blinded by avarice and a limitless green waterfall of millions of dollars in legal fees so much so that they forgo their ethical oaths and exceed the lawful bounds of zealous advocacy by knowingly participating in the filing and prosecution of false and frivolous lawsuits, criminal allegations and bar complaints, witness tampering, wire fraud, suborning perjury, and illegal surveillance, they are no longer advocates. They are criminals. David A. Rothstein, Esq., Brian L. Tannebaum, Esq., and Eric J. Neuman, Esq. are criminals.

When legitimate businesses, acclaimed law firms, condominium association boards, condominium management companies and usually law-abiding individuals cease their lawful, faithful and valuable service to their customers, their clients and their community to instead engage

in extortion, illegal surveillance, theft, falsification of business records, and witness tampering, they are no longer legitimate businesses and lawful associations.  They are criminal associations. Dimond, Kaplan, Rothstein, P.A., Bast Amron, LLP, PJT Holdings, LLC, The Peter J. Trematerra Living Trust, One Miami Master Association, Marquis Association Management, LLC and the individuals joining, aiding, and abetting them are criminal associations.

When individuals turn a blind eye to, join forces and share a "common interest" with Defendant Walter Clark after he **threatened to murder the Plaintiff's wife and 10-month-old infant son** by terrorizing them, "If I see your lying whore wife and bastard son in the garage, I might run over them with my car" they are lost and morally bankrupt card-carrying members of a criminal mob.

The Defendants, their proxies, and non-party co-conspirators, acting in concert and individually, as principals and/or aiding and abetting the principals, entered into criminal associations with express agreements to file false criminal[1] and Unlicensed Practice of Law[2] allegations in N.Y. and FL, to file false ethics' complaints with the Bars of N.Y., D.C., and FL[3], and to file false and frivolous civil claims in FL[4] all with the agreed purpose of decimating the Plaintiff's personal and professional reputations, having him falsely arrested for fictional criminal allegations, disbarred and/or barred from practicing law in multiple jurisdictions, extorting him, interfering with his business relationships, and defaming and humiliating him in the eyes of his clients, neighbors, the legal community, and the public at large.

This lawsuit seeks to hold the Defendants accountable for their unlawful and tortious conduct.

---

[1] No charges by any law enforcement or governmental authority were ever filed against the Plaintiff.
[2] All UPL complaints were closed without any action taken against the Plaintiff.
[3] All Bar complaints in all jurisdictions were closed without any action taken against the Plaintiff.
[4] All civil claims filed against the Plaintiff were dismissed.

## II. PARTIES

1.    Defendant Brian L. Tannebaum. Esq. ("Tannebaum") is an attorney licensed to practice law in the State of Florida and publicly promotes himself as representing law firms and attorneys in legal ethic's matters.[5]  He resides and maintains law offices in Miami, Florida.



ABOUT BRIAN TANNEBAUM



**Brian L. Tannebaum**

1 SE Third Avenue,
Suite 1400 · Miami, Florida 33131
305-374-7850
btannebaum@tannebaum.com
www.tannebaum.com

### Background

Brian Tannebaum represents law firms as well as future, current, and former lawyers and legal professionals in matters before the Florida Bar and Board of Bar Examiners and in civil and criminal courts.

Specific ethics matters include Bar Admission Hearings, Grievance Defense from the initial complaint to argument before the Florida Supreme Court, Reinstatement and Readmission matters, Sanctions Hearings, Legal Malpractice Defense, partnership disputes and dissolutions as well as ethics opinions. He has been counsel in over 50 Florida Bar matters at The Florida Supreme Court level and has been appointed in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida as a Special Master.

### Bar Admissions

✓  Admitted to practice in Florida (1995)
✓  U.S. District Court for the Southern District of Florida (1995)
✓  The United States Supreme Court (1998)

### Education

* Stetson University College of Law
  Gulfport, Florida
  Juris Doctor 1994

* 1994 National Champion, ABA Criminal Justice Trial Advocacy Competition, Chicago, Illinois; Teaching Assistant, Trial Practice.

* University of South Florida
  Tampa, Florida
  B.A. Political Science, 1991

* Student Body President, 1989-1991.

### Employment

✓  General Counsel and Special Counsel
   Chair, Ethics, Professional Responsibility and White Collar Defense Group.
   December 2016 – Present
   Bast Amron, LLP
   Miami, Florida

✓  Concentration on representation of the legal profession in Florida Bar Admission & Defense, Legal Malpractice Defense, Sale of Law Practice, Partnership Disputes, Fee Disputes, Ethics Opinions and State and Federal Criminal Defense.
   Managing Partner
   December 2002-December 2016
   Tannebaum Weiss, PL
   Miami, Florida

✓  Concentration on representation of the legal profession in Florida Bar Admission & Defense, Legal Malpractice Defense, Sale of Law Practice, Partnership Disputes, Fee Disputes, Ethics Opinions and State and Federal Criminal Defense.
   Attorney at Law
   March 1998-December 2002
   Brian L. Tannebaum, P.A.
   Of Counsel, Thornton & Rothman. P.A.
   Miami, Florida

✓  State and Federal Criminal Defense
   Attorney at Law
   April 1997 – February 1998
   Bast & Lyons, P.A.
   Miami, Florida

✓  State Criminal Defense
   Assistant Public Defender
   December 1994 – April 1997
   Dade County Public Defender's Office
   Miami, Florida

### Professional Associations/Committees

✓  President, Florida Association of Bar Defense Lawyers, 2010-Present
✓  Member, Association of Professional Responsibility Lawyers
✓  Member, Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance for the United States District Court, Southern District of Florida, 2007-2010
✓  President, Florida Association of Criminal Defense Lawyers, 2010-2011
✓  Member, Board of Directors, Florida Association of Criminal Defense Lawyers, 2001-Present
✓  Legislative Chair, Florida Association of Criminal Defense Lawyers, 2003-2007
✓  President, Miami Chapter, Florida Association of Criminal Defense Lawyers, 2005-2006
✓  Executive Council, Florida Bar Criminal Law Section, 2008-present
✓  Member, Board of Directors, Dade County Bar Association, 2002-2005
✓  Member, Florida Bar Criminal Procedure Rules Committee, 2006-2012
✓  Chair, Florida Bar Traffic Rules Committee, 2003-2004
✓  Vice-Chair, Florida Bar Grievance Committee, 2002-2003
✓  Member, Florida Bar Grievance Committee, 2000-2003
✓  Member, National Association of Criminal Defense Lawyers.

### Community Organizations

✓  Chair-elect and Member, Board of Directors, Florida Innocence Project
✓  Past Chair, Historical Museum of Southern Florida 11th Circuit Judicial Historical Society
✓  Past President, Ambassadors of Mercy Hospital Board of Directors.

---

[5]  https://www.tannebaum.com/about

2.      Tannebaum is the owner and operator of Brian L Tannebaum, P.A. ("Tannebaum P.A."), which advertises the provision of legal services in the areas of attorney discipline and admissions. Tannebaum P.A. operates offices located in Miami and Tallahassee, Florida.[6]

3.      Tannebaum is also "General Counsel" and "Special Counsel" to, and agent of, Defendant Bast Amron, L.L.P. ("Bast Amron") which promotes Tannebaum to the general public on their website as the chair of the law firm's "Ethics, Professional Responsibility, and White Collar Defense Group."[1,7] Bast Amron operates a law office in Miami, Florida.



HOME    WHO WE ARE    OUR TEAM    WHAT WE DO

<u><< Back</u>

## BRIAN L. TANNEBAUM

Special Counsel



Brian is the firm's Special Counsel and chairs the Ethics, Professional Responsibility, and White Collar Defense Group. Brian represents law firms as well as future, current, and former lawyers, judges, and legal professionals in matters before the Florida Bar, the Judicial Qualifications Commission, and Board of Bar Examiners as well as in civil and criminal courts. Brian has been counsel in over 100 Florida Bar matters at The Florida Supreme Court level and has been appointed in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida as a Special Master.

---

[6] https://www.tannebaum.com
[7] https://www.bastamron.com/our-team/brian-l-tannebaum/

4.      Tannebaum has served and is presently serving as a Florida Bar Professional Ethics Committee Member until June 6, 2026 [8], "has been counsel in over 50 Florida Bar matters at The Florida Supreme Court level…", is a member of the Association of Professional Responsibility Lawyers, and, from December 2002 until December 2016, "Concentrat[ed] on representation of the legal profession in Florida Bar Admission & Defense…[and] Ethics Opinions." [9]





THE FLORIDA BAR

Rules, Ethics & Professionalism      Search

About The Bar ▾    News & Events ▾    Public ▾    Members ▾    Login    Find a Lawyer

## COMMITTEE MEMBER PROFILE

HOME / ABOUT THE BAR / COMMITTEES / COMMITTEE MEMBER PROFILE

**ABOUT THE BAR**

Frequently Asked Questions

President's Welcome

The Florida Bar Board of Governors

Committees

Sections / Divisions

Board Certification

Florida Voluntary Bars

Florida Registered Paralegals

Strategic Plan / Research

Leadership Academy

Working At The Bar

Contact The Florida Bar

# Brian Lee Tannebaum

Member in Good Standing                         Eligible to Practice Law in Florida

| | |
|---|---|
| Bar Number: | 47880 |
| Mail Address: | Brian L. Tannebaum, P.A.<br>1 SE 3rd Ave Ste 2410<br>Miami, FL 33131-1700<br>Office: 305-374-7850 |
| Email: | btannebaum@tannebaum.com ✉ |
| Personal Bar URL: | https://www.floridabar.org/mybarprofile/briantannebaum |
| vCard: | 📇 |
| County: | Miami-Dade |
| Circuit: | 11 |
| Admitted: | 04/28/1995 |
| 10-Year Discipline History: | None |
| Law School: | Stetson University College of Law, 1994 |

| Committees: | Committee | Office | Term |
|---|---|---|---|
| | Professional Ethics Committee(CM) | | 06/30/2026 |

---

[8] https://www.floridabar.org/about/cmtes/profile/?num=47880
[9] https://www.tannebaum.com/about

5.      Defendant David A. Rothstein, Esq. ("Rothstein") is an attorney licensed to practice law in the State of Florida and is a partner in Defendant law firm, Dimond, Kaplan, and Rothstein, P.A. ("Dimond") that operates in Miami, Florida.  Rothstein resides and maintains a law office in Miami, Florida.  Rothstein is attorney for Defendants Trematerra, PJT, PJT Trust, and Carlos Ruiz.

6.      Rothstein advertises that he is experienced in "Commercial Litigation" and "Class-Action Litigation" [10].



David A. Rothstein
ATTORNEY

**ABOUT DAVID A. ROTHSTEIN**

**David A. Rothstein** was born September 28, 1970 in Yonkers, New York. Mr. Rothstein received his B.A. cum laude in 1992 from the College of the Holy Cross, where he also played varsity basketball and was elected Captain by his teammates as a senior. Mr. Rothstein then attended the University of Miami School of Law, where he served as a member of the University of Miami Law Review and graduated cum laude in 1995.

For the first five years of his practice, Mr. Rothstein worked for Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., one of Florida's premier full-service law firms, where his practice as a trial lawyer involved all aspects of civil litigation. Mr. Rothstein next joined Hanzman & Criden, P.A., where he was promoted to partner and worked closely with The Honorable Michael A. Hanzman, now one of South Florida's most respected trial court judges. Since the Founding of DKR in 2003, Mr. Rothstein has served as the Firm's President and Managing Shareholder. In addition to his managerial responsibilities, Mr. Rothstein has a wide-ranging civil litigation practice and captains a team that handles matters in state court, federal court, and in arbitration proceedings.

Away from work, Mr. Rothstein enjoys spending time with his family, eating well, exercising vigorously, and traveling whenever the opportunity presents itself.

Areas of Practice                                                               —

- Commercial Litigation
- Class-Action Litigation

---

[10] https://dkrpa.com/attorneys/david-a-rothstein/

7.    Defendant Peter J. Trematerra ("Trematerra") is a very wealthy individual, former owner of the sports team the Atlanta Blaze[11], and is associated with more than fifty (50) business entities registered in the State of Florida[12].   Trematerra resides in Singer Island, Palm Beach County, Florida.

8.    Defendant Eric J. Neuman, Esq. ("Neuman") is an attorney licensed to practice law in the States of Florida and New York and advertises "[e]xtensive experience in complex litigation"[13] . Neuman resides and operates a law office in the Southern District of Florida.



ERIC J. NEUMAN

**Practice Area & Professional Experience**

- Extensive experience in complex litigation, with an emphasis on real estate, construction, land use and community association law.
- Eric handles litigation involving a wide variety of claims, including breach of contract, fraud, enforcement of non-compete agreements, tortuous interference with business relationship and breach of fiduciary duty.
- Prosecutes and defends complex, multi-party commercial matters on behalf of global, national, and regional entities, as well as individuals.
- Represents clients in the negotiation and preparation of contracts.
- Assists clients across a broad spectrum of industries, including construction, development, leasing, property management, engineering, architecture, interior design, manufacturing, automotive and insurance.
- Reported Cases: *Beckley v. Best Restorations, Inc.*, 13 So. 3d 125 (Fla. 4th DCA 2009).

---

[11] https://www.collegecrosse.com/2017/11/15/16650216/atlanta-blaze-owner-peter-trematerra-sued-major-league-lacrosse-april-lawsuit-david-gross
[12] https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults?InquiryType=OfficerRegisteredAgentName&inquiryDirectionType=ForwardList&searchNameOrder=TREMATERRAPETERJ%20P120000918041&SearchTerm=trematerra%20Peter&entityId=P12000091804&listNameOrder=TREMATERRAPETER%20P940000860760
[13] https://www.neumanlawfla.com/eric-j-neuman

9.      Defendant PJT Holdings, LLC, is a Florida Limited Liability Company that is owned by Trematerra and maintains its office in Singer Island, Palm Beach County, Florida.

10.     Upon information and belief, Defendant Peter J. Trematerra Family Trust is a Florida Trust ("PJT Trust") sited in Palm Beach County, Florida.

11.     Defendant Christopher A. Brown, Esq. ("Brown") is an attorney licensed to practice law in the State of Florida and is a partner in law firm, Beasley, Demos, and Brown, LLC that operates in Miami, Florida.  Brown resides and maintains a law office in Miami, Florida.

12.     Brown has been at all times relevant to this Complaint and continuing to the present, the attorney of record for Defendant Sonali Desai.

13.     Defendant Brendan Everman, Esq. ("Everman") is an attorney licensed to practice law in the State of Florida and is a partner in law firm, Pryer Cashman, LLP that operates in Miami, Florida.  Everman resides and maintains a law office in Miami, Florida.

14.     Everman has been at all times relevant to this Complaint and continuing to the present, the attorney of record for Defendant Violetta Szumilas.

15.     Everman has been at various times relevant to this Complaint the attorney of record for Robert Szumilas.

16.     Everman has been at various times relevant to this Complaint the attorney for Defendant Joseph Lasicki.

17.     Everman has been at various times relevant to this Complaint the attorney for Defendant Lorraine Kyriazis.

18.     Defendant One Miami Master Association, Inc. ("OMMA") is a Florida Corporation with its principal address in Miami, Florida.

19.     Defendant Marquis Association Management, LLC ("Marquis") is a Florida Limited Liability Company with its offices in Miami, Florida.

20.     Defendant Carlos Ruiz ("Ruiz") is an individual employed in Miami, Florida and residing in Broward County, Florida.

21.     Defendant Lorraine Kyriazis ("Kyriazis") is an individual residing in Miami, Florida.

22.     Defendant Marc Magid ("Magid") is an individual residing in Miami, Florida.

23.     Defendant Joseph Lasicki ("Lasicki") is an individual residing in Miami, Florida.

24.     Defendant Martin Fenton ("Fenton") is an individual residing in Miami, Florida.

25.     Defendant Michelle White ("White") is an individual residing in Miami, Florida.

26.     Defendant Sonali Desai ("Desai") is an individual residing in Miami, Florida.

27.     Desai has claimed to be, at various times relevant to this Complaint, the attorney for Defendant Lasicki.

28.     Desai has claimed to be, at various times relevant to this Complaint, the attorney for Defendant Kyriazis.

29.     Desai has claimed to be, at various times relevant to this Complaint, the attorney for Defendant Violetta Szumilas.

30.     Defendant Walter Clark ("Clark") is an individual residing in Miami, Florida.

31.     Defendant Robert Szumilas ("R. Szumilas") is an individual residing in Miami, Florida.

32.     Defendant Violetta Szumilas ("V. Szumilas") is an individual residing in Miami, Florida.

33.     Defendant John Doe, a.k.a. Alex War ("Doe"), upon information and belief, is one or more individuals, including, but not limited to, Kyriazis, Lasicki, Fenton, Magid, R. Szumilas, and/or V. Szumilas.

34.     Plaintiff Albert J. Santoro, Esq. ("Santoro" and "Plaintiff") is an attorney licensed to practice law in the State of New York, Washington, District of Columbia, and the Commonwealth of Pennsylvania, is admitted to practice before the United States Tax Court, U.S. Court of Appeals for the Second, Third, Eleventh, and Federal Circuits, U.S. District Courts for the Southern District of New York (SDNY), the Eastern District of New York (EDNY), the Northern District of New York (NDNY), and the Western District of New York (WDNY).  Santoro resides in Woodhaven, New York.

### III. NATURE OF ACTION

35.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34 as if fully set forth herein.

36.     This is an action for conspiracy to participate in and participation in one or more criminal enterprises and/or associations, engaging in a continuing pattern of racketeering activity, arising under Florida's Racketeer Influenced and Corrupt Organizations Act (Fl. Stat. § 895) ("RICO") , including, but not limited to, criminal extortion in violation of Fl. Stat. § 836.05, tampering with a witness in violation of Fl. Stat. § 914, interception and disclosure of wire, oral, or electronic communications in violation of Fl. Stat. § 934, falsification of business records in violation of Fl. Stat. § 817, theft in violation of Fl. Stat. § 812, civil conspiracy, abuse of process, conversion, tortious interference with business relationships, defamation, breach of fiduciary, intentional infliction of emotional distress, aiding and abetting defamation, and unjust enrichment.

## IV.  JURISDICTION AND VENUE

37.      Plaintiff re-alleges and incorporates by reference paragraphs 1 through 36 as if fully set forth herein.

38.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiff and each and every defendant ("Diversity Jurisdiction").

39.      This Court also has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO") ("Federal Question Jurisdiction").

40.      This Court has personal jurisdiction over defendants Brian L. Tannebaum, Esq., David A. Rothstein, Esq., Christopher D. Brown, Esq., Brendan Everman, Esq., Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas because said individual defendants reside in Miami, Florida, which is located in the Southern District of Florida.

41.      This Court has personal jurisdiction over defendants Bast Amron, L.L.P., Dimond, Kaplan and Rothstein, P.A., One Miami Master Association, Inc., and Marquis Association Management, LLC, because these business entities operate offices in Miami, Florida, which is located in the Southern District of Florida.

42.      This Court has personal jurisdiction over defendants, Peter J. Trematerra and Eric J. Neuman, Esq., because said individual defendants reside in Palm Beach County Florida, which is located in the Southern District of Florida.

43.     This Court has personal jurisdiction over defendant, PJT Holdings, LLC, because this business entity operates its office in Singer Island, Florida, which is located in the Southern District of Florida.

44.     This Court has personal jurisdiction over defendant, Peter J. Trematerra Family Trust, because, upon information and belief, it is a Florida Trust sited in, and conducts business in, Palm Beach County, Florida, which is located in the Southern District of Florida.

45.     This Court has personal jurisdiction over defendant Carlos Ruiz because said individual defendant resides in Broward County, Florida, which located in the Southern District of Florida.

46.     This Court also has personal jurisdiction over all Defendants because many of the acts complained of herein occurred in whole or in part in and/or emanated from Miami, Florida, which is located in the Southern District of Florida.

47.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because defendants Brian L. Tannebaum, Esq., David A. Rothstein, Esq., Eric Neuman, Esq., Christopher D. Brown, Esq., Brendan Everman, Esq., Carlos Ruiz, Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas reside in this judicial district and because defendants Bast Amron, L.L.P., Dimond, Kaplan, and Rothstein, P.A., PJT Holdings, LLC, One Miami Master Association, Inc., and Marquis Association Management, LLC, maintain their offices in this judicial district.

48.     This Court is also the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

# V.  FACTUAL ALLEGATIONS

## The Trematerra, PJT, and PJT Trust Lawsuits, UPL, and Bar Complaints

49.     Trematerra is the owner, member, manager, and principal of PJT.

50.     Trematerra is the trustee, creator, trustor, and settlor of the PJT Trust.

51.     Trematerra is the alter ego of PJT and the PJT Trust.

52.     Trematerra regularly comingles the assets of Trematerra, PJT and the PJT Trust.

53.     Trematerra regularly uses the assets of PJT and the PJT Trust for his own personal use.

54.     Trematerra regularly pays the expenses of PJT and PJT Trust with his own personal monies.

55.     Trematerra is a serial and vexatious litigator named in at least thirty (30) lawsuits sited in the state of Florida (and associated with many more litigations when other jurisdictions are considered).

56.     Trematerra regularly files meritless lawsuits[14] against companies and individuals with less financial means than him in order to force them to agree to settlements or risk being forced into bankruptcy.

57.     Trematerra stated that he "spends $500,000.00 a year on the 'sport' of litigation."

58.     Upon information and belief, Trematerra regularly uses funds contained in the PJT Trust in order to fund meritless litigation with the purpose of forcing his adversaries into unfavorable settlements or risk being bankrupted by Trematerra.

---

[14] In one example, Trematerra sued a contractor because he "used the wrong glue" in order to avoid paying for expensive renovations to Trematerra's mansion.  Trematerra's efforts were successful and he was able to force a settlement.

59.     Prior to June 7, 2023, PJT was a manager and member of PBM Group Holdings, LLC, a newly created Delaware limited liability company formed for the purpose of opening vegetarian Italian food restaurants ("PBM Group").

60.     Prior to June 7, 2023, PBM Group was owned by Trematerra/PJT and three other members ("Other Members").

61.     As of June 7, 2023, PBM Group was and continues to be to the present date, a near-worthless entity as it did not have any physical location, offices, employees, assets, revenue, or receivables.

62.     On or about June 3, 2023, Plaintiff Santoro was hired by the Other Members and Plant Based Mafia as a manager and Chief Operating Officer of Plant Based Mafia.

63.     On or about June 3, 2023, Santoro, on behalf of Plant Based Mafia and the Other Members, while performing management services pursuant to a written engagement agreement between Plant Based Mafia and the Tranquility Group, LLC., engaged an attorney who advised Plant Based Mafia and the Other Members to expel Trematerra and PJT from PBM.

64.     Said attorney prepared a corporate resolution expelling Trematerra and PJT from PBM ("Expulsion Resolution").

65.     Due to Trematerra and PJT's conduct, including, but not limited to, fraud, economic extortion, breach of contract, and other business torts committed against the Other Members, Trematerra and PJT were lawfully expelled from PBM Group by the Other Members pursuant to the Expulsion Resolution served on Trematerra and PJT[15].

---

[15] The judge who presided over the bench trial in Delaware, in his opinion and verdict, found that Trematerra's conduct exceeded the threshold required for criminal negligence.

66.     Once lawfully expelled from PBM pursuant to the Expulsion Resolution, Trematerra became enraged that he was "thrown out" of PBM, and began a rampage of retribution and retaliation.

67.     Trematerra hired five (5) high-end law firms to file litigation, UPL, and Bar complaints against Plaintiff in New York and Florida, and against the Other Members in Delaware.

68.     Trematerra, PJT, and PJT Trust retained Defendant Rothstein and his firm, Defendant Dimond, to serve as lead counsel, lead coordinator, team leader, and the "tip of spear" in all of their offensive litigations.

69.     Rothstein was in charge of directing all of the efforts of the various legal teams and regularly gave them instructions in email communications where he addressed them as "Team:".

70.     Rothstein and Dimond recruited and engaged Tannebaum and Bast Amron to serve Trematerra, PJT, and PJT Trust's interests.

71.     Rothstein and Dimond recruited and engaged law firm, McCarter English, to serve Trematerra, PJT, and PJT Trust's interests.

72.     Rothstein and Dimond recruited and engaged law firm, Frankfurt, Kurnit, Klein, and Selz ("Frankfurt"), and attorney, Tyler Maulsby, Esq. ("Maulsby"), to serve Trematerra, PJT, and PJT Trust's interests.

73.     Trematerra, PJT, and the PJT Trust's offensive legal team was made up of the following team members, including, but not limited to, Rothstein, Dimond, Alexander M. Peraza, Esq. ("Peraza"), Eshaba Jahir-Sharuz Esq. ("Jahir-Sharuz"), Tannebaum, Bast Amron, Neuman, Neuman Law, P.A. ("Neuman Law"), McCarter English, Benjamin Smyth, Esq. ("Smyth"),

Stephanie Dallaire, Esq. ("Dallaire"), Maliheh Zare, Esq. ("Zare"), Frankfurt, and Maulsby (the "Team"[16]).

74.    Trematerra, PJT, and the PJT Trust, utilizing the Team and McCarter English, sued the Other Members in Delaware in June 2023[17] ("Delaware Suit").

75.    Trematerra, PJT, and the PJT Trust, utilizing the Team, Neuman, Rothstein, and Dimond, sued Santoro in Florida in June 2023[18][19].  This suit was styled, *PJT Holdings, LLC v. Albert J. Santoro,* and filed in the Circuit Court for the 11th Judicial District of Florida, Miami-Dade County ("Circuit Court") under Case No. 2023-018796-CA-01 (the "Miami Lawsuit").

76.    The first operative complaint filed by Trematerra, PJT, PJT Trust, and Neuman falsely claimed that Plaintiff committed tortious interference, defamation, and related causes of action against Trematerra, PJT, and the PJT Trust.

77.    The First Amended Complaint filed by Trematerra, PJT, PJT Trust, Rothstein, and Dimond falsely claimed that Plaintiff committed tortious interference, aiding and abetting a breach of contract, aiding and abetting conversion of membership interest, and conspiracy to convert membership interest against Trematerra, PJT, and the PJT Trust.

78.    Trematerra, PJT, and the PJT Trust, utilizing the Team, Tannebaum, and Bast Amron, filed multiple UPL complaints against Santoro in Florida beginning on June 26, 2023[20].

---

[16] While all of the attorneys and firms that made up the "Team" were involved in the wrongs committed against the Plaintiff, only Trematerra, PJT, the PJT Trust, Rothstein, Dimond, Tannebaum, Bast Amron, and Neuman were part of the "Peter Trematerra & David A. Rothstein, Esq. Criminal Organization / Association" and therefore liable for RICO violations.
[17] After a bench trial, Trematerra lost all of his causes of action against the Other Members and was ordered to pay all of their expenses and legal fees.
[18] Defendant Neuman filed the original lawsuit against Santoro, but Neuman was replaced within days by Rothstein as counsel.
[19] The civil case against Santoro in Florida was dismissed.
[20] All UPL Complaints filed against Santoro were closed without any negative finding against Santoro.

79.    Trematerra, PJT, and the PJT Trust, utilizing the Team, Tannebaum, Bast Amron, Frankfurt, and Maulsby, filed UPL and Bar complaints against Santoro in New York beginning on August 8, 2024[21].

80.    Tannebaum, Rothstein and Neuman along with Defendant law firms Bast Amron, and Dimond, despite having the unlimited budgets provided to them by the wealthy Trematerra, PJT, and the PJT Trust, intentionally and recklessly chose to forgo even the most cursory investigation into the facts before filing their multiple baseless UPL complaints.

81.    Tannebaum, Rothstein and Neuman along with Defendant law firms Bast Amron, and Dimond made the intentional decision to accept large sums of money from Trematerra, PJT, and the PJT Trust and to do whatever was necessary to keep Trematerra satisfied (and their fees beings paid) by decimating Plaintiff Santoro's reputation, career, and health.

82.    Defendant attorneys Tannebaum and Neuman along with Defendant law firms Dimond and Bast Amron, disregarded their professional ethics and maliciously authored, published, and disseminated knowingly false statements about the Plaintiff without any evidence supporting their false claims.

83.    Upon information and belief, Trematerra, PJT and PJT Trust have paid more than three million dollars ($3,000,000.00) in legal fees relating to the suits, UPL complaints, and Bar complaints brought against Santoro and the Other Members by the Defendants concerning the worthless and assetless entity, PBM Group.

**REST OF PAGE INTENTIONALLY LEFT BLANK**

---

[21] All UPL and Bar complaints filed against Santoro were closed without any negative finding against Santoro.

The OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, White, Szumilas, and Desai Matters

84.     Plaintiff was an officer and director of OMMA from on or about September 2022 until in or about July 2023.

85.     Plaintiff was an officer and director of the One Miami East Condominium Association ("OMECA") from on or about September 2022 until in or about July 2023.

86.     Plaintiff was the President of OMMA from in or about January 2023 until in or about July 2023.

87.     Plaintiff was the Treasurer of OMECA from in or about September 2022 until in or about July 2023.

88.     In the course of his official duties, Plaintiff uncovered strong evidence of theft, fraud, racism, employee abuse, and mismanagement committed by OMMA, Marquis, Ruiz, and other parties.

89.     As a result of his investigations, Plaintiff and OMMA's relationship became strained.

90.     In or about July 2023, OMMA, Marquis, Ruiz, Magid, and Fenton filed a false business record of OMMA which falsely stated that Plaintiff was recalled as director of OMMA in violation of FL STAT. § 817.

91.     In or about September 2023, Plaintiff filed suit against Ruiz, Desai, and Szumilas for defamation in Circuit Court for Miami-Dade County ("Defamation Suit").  Said Defamation Suit is currently pending.

92.     In the course of the Defamation Suit, Marquis and OMMA employee, Carlos Sandoval, gave a sworn statement in his official capacity as One Miami's Operation Manager and Nighttime Security Manager.

93.     In the course of the Defamation Suit, OMMA and Marquis' subcontractor, Luis Ruiz, gave a sworn statement in his official capacity as One Miami's Security Supervisor.

94.     Said sworn statements contained information harmful to, and potentially subjecting liability to OMMA, Marquis, Magid, Desai, and Szumilas.

95.     Said sworn statements were made in or about May 2023 and were sworn under the penalty of perjury by Carlos Sandoval and Luis Ruis.

96.     Carlos Sandoval's employment by OMMA and Marquis was terminated as a result of his sworn statement.

97.     Luis Ruis was permanently transferred from One Miami to another property unrelated to One Miami as a result of his sworn statement.

98.     Sometime in or around 2024, OMMA, Marquis, Ruis, Magid, Lasicki, and White paid nine thousand dollars ($9,000.00) to Carlos Sandoval in encourage him to recant his sworn statement.

99.     Sometime in or around 2024, Marquis, offered employment to, and then begin employing, Carlos Sandoval, to encourage him to recant his sworn statement.

100.    In preparation for a deposition in 2025 in relation to the Defamation Suit, OMMA and Marquis suborned perjury and engaged in witness tampering by coercing Carlos Sandoval to recant his sworn statement and testify falsely at the deposition.

101.    Sometime in or around 2024, Marquis, offered employment to, and then begin employing, Luis Ruiz, to encourage him to recant his sworn statement.

102.    In preparation for a deposition in 2025 in relation to the Defamation Suit, Marquis suborned perjury and engaged in witness tampering by coercing Luis Ruiz to recant his sworn statement and testify falsely at the deposition.

## Florida RICO, Criminal Associations and Overt Criminal Acts

Florida RICO Statute

103.   The Florida Racketeer Influenced and Corrupt Organization Act ("Florida RICO") was enacted by the Florida Legislature in 1977.

104.   Specifically, Florida's RICO prohibits participating in an enterprise engaged in a pattern of racketeering.

105.   Florida RICO, while initially being modeled after the federal RICO Act, was greatly expanded to address a broader range of criminal conduct than its federal counterpart.

106.   Florida RICO defines "enterprise" very broadly and includes associations of just two individuals agreeing to act together in furtherance of specified illegal conduct.

107.   Florida RICO requires the commission of only two (2) predicate acts of enumerated criminal conduct.

108.   Florida RICO also prohibits individuals and entities from conspiring to commit two (2) or more acts of prohibited criminal conduct.

109.   Florida RICO, like its federal brother, also contains civil remedies for wrongs that caused actual damages to the victims of the perpetrators' criminal activity.


Criminal Enterprises and Associations, "Joint Interest Agreements" and Overt Criminal Acts

110.   In Florida RICO, a "civil RICO enterprise" refers to an ongoing organization, either formal or informal, where individuals function as a continuing unit to engage in a pattern of racketeering.

111.   Florida RICO requires two (2) or more overt enumerated criminal acts by the participant in an enterprise or criminal association in order to be punishable by the statute.

112.     Defendants Neuman, Trematerra, PJT, and PJT Trust were working together for many years, upon information and belief, commencing as early in 2014, where Defendant Neuman, for pecuniary gain in the form of legal fees, agreed to file meritless civil lawsuits with various courts located in the State of Florida while knowing that the allegations contained therein were false and the true purpose of the lawsuit was not to remedy a wrong to Trematerra, PJT, and/or PJT Trust, but was for the illegal and improper purpose of extorting Trematerra, PJT, and/or PJT Trusts' 'adversaries' into either relieving Trematerra, PJT, and/or PJT Trust from lawful financial obligations or to obtain ill-gotten settlement proceeds.

113.     Neuman, over the past five (5) years, has filed numerous meritless and extortive lawsuits and bar complaints for Trematerra, PJT, and PJT Trust.

114.     The meritless lawsuits filed by Neuman, Trematerra, PJT, and PJT Trust are to further illegal conduct to wit: defrauding the defendants with the filing of meritless lawsuits, defrauding the courts of the State of Florida, defrauding the Florida Bar, extorting the Plaintiff, and abusing the legal process.

115.     Neuman, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false allegations about the Plaintiff with the Circuit Court in order to defraud and materially-mislead the Circuit Court and the State of Florida for pecuniary gain, specifically to be awarded damages against the Plaintiff.

116.     Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Trematerra, PJT, and PJT Trust have been in a contractual relationship since in or about June 2023 which continues to the present date.

117.     Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false criminal

allegations and did file knowingly false criminal allegations about the Plaintiff with the Florida Bar in order to defraud and materially-mislead the Florida Bar and the State of Florida for pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

118.   Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false criminal allegations about the Plaintiff with the New York Bar in order to defraud and materially-mislead the New York Bar and the State of New York for pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

119.   Upon information and belief, Defendants Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, were paid more than two million dollars ($2,000,000.00) to prosecute the meritless civil action, FL UPL, and NY UPL and Bar Complaint(s).

120.   Defendants Brian L. Tannebaum, Esq., Bast Amron, L.L.P., David A. Rothstein, Esq., Dimond, Kaplan, and Rothstein, P.A., Peter J. Trematerra, The Peter J. Trematerra Family Trust, Eric J. Neuman, Esq., PJT Holdings, LLC, Christopher D. Brown, Esq., Brendan Everman, Esq., One Miami Master Association, Inc., Marquis Association Management, LLC, Carlos Ruiz, Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas entered into purported "joint interest agreements" which in fact were merely oral and written conspiracy agreements to do whatever was necessary, utilizing both legal and illegal means to a) have the Plaintiff arrested for fictional criminal charges; b) have the Plaintiff disbarred in before all courts he was admitted to practice before and in all jurisdictions he was licensed to practice in; c) to have the Plaintiff denied admission to practice in jurisdictions he was currently applying to; d) to inflict

maximum reputation harm to the Plaintiff; e) to cause devastating financial harm to the Plaintiff; and f) to inflict severe emotional distress on the Plaintiff and his family.

121.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, Brown, Everman, OMME, Marquis, Ruiz, Kyriazis, Magid, Lasicki, Fenton, White, Desai, Clark, Doe, Robert Szumilas, and Violetta Szumilas conspired with each other, and participated as a group for a period exceeding eighteen (18) months which continues to the present date.

122.    Defendants Brown and Desai, abusing attorney-client privilege in order to shield Desai from further civil liability, and, potentially criminal liability, unlawfully invoked attorney-client privilege with respect to Defendants Szumilas, Lasicki, and Kyriazis falsely claiming to be acting as their attorney.

123.    Defendants Brown and Desai, again abusing attorney-client privilege in order to shield Desai from further civil liability, and, potentially criminal liability, again unlawfully invoked attorney-client privilege with respect to critical witnesses (Desai's work colleagues, friends, supervisors, and human resource department staff) in order to obfuscate her role in the various civil and potentially criminal conspiracies.

124.    Defendants Everman, Brown, Szumilas, Lasicki, Kyriazis, and Desai entered into purposed "joint interest" agreements (which were nothing more than memorializations of their criminal association and illegal conspiratorial conduct) with Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, OMME, Marquis, Ruiz, Magid, Fenton, White, Clark, Doe, Robert Szumilas, and Violetta Szumilas and actively aided and abetted these Defendants in their illegal efforts to defraud the N.Y. and Florida Bars, the Florida courts, to wit: Defendants Everman, Brown, Szumilas, Lasicki, Kyriazis, and Desai supplied their co-

conspirators with documents, communications, illegally-obtained audio and video recordings so that Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, and Neuman can illegally prosecute civil claims, UPL, and bar complaints against the Plaintiff.

125.   A "criminal enterprise" is one where the participants act jointly and together to further an unlawful goal.

126.   Defendants Rothstein, Dimond, Ruiz, Marquis, OMME, Lasicki, Magid, White, Kyriazis, conspired with each other, entered into "joint interest agreements" with, and agreed to aid and abet each other, and did aid and abet each other, specifically, aided Ruiz, Marquis, and OMME to place hidden audio and video recording devices in private offices at 335 S. Biscayne Blvd, Miami, FL 33131 for the illegal purpose of surreptitiously recording the Plaintiff and other individuals' conversations without their knowledge in violation of FL Stat. § 934.  This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO

127.   OMMA, Marquis, Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMME], [Fenton] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO.  This meets the requirement for predicate criminal conduct as defined by Florida RICO.

128.   OMMA, Marquis, Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMME], [Fenton] will make

sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

129.   Defendants Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, did conspire and agree to aid and abet, and did aid and abet each other, and did enter into a business relationship with each other for the purpose of extorting the Plaintiff into resigning his position with Plant Based Mafia and forgoing revenue and payments for his services by misusing, misleading, and defrauding the courts of the State of Florida, the Florida Bar, and the New York Bar, by filing false and meritless civil litigation, filing false criminal UPL allegations, and filing false bar complaints with the express purpose of forcing Plaintiff to discontinue his business relationship with his client, Plant Based Mafia and the Other Members.  This violates FL Stat. § 836.  This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

130.   Defendants Ruiz, OMMA, and Marquis, were in a business relationship for at least 2 years, commencing in or about March 2022, in which OMMA and Marquis, agreed to aid and abet, and aided and abetted, Ruiz in theft and embezzlement to wit:  Ruiz took and used for his own personal use at his own personal residence, paint and painting materials valued at more than one thousand dollars ($1000.00) that belonged to the Plaintiff and other stakeholders of OMMA and the One Miami Condominium.

131.   Defendants Ruiz, OMMA, and Marquis, were in a business relationship for at least 2 years, commencing in or about March 2022, in which OMMA and Marquis, agreed to aid and abet, and aided and abetted, Ruiz in theft and embezzlement to wit:  Ruiz used OMMA and

Marquis employees to transport the stolen paint and materials and to provide labor to pain Ruiz' personal residence, the value of which is more than one thousand dollars ($1000.00), and said labor of said employed 'belonged' to the Plaintiff and other stakeholders of OMMA and the One Miami Condominium.

132.   Defendants OMMA and Marquis disregarded the advice of legal counsel to conduct an independent investigation in Ruiz' theft and embezzlement, and instead, aided and abetted in the embezzlement and theft by allowing, Ruiz' employer to conduct the investigation into their own employee's criminal conduct.

133.   Ruiz' theft and embezzlement are prohibited by FL Stat. § 812.   Ruiz' embezzlement is prohibited by FL Stat. § 836.  This meets the requirement for predicate criminal conduct as defined by Florida RICO.

134.   Ruiz' association with, and OMMA and Marquis participation in, and aiding and abetting of Ruiz meets the standard for a "criminal association" as defined by Florida RICO.

135.   OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White committed witness tampering, in violation FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

136.   Marquis committed witness tampering, in violation FL Stat. § 914 when they offered employment to Carlos Sandoval to coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

137.   Marquis committed witness tampering, in violation FL Stat. § 914 when they offered employment to Luis Ruiz to coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

**The Crime of Unlicensed Practice of Law in Florida is a Third-Degree Felony.**

138.    The State of Florida imposes harsh criminal penalties for any person who practices law without a license (or is otherwise not authorized to practice law) within Florida.

139.    Section 454.23, Florida Statutes, provides that:

> **454.23   Penalties.**—Any person not licensed or otherwise authorized to practice law in this state who practices law in this state or holds himself or herself out to the public as qualified to practice law in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description implying that he or she is qualified, or recognized by law as qualified, to practice law in this state, commits a felony of the third degree, punishable as provided in s. <u>775.082</u>, s. <u>775.083</u>, or s. <u>775.084</u>.

140.    Section 775.082(3)(e), Florida Statutes, provides that "[f]or a felony of the third degree, [the perpetrator shall be punished] by a term of imprisonment not exceeding 5 years."

141.    In addition to potentially five (5) years of imprisonment upon conviction of the third-degree felony of practicing law without a license ("UPL"), any such person is also subject to harsh discipline in any other jurisdiction and/or courts in which said person is lawfully admitted to practice law and could be suspended or even permanently disbarred from the practice of law.

**The Crime of Perjury in the State of Florida is a Third-Degree Felony.**

142.    The State of Florida imposes harsh criminal penalties for any person who commits the crime of perjury within Florida.

143.    Section 837.02(1), Florida Statutes, provides that:

> **837.02   Perjury in official proceedings.**—
> (1)   Except as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree, punishable as provided in s. <u>775.082</u>, s. <u>775.083</u>, or s. <u>775.084</u>.

144.    Section 775.082(e)(3), Florida Statutes, provides that "[f]or a felony of the third degree, [the perpetrator shall be punished] by a term of imprisonment not exceeding 5 years."

**Defendants Trematerra, PJT, PJT Trust, and Neuman Defame Plaintiff on June 26, 2023.**

145.    On or about June 26, 2023, Defendants Trematerra, PJT, PJT Trust, and Neuman authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law to wit: Trematerra, PJT, PJT Trust, and Neuman authored, published and delivered to the Florida Bar UPL Department, a written statement falsely claiming that "Albert Santoro…is attempting to practice law in the State of Florida by operating under the guise of 'point person' and newly appointed 'C.O.O.' on behalf of Plant Based Mafia, LLC and PBM Group Holdings, LLC, in their communications with 'all legal counsel'" and falsely claiming that "It appears that Mr. Santoro may have also prepared various legal documents on behalf of the above reference entities, including a 'Notice to Immediately Cease and Desist,' 'Demand to Preserve Evidence' and corporate Resolution of PBM Group Holdings, LLC, all dated June 7, 2023."

146.    Each of the statements made by the named Defendants described in paragraph 145 above was made maliciously and/or with a reckless disregard of the truth in that Trematerra, PJT, PJT Trust, and Neuman did not engage in any investigation of any of the facts they claimed to have actual knowledge of.

147.    Each of the statements made by the named defendants described in paragraph 145 above was made maliciously and/or with a reckless disregard of the truth in that Trematerra, PJT, PJT Trust, and Neuman made said statements in order to unlawfully gain a strategic advantage in the civil lawsuit that they filed the very next day, June 27, 2023 as described more fully below.

148.    Plaintiff was required to, and did respond to, the "Official Proceeding" opened by the Florida Bar as a result of the false allegations made by Trematerra, PJT, PJT Trust, and Neuman.

149.     Plaintiff was required to and did submit a sworn response under the penalties of perjury to the "Official Proceeding" opened by the Florida Bar as a result of the false allegations made by Trematerra, PJT, PJT Trust, and Neuman.

**Defendants Trematerra, PJT, PJT Trust, and Neuman File Civil Litigation on June 27, 2023.**

150.     On or about June 27, 2023, defendants Trematerra, PJT, and PJT Trust through defendant Neuman, filed a civil action in Miami-Dade Circuit Court entitled "PJT Holdings, LLC vs. Albert J. Santoro" under case number 2023-018796-CA-01 ("PJT Action") alleging "Tortious Interference with Business Relationship", "Tortious Interference with Business Expectancy", "Tortious Interference with Contractual Relationship", "Defamation", "Negligence", and "Unjust Enrichment."

151.     Trematerra, PJT, PJT Trust, and Neuman filed said PJT in retribution and retaliation for being properly and lawfully ousted as a member of a business entity in which he was accused of threats, extortion, fraud, breach of contract, and negligence.

152.     Said PJT Action contains the same or similar allegations as contained in the June 26, 2023 UPL Complaint in that it alleged that Plaintiff Santoro engaged in the unlicensed practice of law.

153.     Said PJT Action was never served on Plaintiff Santoro and no action was taken by Trematerra, PJT, PJT Trust, and Neuman until nearly six (6) months later on or about December 21, 2023, when defendant Trematerra, PJT, and the PJT Trust, with the assistance of new counsel, amended the complaint and removed all causes of action relating to the allegations that Plaintiff Santoro engaged in the unlicensed practice of law.

**Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust Defame Plaintiff on August 15, 2023.**

154.    On or about August 15, 2023, Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, acting alone and in concert, authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law and the third degree felony of perjury to wit:  Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust authored, published and delivered to the Florida Bar UPL Department, a written statement executed by Tannebaum, and transmitted to the Florida Bar by Bast Amron falsely claiming as fact and not as opinion that:

a.  "Mr. Santoro's response is typical of one who is crafting an explanation for what is otherwise the practice of law in Florida.  That is what [Santoro] is doing – practicing law in Florida and trying to convince the Bar that he plays other roles, that lawyers are in the background, and that everyone else is lying."

b.  "[He] is practicing law in Florida, and lying about it."

c.  "He is representing an entity in Florida and weaving around the fact of doing just that."

d.  "His statement that he was '**engaged** by PBM on June 5, 2023, to serve as a Manager of the LLC and to provide management, accounting, and **business strategy services** is typical of an explanation of someone engaged in the unlicensed practice of law.'" [emphasis in original]

e.  "That he now titles himself 'manager' of PBM is irrelevant.  The Bar should note that he named himself manager only a few days before sending Mr. Trematerra's counsel a cease and desist demand, resolution, and preservation of evidence

demand.  He did this because he was acting as a lawyer, and needed to disguise his true role."

f.  "He was acting as a lawyer, while falsely claiming that there were lawyers in the background and calling himself a 'conflict strategist.'"

g.  "He was lawyering without calling himself a lawyer.  That's what people engaged in the unlicensed practice of law do."

h.  "That he makes up this whole story about the fear he has of disclosing certain lawyer's names adds to the falsity of this entire explanation."

i.  "He was engaged in the practice of law in Florida and that is the only issue."

j.  "He was acting as **the** representative of PBM.  There are no lawyers.  He is lying to the Bar." [emphasis in original]

k.  "And the misrepresentations continue."

l.  "Mr. Santoro's unethical conduct is widespread, not only his acting as a lawyer in Florida, but his written threats, of which the Bar has copies."

155.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's conduct in explicitly naming Plaintiff as "liar" and alleging he is "lying" to the Bar in no less than three (3) instances demonstrates the actual malice of said defendants.

156.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust were in possession of information demonstrating the falsity of their statements but intentionally and/or recklessly failed to consider said information or to make a reasonable attempt to investigate said information thereby demonstrating their malicious intent in authoring, publishing and disseminating the above listed defamatory statements.

**Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust Defame Plaintiff on October 23, 2023.**

157.    On or about August 15, 2023, defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, acting alone and in concert, authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law and the third degree felony of perjury to wit:  Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust authored, published and delivered to the Florida Bar UPL Department, a written statement executed by Tannebaum, and transmitted to the Florida Bar by Bast Amron falsely claiming as fact and not as opinion that:

a.  "I will say again, Mr. Santoro's response, and now supplemental rebuttal, is typical of one who is crafting an explanation for what is otherwise the practice of law in Florida."

b.  "Mr. Santoro, now through counsel, states that he 'does not advertise or otherwise hold himself out as a lawyer eligible to practice law in this state.' Many violators of the UPL Rules, like Mr. Santoro, don't do that either."

c.  "That is of no matter, as he is engaging in the practice of law in Florida."

d.  "The supplemental response states that 'there is no indication that Mr. Santoro has a presence in the Florida for the practice of law, yet his communications – a sample of which are attached – say otherwise.  He is practicing law in Florida."

e.  "A brief review of these emails show he is acting as a lawyer, while threatening Florida residents."

f. "That he is an accountant, businessman and plays various other irrelevant roles, has nothing to do with the fact that he is a lawyer with a past of misconduct who is now violating the Rules Regulating The Florida Bar."

g. "Lawyers do that every day. It is meaningless. He was not retained and the continued mention of him is evidence of Mr. Santoro's continued efforts to deceive the Bar into thinking there was Florida counsel."

h. "It is offered here to show his lack of professionalism and lack of competence to understand basic law – and that he is engaged in the [unlicensed] practice of law."

158. Despite Tannebaum and Bast Amron each advertising that they practice law in the areas of attorney admission, attorney discipline, and, presumably, including the Unlicensed Practice of Law, they included in their October 23, 2023 diatribe to the UPL Department of the Florida Bar emails and communications authored by the Plaintiff relating to two separate Florida litigation matters where Plaintiff Santoro properly and lawfully appeared as a *pro se* litigant.

159. Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust could have easily obtained said information by conducting a free and simple docket search of those cases.

160. Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's intentional, blatant, and obvious false statements made to defame the Plaintiff and cause him to either lose his law license or have him suspended from the practice of law were made with actual malice and a complete disregard for the truth of the facts asserted by those named defendants.

**The Florida Bar's UPL Department Closes All UPL Complaints Filed Against the Plaintiff by the Defendants on July 1, 2024.**

34

161.   On July 1, 2024, the Florida Bar's Unlicensed Practice of Law Department issued a letter to Plaintiff indicating that it had closed its file on the UPL investigations into Plaintiff.

162.   On July 1, 2024, the investigation(s) by the Florida Bar relating to the Defendants' numerous false UPL complaints were closed without any negative finding, ruling, discipline, or even the smallest criticism of the Plaintiff and/or Plaintiff's conduct.

**The Attorney Grievance Committee for the Supreme Court of the State of New York, First Judicial Department Closes the UPL and Bar Complaint(s) Filed Against the Plaintiff by Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust on July 29, 2024.**

163.   On July 29, 2024, the Attorney Grievance Committee for the Supreme Court of the State of New York, First Judicial Department issued a letter to Plaintiff stating that, after its investigation into the allegations made by Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, it is not taking any action whatsoever against the Plaintiff.

164.   On July 29, 2024, the investigation conducted by the Attorney Grievance Committee for the Supreme Court of the State of New York, First Judicial Department relating to Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's false UPL and Bar complaints was closed without any negative finding, ruling, discipline, or even the smallest criticism of the Plaintiff and/or Plaintiff's conduct.

## VI.  PLAINTIFF'S CAUSES OF ACTION AGAINST THE DEFENDANTS

### FACTS COMMON TO ALL RICO CAUSES OF ACTION

165.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 164  as if fully set forth herein.

166.     Defendant Trematerra is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

167.     Defendant Rothstein is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

168.     Defendant Tannebaum is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

169.     Defendant Neuman is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

170.     Defendant Ruiz is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

171.     Defendant Magid is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

172.     Defendant Lasicki is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

173.    Defendant Fenton is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

174.    Defendant White is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

175.    Defendant PJT is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

176.    Defendant PJT Trust is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

177.    Defendant Bast Amron is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

178.    Defendant Dimond is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

179.    Defendant OMMA is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

180.    Defendant Marquis is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property as defined by 18 U.S.C. § 1961(3) and the Florida Statutes.

181.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman did operate an "enterprise" because the association formed and operated by the Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (the "Trematerra Enterprise") as defined by 18 U.S.C. § 1961(4) and the Florida Statutes.

182.    Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White did operate an "enterprise" because the association formed and operated by OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (the " OMMA Enterprise") as defined by 18 U.S.C. § 1961(4) and the Florida Statutes.

183.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman regularly participated in, directed, controlled, and benefited from the Trematerra Enterprise.

184.    Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White regularly participated in, directed, controlled, and benefited from the OMMA Enterprise.

185.    The racketeering offenses committed by the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman and the Trematerra Enterprise affect interstate commerce as the Defendants and the Trematerra Enterprise committed offenses

against the Plaintiff and the Plaintiff is engaged in interstate commerce since the Plaintiff transacts his business in and across multiple states in the U.S.

186.     The racketeering offenses committed by the Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White and the OMMA Enterprise affect interstate commerce as the Defendants and the OMMA Enterprise committed offenses against the Plaintiff and the Plaintiff is engaged in interstate commerce since the Plaintiff transacts his business in and across multiple states in the U.S.

187.     Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) and the Florida Statutes in that they did engaged in, attempted to engage in and/or conspired to engage in wire fraud, defrauding the courts of the State of Florida, and defrauding the Bar of the State of Florida.

188.     Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA Enterprise did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) and the Florida Statutes in that they did engage in, attempted to engage in and/or conspired to engage in extortion, witness tampering, and illegal surveillance.

189.     Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra Enterprise did engage in "racketeering activity" in that they committed two (2) or more predicate criminal offenses within the five (5) years preceding the filing of this Complaint.

190.     Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA Enterprise did engage in "racketeering activity" in that they committed two (2) or more predicate criminal offenses within the five (5) years preceding the filing of this Complaint.

191.   The duration of Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra Enterprise's criminal conduct, association with, and participation in the Trematerra Enterprise is more than one (1) year.

192.   The duration of OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA Enterprise's criminal conduct, association with, and participation in the OMMA Enterprise is more than one (1) year.

## COUNT 1

**(Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895)**
**(Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)**

193.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

194.   Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman engaged in wire fraud, defrauding the courts of the State of Florida, defrauding the Bar of the State of Florida, and defrauding the Bar of the State of New York all in violation of the criminal statutes of Florida.

195.   As a result of Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman's violation of the Florida RICO Statute, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 2

**(Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895)**
**(Against Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White)**

196.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

197.    Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White engaged in wire fraud, extortion, illegal surveillance, witness tampering, and falsification of business records all in violation of the criminal statutes of Florida.

198.    As a result of OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White's violation of the Florida RICO Statute, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit

## COUNT 3

### (Civil Conspiracy to Defame the Plaintiff)
### (Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Ruiz, Brown, Everman, Szumilas, and Desai)

199.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

200.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Ruiz, Brown, Everman, Szumilas, and Desai entered into oral and written agreements entitled "Joint Interest Agreements", which, in actuality, were express conspiracy agreements for the purpose of defaming the Plaintiff to wit: Each Defendant aided and abetted Tannebaum and Rothstein in the filing of false felony UPL allegations with the Florida and New York Bars by supplying them with documents and communications, attending "Team" meetings to plan and execute plans to prosecute meritless and false UPL Complaints.

201.    Said "Team" met, conducted organized meetings, conspired, and agreed that they will aid and abet each other in any and all conduct necessary to destroy the Plaintiff's professional

reputation, and to cause the New York and Washington, D.C. Bars to disbar the Plaintiff and bar the Plaintiff from practicing law in those jurisdictions.

202. Specifically, Defendants Szumilas and Everman supplied Tannebaum and Rothstein with multiple email messages in which Plaintiff was properly and lawfully representing himself *pro se* in litigation concerning Szumilas and Desai. Said emails were then added to the documents Tannebaum supplied to the Florida Unlicensed Practice of Law Department, and, indirectly, to New York Bar Grievance Committee which he then highlighted and stated that they were examples of Plaintiff committing the felony of Unlicensed Practice of Law.

203. As a result of Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Ruiz, Brown, Everman, Szumilas, and Desai's civil conspiracy to defame, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 4

### (Abuse of Process)
**(Against Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman)**

204. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

205. On or about June 27, 2023, Trematerra, PJT, PJT Trust, and Neuman filed the Miami Lawsuit against the Plaintiff.

206. On or about December 21, 2023, Trematerra, PJT, PJT Trust, Rothstein, and Dimond filed the "Plaintiff's First Amended Complaint" in the Miami Lawsuit.

207. The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business relationship of Trematerra, PJT, and PJT Trust.

208.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business expectancy of Trematerra, PJT, and PJT Trust.

209.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a contractual relationship of Trematerra, PJT, and PJT Trust.

210.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff defamed Trematerra, PJT, and PJT Trust.

211.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff committed negligence against Trematerra, PJT, and PJT Trust.

212.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff committed the felony of Unlicensed Practice of Law and that Plaintiff was unjustly enriched by such to the detriment of Trematerra, PJT, and PJT Trust.

213.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business relationship of Trematerra, PJT, and PJT Trust.

214.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, aided and abetted a breach of contract involving Trematerra, PJT, and PJT Trust.

215.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, aided and abetted a conversion of Trematerra, PJT, and PJT Trust membership interest in PBM Group.

216.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, conspired to convert Trematerra, PJT, and PJT Trust membership interest in PBM Group.

217.    All of the allegations made in the Miami Lawsuit are false and were made without any regard for the truth.

218.    All of the allegations made in the Miami Lawsuit were made with the improper purpose of embarrassing, humiliating, and damaging the professional reputation of the Plaintiff.

219.    All of the allegations made in the Miami Lawsuit were made with the improper purpose of extorting the Plaintiff into terminating his business relationship with the Other Members and Plant Based Mafia LLC.

220.    All of the allegations made in the Miami Lawsuit were made with the improper purpose of defrauding the courts of the State of Florida.

221.    Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman intentionally misused the legal process in filing and prosecuting the Miami Lawsuit.

222.    Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman intentionally misused the legal process in filing and prosecuting the Miami Lawsuit in for the ulterior motives of defamation, coercion, extortion, and harassment.

223.    As a result of Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman's abuse of the legal process, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 5

### (Invasion of Privacy)
### (Against Defendants OMMA, Marquis, Ruiz, Magid, White, Brown, and Desai)

224.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

225.    OMMA, Marquis, and Ruiz secretly, illegally, and without the Plaintiff's consent, recorded embarrassing and humiliating audio and video recordings of the Plaintiff.

226.    These recordings were taken and distributed in violation of FL STAT. § 934.

227.    These recordings were in the possession and control of OMMA, Marquis, Ruiz, Magid, and White.

228.    These recordings were of private conversations and actions of a One Miami owner and resident and OMMA, Marquis, Ruiz, Magid, and White had a duty to the Plaintiff to keep said recordings confidential.

229.    OMMA, Marquis, Ruiz, Magid, and White, without lawful subpoena or court order, distributed, published, and disseminated said recording to Desai and Brown.

230.    Despite Desai and Brown's actual knowledge that the recordings were made and distributed in violation of FL STAT. § 934, Brown and Desai, for the sole purpose of humiliating the Plaintiff, and in clear violation of "litigation privilege", distributed, published, and disseminated these recordings to the public by using them in a sham motion.

231.    As a result of OMMA, Marquis, Ruiz, Magid, and White's invasion of the Plaintiff's privacy, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 6

### (Aiding and Abetting Defamation)
### (Against Defendants Brown, Everman, Szumilas, and Desai)

232.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

233.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Rothstein, Dimond, Brown, Everman, Szumilas, and Desai entered into oral and written agreements entitled "Joint Interest Agreements", which, in actuality, were express conspiracy agreements for the purpose of defaming the Plaintiff to wit:  Brown, Everman, Szumilas, and Desai aided and abetted Tannebaum and Rothstein in the filing of false felony UPL allegations with the Florida and New York Bars by supplying them with documents and communications, attending "Team" meetings to plan and execute plans to prosecute meritless and false UPL Complaints.

234.    Specifically, Defendants Szumilas and Everman supplied Tannebaum and Rothstein with multiple email messages in which Plaintiff was properly and lawfully representing himself *pro se* in litigation concerning Szumilas and Desai.  Said emails were then added to the documents Tannebaum supplied to the Florida Unlicensed Practice of Law Department, and, indirectly, to New York Bar Grievance Committee which he then highlighted and falsely stated that they were evidence of Plaintiff committing the felony of Unlicensed Practice of Law.

235.    With the help, support, communications, and documents supplied by Brown, Everman, Desai, and Szumilas to Trematerra, PJT, PJT Trust, Tannebaum, Rothstein, Dimond, those defendants were able to prosecute the false allegations of felony Unlicensed Practice of Law and the meritless Bar complaints made by those defendants to the Florida and New York Bars.

236.    As a result of Brown, Everman, Szumilas and Desai's aiding and abetting of defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 7

**(Defamation)**
**(Against Defendants Doe, Kyriazis, Lasicki, Magid, White and Fenton)**

237.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

238.   Kyriazis, Lasicki, and White operated, moderated, and controlled all content contained on, a Facebook Group entitled One Miami Condominium.

239.   Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, Doe, Kyriazis, Lasicki, Magid, and Fenton authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] is a liar."

240.   Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, Doe, Kyriazis, Lasicki, Magid, and Fenton authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] launder[ed] drug money [from the sale of drugs] that will end up in [children's] hands…"

241.   Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, Doe, Kyriazis, Lasicki, Magid, and Fenton authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] stated that he did not mind laundering drug money…"

242.   Plaintiff has never made any statements that Plaintiff "did not mind laundering drug money…"

243. Plaintiff has never been accused of, charged with, indicted for, nor convicted of laundering "drug money [from the sale of drugs] that will end up in [children's] hands.

244. As a result of Kyriazis, Lasicki, and White's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 8

### (Defamation)
### (Against Defendant Kyriazis)

245. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

246. In or about September 2023, Kyriazis authored, published, and disseminated a false written statement to the Florida Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

247. All statements made to the Florida Bar by Kyriazis about the Plaintiff are false, were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

248. In or about September 2023, Kyriazis authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

249. All statements made to the New York Bar by Kyriazis about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New

York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

250. In or about September 2023, Kyriazis authored, published, and disseminated a false oral statement to the Attorney General for Washington, District of Columbia, that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

251. All statements made to the Attorney General for Washington, District of Columbia by Kyriazis about the Plaintiff are false were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Washington, District of Columbia and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

252. In or about Summer 2023, Kyriazis made a false criminal complaint against the Plaintiff with the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

253. Kyriazis' actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

254. Kyriazis' actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

255. Kyriazis' false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

256. Kyriazis' false statements about the Plaintiff have caused both physical and mental injury to the Plaintiff, including, but not limited to, weight loss of more than fifteen (15) pounds,

hair loss, depression, sleeplessness, anxiety, decreased libido, decreased appetite and enjoyment in eating, and lack of energy.

257.    As a result of Kyriazis defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

**COUNT 9**

**(Defamation)**
**(Against Defendants OMMA, Marquis, Ruiz, Magid, and Fenton)**

258.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

259.    On July 11, 2023, Plaintiff resigned, effective immediately and on the same date it was tendered in writing, his position as president and director of Defendant OMMA's Board of Directors.

260.    OMMA accepted Plaintiff's resignation as president and director of OMMA.

261.    On July 13, 2023, OMMA, Marquis, Ruiz, Magid, and Fenton conducted an OMMA Board Meeting in front of approximately six (6) employees of OMMA and Marquis, three (3) OMMA Board members, and twenty (20) One Miami owners and residents for the express malicious purpose of disparaging, humiliating, and defaming the Plaintiff.

262.    Despite the Plaintiff no longer being an officer or director of OMMA and therefore unable, as a matter of law, of being "recalled", OMMA, Marquis, Ruiz, Magid, and Fenton carried out a "sham board meeting" and falsely stated to all in attendance that Plaintiff was "officially recalled" as director of OMMA.

263.    The Defendants actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

264.     OMMA, Marquis, Ruiz, Magid, and Fenton's false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

265.     OMMA, Marquis, Ruiz, Magid, and Fenton's false statements about the Plaintiff have caused both physical and mental injury to the Plaintiff, including, but not limited to, weight loss of more than fifteen (15) pounds, hair loss, depression, sleeplessness, anxiety, decreased libido, decreased appetite and enjoyment in eating, and lack of energy.

266.     As a result of OMMA, Marquis, Ruiz, Magid, and Fenton's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 10

### (Conversion)
### (Against Defendants Ruiz and Marquis)

267.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

268.     The Plaintiff was the lawful owner of paint and painting materials stored at his condominium at 335 S. Biscayne Blvd, Miami, Fl 33131.

269.     In or about May 2023, Ruiz and Marquis removed, transported, and used, for Ruiz' personal use at Ruiz' own personal residence, paint and painting materials owned by the Plaintiff thus permanently depriving the Plaintiff of their use and value without the permission of the Plaintiff.

270.     As a result of Ruiz and Marquis' conversion, the Plaintiff has been damaged in an amount of no less than $1,000.00.

## COUNT 11

### (Breach of Fiduciary Duty)
### (Against Defendants OMMA, Magid, Lasicki, Fenton, and White)

271.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

272.    Defendants Magid, Lasicki, Fenton, and White, at all times relevant to this Complaint were directors of OMMA, and, as such, owed fiduciary duties to the Plaintiff.

273.    Magid, Lasicki, Fenton, and White, at all times relevant to this Complaint were officers of OMMA, and, as such, owed fiduciary duties to the Plaintiff.

274.    Magid, Lasicki, Fenton, and White had actual knowledge that the General Manager provided to OMMA by Marquis, Defendant Ruiz, within the two (2) years immediately preceding his employment with Marquis, on or about February 18, 2021, had defrauded more than sixty (60) creditors for more than $400,000.00 and went bankrupt.  Yet they allowed Ruiz to continue as General Manager with access to all of the financial accounts of OMMA.

275.    Magid, Lasicki, Fenton, and White had actual knowledge that the General Manager provided to OMMA by Marquis, Defendant Ruiz, was alleged to have stolen assets belonging to OMMA and the Plaintiff and was further alleged to have used human resources belonging to OMMA and the Plaintiff for his own personal use, yet they allowed Ruiz to continue as General Manager with access to all of the financial accounts of OMMA

276.    Magid, Lasicki, Fenton, and White had actual knowledge that Truist Bank had unlawfully distributed and published the social security numbers and other private, sensitive information about the Plaintiff and the other Officers and Board Members of OMMA, but disregarded the advice of OMMA's CPA and auditor, and continued to allow Truist to maintain

tens of millions of dollars of OMMA's funds belonging to the Plaintiff and other stakeholders of OMMA.

277.    Magid, Lasicki, Fenton, and White had actual knowledge that Marquis employee Roberto Duarte verbally terrorized and abused Amada Reyes in that Duarte screamed at her:

    a.   "You are a dumb bitch."

    b.   "You know nothing and are worthless."

    c.   "Don't let those dirty Blacks sit at my computer."

    d.   "I don't want any n****** sitting on my chair."

278.    Despite having acknowledge of such conduct and statements, and against the advice of legal counsel, Magid, Lasicki, Fenton, and White allowed Marquis to conduct the entire investigation (which cleared Duarte).

279.    Magid, Lasicki, Fenton, and White had actual knowledge that U.S. Parking and its manager were committing various frauds against OMMA resulting in financial losses to OMMA and the Plaintiff, possessed video evidence that the U.S. Parking Manager was submitting false time sheets, were aware of allegations that U.S. Parking and its Manager were stealing payroll taxes from its employees, were advised by counsel to conduct an audit of the records of U.S. Parking, yet a) failed to investigate any of the allegations, and b) renewed the OMMA / U.S. Parking contract in 2024.

280.    A reasonable person of average intelligence acting as a director and officer of a condominium complex with approximately 900 units and 1500 owners/residents would take action or request further investigation into one or more of the above listed allegations, but Magid, Lasicki, Fenton, and White took no action to the detriment of the Plaintiff, OMMA, and its stakeholders thereby breaching the fiduciary duties they had to the Plaintiff, OMMA, and its stakeholders.

281.   As a result of Magid, Lasicki, Fenton, and White's breaches of fiduciary duties owed to the Plaintiff, the value of Plaintiff's apartment has significantly diminished.

282.   As a result of Magid, Lasicki, Fenton, and White's breaches of fiduciary duties owed to the Plaintiff, the Plaintiff has been damaged in an amount of no less than seventy-five thousand dollars ($75,000.00) as to be determined in the trial of this lawsuit.

**COUNT 12**

**(Defamation)**
**(Against Defendant Clark)**

283.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

284.   Defendant Clark, on July 13, 2023, during a board meeting conducted by OMMA and in the presence of approximately twenty (20) of Plaintiff's neighbors and former constituents, falsely stated to the room, "[Plaintiff] Santoro threatened to shoot me in the head."

285.   As this false statement implies that Plaintiff threatened to commit a felony against Clark, the statement is defamation *per se*.

286.   Clark's false statement about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

287.   Clark's false statement about the Plaintiff has caused both physical and mental injury to the Plaintiff, including, but not limited to, weight loss of more than fifteen (15) pounds, hair loss, depression, sleeplessness, anxiety, decreased libido, decreased appetite and enjoyment in eating, and lack of energy.

288.   As a result of Clark's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 13
### (Intentional Infliction of Emotion Distress)
### (Against Defendant Clark)

289.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

290.    Defendant Clark threatened to murder the Plaintiff's wife and infant son by striking and running over them with his Bentley automobile.

291.    In or about July 2023, Clark authored, published, and delivered the written threat, "If I see your lying whore wife and bastard son in the garage, I might run over them with my [Bentley]" to the Plaintiff by placing the threat under the door of the residence of the Plaintiff, his wife, and his infant son.

292.    On June 19, 2025, Clark again threatened to murder the Plaintiff's wife and infant son by striking and running over them with his Bentley automobile when he stated to the Plaintiff, "Where is your whore wife walking? Let me go find the bitch!"

293.    Clark's statements and actions were deliberate and intentional and done with the purpose of causing severe emotional distress in the Plaintiff.

294.    Clark's statements and actions were extreme and outrageous and considered intolerable in a civilized community.

295.    Clark's statements and actions directly caused the Plaintiff immediate anxiety, fear for the lives of his wife and infant son, terror, and sustain emotion distress beyond what a reasonable person should have to endure.  It was substantial and not mild.

296.    As a result of Clark's intentional infliction of emotional distress, the Plaintiff has suffered emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 14

### (Defamation)
### (Against Defendants Ruiz and Marquis)

297.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

298.    In or about July 2023, Ruiz and Marquis did falsely state to Desai and others, "[Plaintiff] Santoro is a liar."

299.    In or about July 2023, Ruiz and Marquis did falsely state to Desai and others that, "[Plaintiff] Santoro fabricated the story that he has sworn affidavits of One Miami employees."

300.    In or about July 2023, Ruiz and Marquis did falsely state to Desai and others that, "[Plaintiff] Santoro lied about having physical evidence."

301.    As each and every false statement made by Ruiz and Marquis and described above relates to Plaintiff's professional career and tends to injure the Plaintiff in his trade, business, or professional by imputing conduct, characteristics, or a condition incompatible with the proper exercise of his profession, all such false statements are defamation *per se.*

302.    Ruiz' and Marquis' false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

303.    Ruiz' and Marquis' false statements about the Plaintiff have caused both physical and mental injury to the Plaintiff, including, but not limited to, weight loss of more than fifteen (15) pounds, hair loss, depression, sleeplessness, anxiety, decreased libido, decreased appetite and enjoyment in eating, and lack of energy.

304.    As a result of Ruiz and Marquis' defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 15

### (Unjust Enrichment)
### (Against Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)

305.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

306.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, collectively were paid more than one million dollars ($1,000,000.00) for providing 'legal services' to Trematerra, PJT, and PJT Trust.

307.    Said 'legal services' were not truly legal services and instead paid in order to commit criminal and tortious conduct against the courts of the State of Florida, Florida Bar, and the New York Bar.

308.    Specifically, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman agreed to file knowingly false criminal allegations and did file knowingly false criminal allegations about the Plaintiff with the Florida Bar in order to defraud and materially-mislead the Florida Bar and the State of Florida for pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

309.    Defendants accepted and have unjustly benefited from the monies paid to them by Trematerra, PJT and PJT Trust for their fraudulent, unlawful, illegal, and tortious conduct.

310.    As a direct and foreseeable result of Defendants having received compensation for carrying out Trematerra, PJT, and PJT Trust's improper, illegal, and unlawful requests and directions, Defendants have been unjustly enriched at the Plaintiff's expenses.

311.    Wherefore, the Plaintiff respectfully demands judgment for unjust enrichment against Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, compelling reimbursement

and disgorgement of all compensation received by Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman.

## COUNT 16

### (Tortious Interference with a Business Relationship)
### (Against Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)

312.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

313.    Plaintiff enjoyed a profitable and rewarding business relationship with the Other Members and Plant Based Mafia, LLC.

314.    As a result of Plaintiff's business relationship with the Other Members and Plant Based Mafia, LLC, they engaged the Plaintiff's company, the Tranquility Group, LLC, and paid said company ten thousand dollars ($10,000.00) for business consultancy services.

315.    Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman had direct knowledge of Plaintiff's business relationship with the Other Members and Plant Based Mafia, LLC.

316.    Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, intentionally and without justification, interfered with the Plaintiff's business relationship by filing false and meritless litigation and false criminal allegations of Unlicensed Practice of Law against the Plaintiff with the express intention of damaging, and ultimately, terminating, the Plaintiff's financially favorable relationship with the Other Members and Plant Based Mafia, LLC.

317.    As a direct and proximate result of Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman's intentional and unjustified interference, Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

## COUNT 17

### (Defamation *Per Se*)

**(Against Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman)**

318.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 192 as if fully set forth herein.

319.    Under common law, "it is established…that [a false statement] is actionable *per se* – that is, without a showing of special damages – if it imputes to another (a) criminal offense amounting to a felony…or (c) conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office…" <u>Wolf v. Kirk,</u> 273 So. 2d 774, 777 (Fla. 4th DCA 1973).

320.    Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman authored, published and disseminated numerous misleading and false statements to third parties that stated or implied that Plaintiff committed multiple felony criminal offenses including perjury and practicing law without a license in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

321.    Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman authored, published and disseminated numerous misleading and false statements to third parties that Plaintiff's "conduct, characteristics or a condition [is] incompatible with the proper exercise of his lawful business, trade, profession, or office" in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

322.    The statements made by Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman are demonstrably false.

323.     These false and misleading statements were published with actual malice, as Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman knew that they were false and misleading, and/or at a minimum acted and published with a reckless disregard for the truth.

324.     Defendants Tannebaum, Tannebaum P.A., and Bast Amron advertise that they practice law in the area of attorney ethics and attorney discipline and therefore knew that Santoro representing himself in multiple matters as a *pro se* litigant is lawful, proper, and constitutionally-protected conduct yet they still falsely and with actual malice, authored, published and disseminated said defamatory statements in their multiple UPL complaints in order to have Santoro suspended or disbarred from the practice of law.

325.     These false and misleading statements were published with malice, as Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman made these statements in retribution and retaliation for Trematerra, PJT, and PJT Trust's lawful ouster as a member of a business he was associated with.

326.     The Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman did not have any applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

327.     As a direct and proximate result of the Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman's defamatory actions, Plaintiff has suffered and continues to suffer damages, including, but not limited to, damage to his reputation, loss of earnings, embarrassment, pain, humiliation, mental anguish, depression, and anxiety.

328.     As a direct and proximate result of the Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman's defamatory actions, Plaintiff has suffered and

continues to suffer damages, including, but not limited to, attorney fees incurred for the purpose of defending Plaintiff in Florida, New York, and Washington, D.C. against each of the false UPL complaints filed by the Defendants.

### COUNT 18
### (Defamation)
### (Against Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman)

329.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through and including paragraph 192 above as if fully set forth herein.

330.    Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman authored, published and disseminated numerous misleading and false statements to third parties that stated or implied that Plaintiff committed multiple felony criminal offenses including perjury and practicing law without a license in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

331.    Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman authored, published and disseminated numerous misleading and false statements to third parties that Plaintiff's "conduct, characteristics or a condition [is] incompatible with the proper exercise of his lawful business, trade, profession, or office" in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

332.    The statements made by Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman are demonstrably false.

333.    Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman did not have any applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

334.    Defendants Tannebaum, Tannebaum P.A., and Bast Amron advertise that they practice law in the area of attorney ethics and attorney discipline and therefore knew that Santoro representing himself in multiple matters as *pro se* litigant is lawful, proper, and constitutionally-protected conduct yet they still falsely and with actual malice, authored, published and disseminated said defamatory statements in their multiple UPL complaints in order to have Santoro suspended or disbarred from the practice of law.

335.    As a direct and proximate result of the Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman's defamatory actions, Plaintiff has suffered and continues to suffer damages, including, but not limited to, damage to his reputation, loss of earnings, embarrassment, pain, humiliation, mental anguish, depression, and anxiety.

336.    As a direct and proximate result of the Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman's defamatory actions, Plaintiff has suffered and continues to suffer damages, including, but not limited to, attorney fees incurred for the purpose of defending Plaintiff in Florida, New York, and Washington, D.C. against each of the false UPL complaints filed by the Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Albert J. Santoro, Esq., respectfully requests that this Court:

(a) On Count 1, enter a judgment that Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, conducted or participated in the conduct of the Trematerra Enterprise's affairs through a pattern of racketeering activity in violation of Florida's RICO Statute for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(b) On Count 2, enter a judgment that Defendants OMMA, Marquis, Ruiz, Magid, Lasicki, Fenton, and White, and each of them, conducted or participated in the conduct of the OMMA Enterprise's affairs through a pattern of racketeering activity in violation of Florida's RICO Statute for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(c) On Count 3, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Ruiz, Brown, Everman, Szumilas, and Desai, and each of them, engaged in a civil conspiracy to defame the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(d) On Count 4, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman, and each of them, engaged in abuse of process against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(e) On Count 5, enter a judgment that the Defendants OMMA, Marquis, Ruiz, Magid, White, Brown, and Desai, and each of them, engaged in invasion of privacy against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(f) On Count 6, enter a judgment that the Defendants Brown, Everman, Szumilas and Desai, and each of them, engaged in aiding and abetting defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(g)     On Count 7, enter a judgment that the Defendants Doe, Kyriazis, Lasicki, Magid, White and Fenton, and each of them, engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(h)     On Count 8, enter a judgment that the Defendant Kyriazis engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(i)     On Count 9, enter a judgment that the Defendants OMMA, Marquis, Ruiz, Magid, and Fenton, and each of them, engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(j)     On Count 10, enter a judgment that the Defendants Marquis and Ruiz, and each of them, engaged in conversion against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(k)     On Count 11, enter a judgment that the Defendants OMMA, Magid, Lasicki, Fenton, and White, and each of them, engaged in breach of fiduciary duty against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(l)     On Count 12, enter a judgment that the Defendant Clark engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(m)     On Count 13, enter a judgment that the Defendant Clark engaged in intentional infliction of emotional distress against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(n)     On Count 14, enter a judgment that the Defendants Marquis and Ruiz, and each of them, engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(o)     On Count 15, enter a judgment that the Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, were unjustly enriched at the expense, and to the detriment, of the Plaintiff in an amount as determined at trial;

(p)     On Count 16, enter a judgment that the Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, tortiously interfered with a business relationship of the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(q)     On Count 17, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, and each of them, engaged in defamation *per se* against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(r)     On Count 18, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, and each of them, engaged in defamation against the Plaintiff for damages exceeding seventy-five thousand dollars ($75,000.00) as determined at trial;

(s)     award the Plaintiff exemplary and punitive damages against all Defendants as allowed by law, and each of them, jointly and severally;

(t)     award reasonable attorney fees, costs and prejudgment interest to the Plaintiff and against all Defendants as allowed by law, and each of them, jointly and severally;

(u)     award the Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff Albert J. Santoro, Esq. hereby demands

trial by jury of all issues triable of right to a jury.

Dated: June 25, 2025

Respectfully submitted,

Albert J. Santoro, Esq.
(Admitted in N.Y., D.C., and PA only)

c/o
The Bear Firm, P.C.
45 Rockefeller Plaza, 20th Floor
New York, N.Y. 10111
Telephone:     (212) 970-1099
asantoro@bearfirm.law

Plaintiff *Pro Se*