```
FILED BY _____ D.C.

JUL 15 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI
```

**` IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

Case No. 1:25-cv-22860

ALBERT J. SANTORO, ESQ.,


Plaintiff,


v.


BRIAN L. TANNEBAUM, ESQ.,
BAST AMRON, L.L.P,
JEFFREY BAST, ESQ.,
DAVID A. ROTHSTEIN, ESQ.,
DIMOND, KAPLAN & ROTHSTEIN, P.A.,
PETER J. TREMATERRA, THE PETER J.
TREMATERRA FAMILY TRUST, ERIC
J. NEUMAN, ESQ., PJT HOLDINGS, LLC,
CHRISTOPHER D. BROWN, ESQ.,
BEASLEY, DEMOS & BROWN, LLC,
BRENDAN EVERMAN, ESQ.,
PRYOR CASHMAN, LLP,
ONE MIAMI MASTER ASSOC., INC.,
MARQUIS ASSOCIATION MANAGEMENT,
LLC, CARLOS RUIZ, LORRAINE KYRIAZIS,
MARC MAGID, JOSEPH LASICKI,
MARTIN FENTON, MICHELLE WHITE,
SONALI DESAI, WALTER CLARK,
JOHN DOE a.k.a. ALEX WAR, ROBERT
SZUMILAS, and VIOLETTA SZUMILAS,


Defendants.

**PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR CONSPIRACY TO
PARTICIPATE AND PARTICIPATION
IN AN ENTERPRISE ENGAGED IN A
PATTERN OF RACKETEERING
ACTIVITY IN VIOLATION OF 18
U.S.C. §§ 1962 (b), (c), AND (d) AND
FLORIDA'S RACKETEER
INFLUENCED AND CORRUPT
ORGANIZATION ACT (FL STAT §
895), WIRE FRAUD (18 U.S.C. § 1343 &
FL STAT. § 817), MAIL FRAUD (18
U.S.C. § 1341 & FL STAT. § 817),
EXTORTION (18 U.S.C. § 1951 AND FL
STAT. § 836), TAMPERING WITH A
WITNESS (18 U.S.C. § 1512 & FL STAT.
§ 914), BRIBERY OF PUBLIC
OFFICIALS AND WITNESSES (18
U.S.C. § 201), THEFT (FL STAT. § 812),
INTERCEPTION OF WIRE, ORAL, OR
ELECTRONIC COMMUNICATIONS
(FL STAT. § 934), CIVIL
CONSPIRACY, ABUSE OF PROCESS,
CONVERSION, TORTIOUS
INTERFERENCE, INVASION OF
PRIVACY, DEFAMATION, BREACH
OF FIDUCIARY DUTY,
INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS, UNJUST
ENRICHMENT, AND RELATED
CAUSES OF ACTION**

Plaintiff, Albert J. Santoro, Esq. ("Plaintiff" and "Santoro"), pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 15(a)(1)(A), files his first amended complaint ("Amended Complaint") against Defendants Brian L. Tannebaum, Esq., Bast Amron, L.L.P., Jeffrey Bast,

Esq., David A. Rothstein, Esq., Dimond, Kaplan, and Rothstein, P.A., Peter J. Trematerra, The Peter J. Trematerra Family Trust, Eric J. Neuman, Esq., PJT Holdings, LLC, Christopher D. Brown, Esq., Beasley, Demos, & Brown, LLC, Brendan Everman, Esq., Pryor Cashman LLP, One Miami Master Association, Inc., Marquis Association Management, LLC, Carlos Ruiz, Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas (collectively as the "Defendants"), respectfully demands a jury trial and alleges the following:

## I. SUMMARY OF THE LAWSUIT

### Wealth, Greed, Arrogance and a Ruthless Pursuit to Win at Any Cost

When a wildly successful and brilliant businessman decides that his hundreds of millions of lawfully earned dollars are not enough and instead chooses to misuse, mislead and defraud the courts and multiple attorney disciplinary agencies by knowingly filing false criminal allegations, meritless lawsuits, and baseless complaints in a ruthless pursuit "to win at any cost", he is no longer a businessman. He is a criminal.

When respected and highly-accomplished attorneys are blinded by avarice and a limitless green waterfall of millions of dollars in legal fees so much so that they forgo their ethical oaths and exceed the lawful bounds of zealous advocacy by knowingly participating in the filing and prosecution of false and frivolous lawsuits, criminal allegations and bar complaints, witness tampering, wire fraud, mail fraud, suborning perjury, and illegal surveillance, they are no longer advocates. They are criminals.

When legitimate businesses, acclaimed law firms, condominium association boards, condominium management companies and (usually) law-abiding individuals cease their lawful, faithful and valuable service to their customers, their clients and their community to instead engage

in extortion, illegal surveillance, theft, and witness tampering, they are no longer legitimate businesses and lawful associations. They are criminal associations.

When individuals turn a blind eye to, join forces and share a "common interest" with Defendant Walter Clark after he **threatened to murder the Plaintiff's wife and 10-month-old infant son** by terrorizing them, "If I see your lying whore wife and bastard son in the garage, I might run over them with my car" they are lost and morally bankrupt card-carrying members of a criminal mob.

The Defendants, their proxies, and non-party co-conspirators, acting in concert and individually, as principals and/or aiding and abetting the principals, entered into criminal associations with express agreements to file false criminal[1] and Unlicensed Practice of Law[2] allegations in N.Y. and FL, to file false ethics' complaints with the Bars of N.Y., D.C., and FL[3], and to file false and frivolous civil claims in DE and FL[4] all with the agreed purpose of 1) defrauding the courts of Florida and Delaware; 2) defrauding the Florida, New York, and Washington, D.C. bars, attorney grievance committees and unlicensed practice of law department(s); 3) extorting the Plaintiff; 4) unjustly and unlawfully 'earning' 'legal' fees exceeding three million dollars ($3,000,000.00) for the defendant attorneys' participation in a criminal association and engaging in criminal conduct to the Plaintiff's detriment;  5) irreparably harming the Plaintiff's professional/personal reputation; 6) having the Plaintiff falsely arrested for fictional felony criminal allegations; 7) having the Plaintiff disbarred and/or barred from practicing law in multiple jurisdictions; 8) interfering with Plaintiff's business relationships, and 9) defaming and humiliating him in the eyes of his clients, neighbors, the legal community; the public at large.

---

[1] No charges by any law enforcement or governmental authority were ever filed against the Plaintiff.
[2] All UPL complaints were closed without any action taken against the Plaintiff.
[3] All Bar complaints in all jurisdictions were closed without any action taken against the Plaintiff.
[4] All civil claims filed against the Plaintiff were dismissed.

This lawsuit seeks to hold the Defendants accountable for their unlawful and tortious conduct.

## II. PARTIES

1.      Defendant Peter J. Trematerra ("Trematerra") is a wealthy individual, former owner of the sports team the Atlanta Blaze[5], and is associated with more than fifty (50) business entities registered in the State of Florida[6].  Trematerra resides in Singer Island, Florida.

2.      Defendant PJT Holdings, LLC, is a Florida Limited Liability Company that is owned by Trematerra and maintains its office in Singer Island, Palm Beach County, Florida.

3.      Upon information and belief, Defendant Peter J. Trematerra Family Trust is a Florida Trust ("PJT Trust") sited in Palm Beach County, Florida.

4.      Defendant Christopher A. Brown, Esq. ("Brown") is an attorney licensed to practice law in the State of Florida and is a partner in Defendant law firm, Beasley, Demos, and Brown, LLC that operates in Miami, Florida.  Brown resides in Miami, Florida.

5.      Brown has been at all times relevant to this Complaint and continuing to the present, the attorney of record for Defendant Sonali Desai.

6.      Defendant Beasley, Demos, & Brown, LLC ("Beasley") is a Florida Limited Liability Company that operates a law office located in Coral Gables, Florida.

7.      Defendant Pryor Cashman, LLP ("Cashman") is a New York Limited Liability Partnership that operates a law office located in Coral Gables, Florida.

---

[5] https://www.collegecrosse.com/2017/11/15/16650216/atlanta-blaze-owner-peter-trematerra-sued-major-league-lacrosse-april-lawsuit-david-gross
[6] https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults?InquiryType=OfficerRegisteredAgentName&inquiryDirectionType=ForwardList&searchNameOrder=TREMATERRAPETERJ%20P1200009 18041&SearchTerm=trematerra%20Peter&entityId=P12000091804&listNameOrder=TREMATERRAPE TER%20P940000860760

8.     Defendant Brian L. Tannebaum. Esq. a.k.a. the "Big Bad Lawyer" ("Tannebaum") is an attorney licensed in the State of Florida and publicly promotes himself as representing law firms and attorneys in legal ethic's matters.[7]  He resides in Miami, Florida.



## ABOUT BRIAN TANNEBAUM



**Brian L. Tannebaum**
1 SE Third Avenue,
Suite 1400 · Miami, Florida 33131
305-374-7850
btannebaum@tannebaum.com
www.tannebaum.com

### Background

Brian Tannebaum represents law firms as well as future, current, and former lawyers and legal professionals in matters before the Florida Bar and Board of Bar Examiners and in civil and criminal courts.

Specific ethics matters include Bar Admission Hearings, Grievance Defense from the initial complaint to argument before the Florida Supreme Court, Reinstatement and Readmission matters, Sanctions Hearings, Legal Malpractice Defense, partnership disputes and dissolutions as well as ethics opinions. He has been counsel in over 50 Florida Bar matters at The Florida Supreme Court level and has been appointed in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida as a Special Master.

### Bar Admissions
✓ Admitted to practice in Florida (1995)
✓ U.S. District Court for the Southern District of Florida (1995)
✓ The United States Supreme Court (1998)

### Employment
✓ General Counsel and Special Counsel
Chair, Ethics, Professional Responsibility and White Collar Defense Group.
December 2016 – Present
Bast Amron, LLP
Miami, Florida

• Concentration on representation of the legal profession in Florida Bar Admission & Defense, Legal Malpractice Defense, Sale of Law Practice, Partnership Disputes, Fee Disputes, Ethics Opinions and State and Federal Criminal Defense.
Managing Partner
December 2002- December 2016
Tannebaum Weiss, PL
Miami, Florida

• Concentration on representation of the legal profession in Florida Bar Admission & Defense, Legal Malpractice Defense, Sale of Law Practice, Partnership Disputes, Fee Disputes, Ethics Opinions and State and Federal Criminal Defense.
Attorney at Law
March 1998- December 2002
Brian L. Tannebaum, P.A.
Of Counsel, Thornton & Rothman, P.A.
Miami, Florida

✓ State and Federal Criminal Defense
Attorney at Law
April 1997 – February 1998
Bast & Lyons, P.A.
Miami, Florida

✓ State Criminal Defense
Assistant Public Defender
December 1994 – April 1997
Dade County Public Defender's Office
Miami, Florida

### Education
✓ Stetson University College of Law
Gulfport, Florida
Juris Doctor 1994

✓ 1994 National Champion, ABA Criminal Justice Trial Advocacy Competition, Chicago, Illinois; Teaching Assistant, Trial Practice.

✓ University of South Florida
Tampa, Florida
B.A. Political Science, 1991

✓ Student Body President, 1989-1991.

### Professional Associations/Committees
✓ President, Florida Association of Bar Defense Lawyers, 2010-Present
✓ Member, Association of Professional Responsibility Lawyers
✓ Member, Ad Hoc Committee on Attorney Admissions, Peer Review and Attorney Grievance for the United States District Court, Southern District of Florida, 2007–2010
✓ President, Florida Association of Criminal Defense Lawyers, 2010-2011
✓ Member, Board of Directors, Florida Association of Criminal Defense Lawyers, 2001-Present
✓ Legislative Chair, Florida Association of Criminal Defense Lawyers, 2003-2007
✓ President, Miami Chapter, Florida Association of Criminal Defense Lawyers, 2005-2006
✓ Executive Council, Florida Bar Criminal Law Section, 2008-present
✓ Member, Board of Directors, Dade County Bar Association, 2002-2005
✓ Member, Florida Bar Criminal Procedure Rules Committee, 2006-2012
✓ Chair, Florida Bar Traffic Rules Committee, 2003-2004
✓ Vice-Chair, Florida Bar Grievance Committee, 2002-2003
✓ Member, Florida Bar Grievance Committee, 2000-2003
✓ Member, National Association of Criminal Defense Lawyers.

### Community Organizations
✓ Chair-elect and Member, Board of Directors, Florida Innocence Project
✓ Past Chair, Historical Museum of Southern Florida 11th Circuit Judicial Historical Society
✓ Past President, Ambassadors of Mercy Hospital Board of Directors.

---

[7] https://www.tannebaum.com/about

9.      Tannebaum is the owner and operator of Brian L Tannebaum, P.A. ("Tannebaum P.A."), which advertises the provision of legal services in the areas of attorney discipline and admissions. Tannebaum P.A. operates offices located in Miami and Tallahassee, Florida. [8]

10.     Tannebaum is also "General Counsel" and "Special Counsel" to, and agent of, Defendant Bast Amron, L.L.P. which promotes Tannebaum to the general public on their website as the chair of the law firm's "Ethics, Professional Responsibility, and White Collar [sic] Defense Group." [1, 9]



HOME     WHO WE ARE     OUR TEAM     WHAT WE DO

<< Back

## BRIAN L. TANNEBAUM

Special Counsel



Brian is the firm's Special Counsel and chairs the Ethics, Professional Responsibility, and White Collar Defense Group. Brian represents law firms as well as future, current, and former lawyers, judges, and legal professionals in matters before the Florida Bar, the Judicial Qualifications Commission, and Board of Bar Examiners as well as in civil and criminal courts. Brian has been counsel in over 100 Florida Bar matters at The Florida Supreme Court level and has been appointed in the Eleventh Judicial Circuit Court in and for Miami-Dade County, Florida as a Special Master.

---

[8] https://www.tannebaum.com
[9] https://www.bastamron.com/our-team/brian-l-tannebaum/

11.     Tannebaum has served and is presently serving as a Florida Bar Professional Ethics
Committee Member until June 6, 2026 [10], "has been counsel in over 50 Florida Bar matters at The
Florida Supreme Court level…", is a member of the Association of Professional Responsibility
Lawyers, and, from December 2002 until December 2016, "Concentrat[ed] on representation of
the legal profession in Florida Bar Admission & Defense…[and] Ethics Opinions." [11]





Rules, Ethics & Professionalism          Search

About The Bar ▾    News & Events ▾    Public ▾    Members ▾    Login    Find a Lawyer

## COMMITTEE MEMBER PROFILE

HOME / ABOUT THE BAR / COMMITTEES / COMMITTEE MEMBER PROFILE

### ABOUT THE BAR

Frequently Asked Questions

President's Welcome

The Florida Bar Board of Governors

Committees

Sections / Divisions

Board Certification

Florida Voluntary Bars

Florida Registered Paralegals

Strategic Plan / Research

Leadership Academy

Working At The Bar

Contact The Florida Bar

# Brian Lee Tannebaum

Member in Good Standing                    Eligible to Practice Law in Florida

| | |
|---|---|
| Bar Number: | 47880 |
| Mail Address: | Brian L. Tannebaum, P.A.<br>1 SE 3rd Ave Ste 2410<br>Miami, FL 33131-1700 |
| | Office: 305-374-7850 |
| Email: | btannebaum@tannebaum.com ✉ |
| Personal Bar URL: | https://www.floridabar.org/mybarprofile/briantannebaum |
| vCard: | 📇 |
| County: | Miami-Dade |
| Circuit: | 11 |
| Admitted: | 04/28/1995 |
| 10-Year Discipline History: | None |
| Law School: | Stetson University College of Law, 1994 |

| Committees: | Committee | Office | Term |
|---|---|---|---|
| | Professional Ethics Committee(CM) | | 06/30/2026 |

---

[10] https://www.floridabar.org/about/cmtes/profile/?num=47880
[11] https://www.tannebaum.com/about

12.     Defendant Bast Amron, L.L.P. ("Bast Amron") is a Florida law firm which, upon information and belief, fraudulently holds itself out to the general public as "Bast Amron, L.L.P." on its website[12], LinkedIn profile[13], and that is held out as such on Defendant "Co-Managing Partner" Jeffrey Bast's Florida Bar profile[14] and LinkedIn profile[15] despite not actually being a registered and authorized Limited Liability Partnership in Florida or in any other jurisdiction.

BAST AMRON is a boutique law firm focused on business insolvency and litigation. Our insolvency practice emphasizes workouts, restructurings, liquidations, bankruptcy, and bankruptcy avoidance. We represent debtors, creditors, committees, trustees, and other fiduciaries in bankruptcies, receiverships, and assignments for the benefit of creditors. Our litigation practice is primarily plaintiff oriented. We know how to investigate, formulate and prosecute claims arising from business disputes. By combining our business insolvency knowledge with our extensive courtroom experience, we successfully guide our clients through all aspects and types of commercial litigation in state and federal courts across the country. Whether the issue is litigation or insolvency or both, we view our clients' needs through a holistic lens to formulate and implement dynamic solutions to their most important challenges.

Copyright 2025
Bast Amron LLP. All rights reserved.
Attorney Advertising. Prior results do not guarantee a similar result.

One Southeast Third Avenue,
Suite 2410 | Miami, FL 33131
T: 305.379.7904 | F: 305.379 7905
Return to top

## Jeffrey Bast "Jeff"



|  | Member in Good Standing | Eligible to Practice Law in Florida |
|---|---|---|
| Bar Number: | 996343 | |
| Mail Address: | Bast Amron LLP | |
| | SunTrust International Center | |
| | 1 SE 3rd Ave Ste 2410 | |
| | Miami, FL 33131-1700 | |
| | Office: 305-379-7904 | |
| | Fax: 305-379-7905 | |

---

[12] https://www.bastamron.com/who-we-are/
[13] https://www.linkedin.com/company/bast-amron-llp/
[14] https://www.floridabar.org/directories/find-mbr/profile/?num=996343
[15] https://www.linkedin.com/in/jeffreybast-insolvencylitigator



in

# BAST AMRON LLP

BUSINESS. INSOLVENCY. LITIGATION.

Legal Services · Miami, FL · 1K followers · 11-50 employees

 **Streaming on YouTube, Spotify, Amazon Music, and Apple Podcasts. Check us out.** 

 Elias Leonard & 2 other connections follow this page

**"It is a really top-quality firm with good pedigree of experience," says one client, who also highlights that the lawyers "are tremendous litigators." ~ Chambers USA**

( **+ Follow** )   ( ◢ Message )   ( Visit website ☒ )   ( ⋯ )

**Home**   About   Posts   Jobs   People   Insights



⋯

## Jeffrey Bast

Water Lover | Family Man | Conservationist | Podcaster | Insolvency Litigator at business bankruptcy boutique BAST AMRON LLP

Miami, Florida, United States · Contact Info
4K followers · 500+ connections

 See your mutual connections

( **Join to view profile** )   ( ◢ Message )

- BAST AMRON LLP

▣ New York University School of Law

⊗ Websites

13.     Defendant David A. Rothstein, Esq. ("Rothstein") is an attorney licensed to practice law in the State of Florida and is a partner in Defendant law firm, Dimond, Kaplan, and Rothstein, P.A.   Rothstein resides in Miami, Florida.   Rothstein is or was previously the attorney for Defendants Trematerra, PJT, PJT Trust, and Carlos Ruiz.

14.     Rothstein advertises that he is experienced in "Commercial Litigation" and "Class-Action Litigation" [16].



**David A. Rothstein**
ATTORNEY

**ABOUT DAVID A. ROTHSTEIN**

**David A. Rothstein** was born September 28, 1970 in Yonkers, New York. Mr. Rothstein received his B.A. cum laude in 1992 from the College of the Holy Cross, where he also played varsity basketball and was elected Captain by his teammates as a senior. Mr. Rothstein then attended the University of Miami School of Law, where he served as a member of the University of Miami Law Review and graduated cum laude in 1995.

For the first five years of his practice, Mr. Rothstein worked for Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., one of Florida's premier full-service law firms, where his practice as a trial lawyer involved all aspects of civil litigation. Mr. Rothstein next joined Hanzman & Criden, P.A., where he was promoted to partner and worked closely with The Honorable Michael A. Hanzman, now one of South Florida's most respected trial court judges. Since the Founding of DKR in 2003, Mr. Rothstein has served as the Firm's President and Managing Shareholder. In addition to his managerial responsibilities, Mr. Rothstein has a wide-ranging civil litigation practice and captains a team that handles matters in state court, federal court, and in arbitration proceedings.

Away from work, Mr. Rothstein enjoys spending time with his family, eating well, exercising vigorously, and traveling whenever the opportunity presents itself.

Areas of Practice                                                                                                 —

- Commercial Litigation
- Class-Action Litigation

---

[16] https://dkrpa.com/attorneys/david-a-rothstein/

15.     Defendant Dimond, Kaplan, and Rothstein, P.A. ("Dimond") is a Florida Corporation and Professional Association that operates a law office in Miami, Florida.

16.     Defendant Eric J. Neuman, Esq. ("Neuman") is an attorney licensed to practice law in the States of Florida and New York and advertises "[e]xtensive experience in complex litigation"[17] . Neuman resides and operates a law office in the Southern District of Florida.



17.     Defendant Brendan Everman, Esq. ("Everman") is an attorney licensed to practice law in the State of Florida and is a partner in Defendant law firm, Pryor Cashman, LLP that operates in Miami, Florida.  Everman resides in Miami, Florida.

---

[17] https://www.neumanlawfla.com/eric-j-neuman

18.     Everman has been at all times relevant to this Complaint and continuing to the present, the attorney of record for Defendant Violetta Szumilas.

19.     Everman has been at various times relevant to this Complaint the attorney of record for Robert Szumilas.

20.     Everman has been at various times relevant to this Complaint the attorney for Defendant Joseph Lasicki.

21.     Everman has been at various times relevant to this Complaint the attorney for Defendant Lorraine Kyriazis.

22.     Defendant Jeffrey Bast, Esq. ("Bast") is an attorney licensed to practice law in the states of Florida and New York and holds himself out as the "Co-Managing Partner" of Defendant Bast Amron, L.L.P.

23.     Defendant One Miami Master Association, Inc. ("OMMA") is a Florida Corporation with its principal address in Miami, Florida.

24.     Defendant Marquis Association Management, LLC ("Marquis") is a Florida Limited Liability Company with its offices in Miami, Florida.

25.     Defendant Carlos Ruiz ("Carlos Ruiz") is an individual employed in Miami, Florida and residing in Broward County, Florida.

26.     Defendant Lorraine Kyriazis ("Kyriazis") is an individual residing in Miami, Florida.

27.     Defendant Marc Magid ("Magid") is an individual residing in Miami, Florida.

28.     Defendant Joseph Lasicki ("Lasicki") is an individual residing in Miami, Florida.

29.     Defendant Martin Fenton ("Fenton") is an individual residing in Miami, Florida.

30.     Defendant Michelle White ("White") is an individual residing in Miami, Florida.

31.     Defendant Sonali Desai ("Desai") is an individual residing in Miami, Florida.

32.     Desai has falsely claimed to be, at various times relevant to this Complaint, the attorney for Defendant Lasicki.

33.     Desai has falsely claimed to be, at various times relevant to this Complaint, the attorney for Defendant Kyriazis.

34.     Desai has falsely claimed to be, at various times relevant to this Complaint, the attorney for Defendant Violetta Szumilas.

35.     Defendant Walter Clark ("Clark") is an individual residing in Miami, Florida.

36.     Defendant Robert Szumilas ("Robert Szumilas") is an individual residing in Miami, Florida.

37.     Defendant Violetta Szumilas ("Violetta Szumilas") is an individual residing in Miami, Florida.

38.     Defendant John Doe, a.k.a. Alex War ("Doe"), upon information and belief, is one or more individuals, including, but not limited to, Kyriazis, Lasicki, Fenton, Magid, R. Szumilas, and/or V. Szumilas.

39.     Plaintiff Albert J. Santoro, Esq. ("Santoro" and "Plaintiff") is an attorney licensed to practice law in the State of New York, Washington, District of Columbia, and the Commonwealth of Pennsylvania, and is admitted to practice before the United States Tax Court, U.S. Court of Appeals for the Second, Third, Eleventh, and Federal Circuits, U.S. District Courts for the Southern District of New York (SDNY), the Eastern District of New York (EDNY), the Northern District of New York (NDNY), and the Western District of New York (WDNY).  Santoro resides in Woodhaven, New York.

## III. NATURE OF ACTION

40.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

41.     This is an action for conspiracy to participate in and participation in one or more criminal enterprises and/or associations, engaging in a continuing pattern of racketeering activity, arising under 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d) ("Federal RICO") and Florida's Racketeer Influenced and Corrupt Organizations Act (Fl. Stat. § 895) ("Florida RICO"), including, but not limited to, wire fraud in violation of both 18 U.S.C. § 1343 and Fl. Stat. § 817, mail fraud in violation of both 18 U.S.C. § 1341 and Fl. Stat. § 817, extortion in violation of both 18 U.S.C. § 1951 and Fl. Stat. § 836.05, tampering with a witness in violation of both 18 U.S.C. § 1512 and Fl. Stat. § 914, bribery of public officials and witnesses in violation of 18 U.S.C. § 201, theft in violation of Fl. Stat. § 812, interception and disclosure of wire, oral, or electronic communications in violation of Fl. Stat. § 934, conspiracy to commit wire fraud in violation of both 18 U.S.C. § 1343 and Fl. Stat. § 817, conspiracy to commit mail fraud in violation of both 18 U.S.C. § 1341 and Fl. Stat. § 817, conspiracy to commit extortion in violation of both 18 U.S.C. § 1951 and Fl. Stat. § 836.05, conspiracy to commit tampering with a witness in violation of both 18 U.S.C. § 1512 and Fl. Stat. § 914, conspiracy to commit bribery of public officials and witnesses in violation of 18 U.S.C. § 201, civil conspiracy, abuse of process, conversion, aiding and abetting conversion, tortious interference with business relationship, aiding and abetting tortious interference with business relationship, invasion of privacy, aiding and abetting invasion of privacy, defamation, aiding and abetting defamation, breach of fiduciary, intentional infliction of emotional distress, loss of consortium, negligent supervision, and unjust enrichment.  The conduct and unlawful actions of the Defendants affect interstate commerce as 1) Plaintiff is an attorney who practices

14

law in multiple jurisdictions located in multiple states in the United States of America and in

engaged in interstate commerce; 2) Plaintiff operates multiple businesses which operate in multiple

states which are engaged in interstate commerce; 3) Defendants Trematerra, PJT, and PJT Trust

operate multiple businesses which engage in interstate commerce;  4) Defendants OMMA and

Marquis provide and are provided products and services which originate and/or terminate in

multiple states in the U.S.; and 5) Defendants Rothstein, Tannebaum, Neuman, Bast, and Bast

Amron, and Cashman practice law in multiple jurisdictions serving individuals and businesses

engaged in interstate commerce.

## IV.  JURISDICTION AND VENUE

42.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 41 as if fully

set forth herein.

43.     Defendant Trematerra is the settler and trustee of Defendant PJT Trust and is the

owner and manager of Defendant Limited Liability Company, PJT.

44.     Defendant Rothstein is a shareholder and corporate director of Defendant Dimond.

45.     Upon information and belief, Defendant Bast is the "Co-Managing Partner" and a

co-owner of Defendant Bast Amron[18].

46.     Defendants Kyriazis, Magid, Fenton, Lasicki, and White are, or were at times

relevant to this Amended Complaint, officers and directors of Defendant OMMA.

47.     Defendant Carlos Ruiz is an authorized representative of Defendant Limited

Liability Company Marquis.

48.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1332(a)(1) because the amount in controversy exceeds seventy-five thousand dollars ($75,000.00),

---

[18] Upon information and belief, Defendant Bast Amron, L.L.P. is a fictious entity and not registered as a limited
liability partnership in any U.S. jurisdiction.

exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiff and each and every defendant ("Diversity Jurisdiction").

49.     This Court also has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1964 and 28 U.S.C. § 1331 because this action arises, in part, under the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d) ("RICO") ("Federal Question Jurisdiction").

50.     This Court also has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 as the claims in this Amended Complaint that are based on state statutes "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

51.     This Court has personal jurisdiction over defendants Brian L. Tannebaum, Esq., David A. Rothstein, Esq., Jeffrey Bast, Esq., Christopher D. Brown, Esq., Brendan Everman, Esq., Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas because said individual defendants reside in Miami, Florida, which is located in the Southern District of Florida.

52.     This Court has personal jurisdiction over defendants Bast Amron, L.L.P., Dimond, Kaplan and Rothstein, P.A., Beasley, Demos, & Brown, LLC, Pryor Cashman LLP, One Miami Master Association, Inc., and Marquis Association Management, LLC, because these business entities operate offices in Miami, Florida, which is located in the Southern District of Florida.

53.     This Court has personal jurisdiction over defendants, Peter J. Trematerra and Eric J. Neuman, Esq., because said individual defendants reside in Palm Beach County Florida, which is located in the Southern District of Florida.

54.     This Court has personal jurisdiction over defendant, PJT Holdings, LLC, because this business entity operates its office in Singer Island, Florida, which is located in the Southern District of Florida.

55.     This Court has personal jurisdiction over defendant, Peter J. Trematerra Family Trust, because, upon information and belief, it is a Florida Trust sited in, and conducts business in, Palm Beach County, Florida, which is located in the Southern District of Florida.

56.     This Court has personal jurisdiction over defendant Carlos Ruiz because said individual defendant resides in Broward County, Florida, which located in the Southern District of Florida.

57.     This Court also has personal jurisdiction over all Defendants because many of the acts complained of herein occurred in whole or in part in and/or emanated from Miami, Florida, which is located in the Southern District of Florida.

58.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) because defendants Brian L. Tannebaum, Esq., David A. Rothstein, Esq., Jeffrey Bast, Esq., Eric Neuman, Esq., Christopher D. Brown, Esq., Brendan Everman, Esq., Carlos Ruiz, Lorraine Kyriazis, Marc Magid, Joseph Lasicki, Martin Fenton, Michelle White, Sonali Desai, Walter Clark, John Doe a.k.a. Alex War, Robert Szumilas, and Violetta Szumilas reside in this judicial district and because defendants Bast Amron, L.L.P., Dimond, Kaplan, and Rothstein, P.A., Beasley, Demos, & Brown, LLC, Pryor Cashman LLP, PJT Holdings, LLC, One Miami Master Association, Inc., and Marquis Association Management, LLC, maintain their offices in this judicial district.

59.     This Court is also the proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district.

## V.  FACTUAL ALLEGATIONS

### The Trematerra-Rothstein Criminal Association

60.     Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, and Dimond conducted, attended and participated in meetings, conducted and participated in telephone conferences, authored, drafted, edited, published, and exchanged documents and communications both electronically (i.e. emails and text messages) and through the use of the mail and delivery services, including the United States Postal Service and Federal Express, with the object and purpose to form, and which did form, the Trematerra-Rothstein Criminal Association which intended to carry out, agreed to carry out, conspired to carry out, and which did carry out racketeering activities prohibited by 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d) and Fl Stat. §§ 895.03(2), 895.03(3), and 895.03(4) such as extortion, wire fraud, mail fraud, and perjury which affected interstate commerce in that affected individuals, including the Plaintiff, and entities such as the state courts located in Florida and Delaware, engage in and operate in interstate commerce in their provision of services and products to individuals and businesses located in multiple states of the United States of America.

61.     The object of the Trematerra-Rothstein Criminal Association and Trematerra-Rothstein conspiracy was manifold: a) control and ownership of all of the membership interests in PBM Group by extorting the Other Members and driving them to financial ruin through the use of meritless lawsuits and the accompanying enormous legal fees to defend against such; b) the extortion of the Plaintiff into leaving the employ of the Other Members and paying monies,

specifically twenty-five thousand dollars ($ 25,000.00) and four hundred seventy-five thousand dollars ($475,000.00) to the Trematerra-Rothstein Criminal Association by utilizing meritless lawsuits, false felony UPL allegations, and false bar complaints in order to extort, financially decimate, publicly and professionally humiliate, and have the Plaintiff disbarred and barred from practicing law in multiple jurisdictions; and c) bill and collect millions of dollars in legal fees by filing the Trematerra-Rothstein Criminal Association's multiple lawsuits, UPL, and ethics complaints in multiple jurisdictions including Florida, New York, and Delaware.

62.     The Trematerra-Rothstein Criminal Association perpetrated its unlawful conduct and violations of enumerated federal and state RICO predicated offenses for a period commencing from, at the latest, in or about June 2023, and continuing until, at the earliest, in or about May 2025.

63.     Trematerra is the owner, member, manager, and principal of PJT.

64.     Trematerra is the trustee, creator, trustor, and settlor of the PJT Trust.

65.     Upon information and belief, Trematerra is the alter ego of both PJT and the PJT Trust in that he uses each to pay the expenses of the others.

66.     Upon information and belief, Trematerra regularly comingles the assets of Trematerra, PJT and the PJT Trust.

67.     Upon information and belief, Trematerra regularly uses the assets of PJT and the PJT Trust for his own personal use.

68.     Upon information and belief, Trematerra regularly pays the expenses of PJT and PJT Trust with his own personal monies.

69.     Trematerra is a serial and vexatious litigator named in at least thirty (30) lawsuits sited in the state of Florida (and associated with many more litigations when other jurisdictions are considered).

70.     Upon information and belief, and according to statements made by Trematerra, Trematerra regularly files meritless lawsuits against companies and individuals with less financial means than him in order to force them to agree to settlements or risk being forced into bankruptcy. Two (2) such examples are the Delaware Suit against the Other Members and the Miami Lawsuit against the Plaintiff.

71.     In order to cause fear and anxiety in the Other Members and other Trematerra victims, Trematerra has stated that he "spends $500,000.00 a year on the 'sport' of litigation."

72.     Upon information and belief, Trematerra regularly uses funds contained in the PJT Trust in order to fund meritless litigation with the purpose of forcing his adversaries into unfavorable settlements or risk being bankrupted by Trematerra, PJT, and/or PJT Trust.

73.     Prior to June 7, 2023, PJT was a member of PBM Group Holdings, LLC ("PBM Group") a newly created Delaware limited liability company formed for the purpose of opening vegetarian Italian food restaurants ("PBM Group").

74.     Prior to June 7, 2023, Trematerra the manager of PBM Group.

75.     Prior to June 7, 2023, PBM Group was owned by Trematerra, PJT, PJT Trust, and three other members, Daniel Costanzo, Benjamin Costanzo, and Brian Fitzpatrick (collectively as the "Other Members").

76.     As of June 7, 2023, and, upon information and belief, continuing to the present, PBM Group was an empty, assetless shell company that did not have any physical locations, offices, employees, sales, revenue, or receivables.  PBM Group, despite its lofty aspirations of

opening up multiple vegan Italian restaurant locations throughout the United States, never purchased, never owned, nor ever sold to anyone, anywhere, *even a single slice of bread.* Despite such, the Trematerra-Rothstein Criminal Association paid and/or incurred at least three million dollars ($3,000,000.00) in legal fees, to at least five (5) law firms, in at least three (3) jurisdictions, pursuing meritless lawsuits, baseless felony UPL allegations, and meritless bar complaints against the Plaintiff and the Other Members.

77.   Defendants Rothstein, Dimond, Tannebaum, Bast Amron, and Neuman were paid 'legal fees' as attorneys for their role and conduct in the Trematerra-Rothstein Criminal Association.

78.   Commencing in or about February 2023 until in or about May 15, 2025, Trematerra, PJT, and PJT Trust extorted the Other Members in an effort to illegally convert the Other Members' membership interest in PBM Group by threatening to sue and bankrupt the Other Members unless they turned over a total of ninety percent (90%) of the total membership interests in PBM Group.

79.   Trematerra, PJT, and PJT Trust repeatedly threatened to file lawsuits and bankrupt the Other Members unless they acquiesced and gave Trematerra, PJT, and PJT Trust their membership interests in PBM Group.

80.   Trematerra, PJT, PJT Trust, Rothstein, and Dimond agreed to, conspired to, directed, ordered, and aided and abetted others in the filing of a meritless lawsuit in Delaware against the Other Members which contained knowingly false statements in a further effort to extort the Other Members into giving over the Other Members' membership interest in PBM Group to Trematerra, PJT, and PJT Trust.

81.     On or about June 3, 2023, Plaintiff was hired by the Other Members and Plant Based Mafia as a, LLC Manager and Chief Operating Officer of Plant Based Mafia, LLC ("Plant Based Mafia").

82.     Plant Based Mafia was an entity solely owned and controlled by the Other Members.

83.     Plant Based Mafia held all of the intellectual property owned by the Other Members such as recipes, menus, artwork, theme, organizational structure, etc. of the Other Members' Italian Vegan Restaurant "Plant Based Mafia" located in Palm Beach Gardens, Florida.

84.     On or about June 3, 2023, Plaintiff, on behalf of Plant Based Mafia and the Other Members, while performing management services pursuant to a written engagement agreement between Plant Based Mafia and the Tranquility Group, LLC, a company owned by Plaintiff, engaged an attorney who advised Plant Based Mafia and the Other Members to expel Trematerra and PJT from PBM Group.

85.     Said attorney prepared, among other documents, a corporate resolution expelling Trematerra and PJT from PBM Group ("Expulsion Resolution") pursuant to the terms of PBM Group's Operating Agreement ("Operating Agreement").

86.     Due to Trematerra, PJT, and PJT Trust's conduct, including, but not limited to, economic extortion, breach of contract, and other business torts committed against the Other Members and PBM Group, Trematerra, PJT, and PJT Trust were lawfully expelled from PBM Group by the Other Members pursuant to the Expulsion Resolution served on Trematerra and PJT[19].

---

[19] The judge who presided over the bench trial in Delaware, in his opinion and verdict, found that Trematerra's conduct was so reckless that it exceeded the threshold required for *criminal* negligence. The judge further found that Trematerra and PJT were entirely at fault and ruled against them on every single

87.     Once lawfully expelled from PBM Group pursuant to the Expulsion Resolution, Trematerra became enraged that he was "thrown out" of PBM Group and began a rampage of retribution and retaliation.

88.     Trematerra retained at least five (5) high-end law firms to file litigation, UPL, and Bar complaints against Plaintiff in New York and Florida, and against the Other Members in Delaware.

89.     Despite PBM Group being an assetless, revenue-less, office-less, and employee-less shell company, upon information and belief, Trematerra, PJT, and the PJT Trust, incurred legal fees exceeding three million dollars ($3,000,000.00) filing and prosecuting multiple frivolous lawsuits, multiple baseless UPL allegations, and meritless bar complaints in at least three (3) jurisdictions.[20]

90.     Trematerra, PJT, and PJT Trust retained Defendant Rothstein and his firm, Defendant Dimond, to serve as lead counsel, lead coordinator, team leader, and the "tip of the spear" in all of the Trematerra-Rothstein Criminal Association's offensive litigations and assigned Rothstein as "Upper Management" for all Federal and Florida RICO purposes as defined in the pertinent statutes.

91.     Rothstein was in charge of directing all of the efforts of the various legal teams and regularly gave them instructions in email communications where he addressed them as "Team".

92.     Rothstein and Dimond recruited and engaged Tannebaum and Bast Amron to serve Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association's interests in

---

cause of action alleged in the suit, ordering Trematerra and PJT to indemnify and pay, without limitation, the Other Members legal fees and costs.
[20] All of Trematerra, PJT, and PJT Trust's efforts failed.  They lost the Delaware suit, the Miami suit was dismissed, and all UPL and Bar complaints against Plaintiff filed in N.Y. and FL were either outright dismissed or closed without any negative finding against Plaintiff.

filing multiple false criminal allegations that the Plaintiff, on multiple occasions, engaged in the felonious unlicensed practice of law ("UPL").

93.    Rothstein and Dimond recruited and engaged law firm, McCarter English, to serve Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association's interests in filing and prosecuting a meritless lawsuit against the Other Members in Delaware[20].

94.    Rothstein and Dimond recruited and engaged law firm, Frankfurt, Kurnit, Klein, and Selz ("Frankfurt"), and attorney, Tyler Maulsby, Esq. ("Maulsby"), to serve Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association's interests in filing false criminal allegations that the Plaintiff engaged in UPL, in addition to other bar complaints against the Plaintiff in New York[20].

95.    Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association's offensive legal team was made up of the following team members, including, but not limited to, Rothstein, Dimond, Alexander M. Peraza, Esq. ("Peraza"), Eshaba Jahir-Sharuz Esq. ("Jahir-Sharuz"), Tannebaum, Bast Amron, Neuman, Neuman Law, P.A. ("Neuman Law"), McCarter English, Benjamin Smyth, Esq. ("Smyth"), Stephanie Dallaire, Esq. ("Dallaire"), Maliheh Zare, Esq. ("Zare"), Frankfurt, and Maulsby (the "Team"[21]).

The Fraudulent and Meritless Lawsuit Against The Other Members (Victims 1, 2, and 3)

96.    Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association utilizing the Team and McCarter English, sued the Other Members in Delaware in June 2023 ("Delaware Suit").

---

[21] While all of the attorneys and firms that made up the "Team" were involved in the wrongs committed against the Plaintiff and the Other Members, only Trematerra, PJT, the PJT Trust, Rothstein, Dimond, Tannebaum, Bast Amron, and Neuman were part of the "Trematerra-Rothstein Criminal Association" and therefore liable for Federal RICO and Florida RICO violations.

97.     The Trematerra-Rothstein Criminal Association filed the meritless Delaware Lawsuit against the Other Founders which falsely alleged that the Other Founders breached a contract with PJT and wrongfully converted PJT's membership interest despite Trematerra-Rothstein Criminal Association having actual knowledge in the form of documents and communications that Trematerra, PJT, and the PJT Trust had breached and repudiated said contract many months before the Other Founders properly expelled Trematerra, PJT, and the PJT Trust.

98.     Specifically, the Trematerra-Rothstein Criminal Association had text messages and documents which reflected that "Trematerra repudiated his obligations under the LLC Agreement on March 4, 2023, when [Trematerra] wished the [Other Members] 'the best of luck' and asked for a buyout."

99.     Specifically, the Trematerra-Rothstein Criminal Association had text messages and documents which reflected that "[Trematerra] repudiated his obligations yet again when he told the [Other Members] that [Trematerra] would cancel the Lease and not 'spend any more time on this venture' until they could find a new 'path [t]hat is…agreeable."

100.    Specifically, the Trematerra-Rothstein Criminal Association had text messages and documents which reflected that "[Trematerra] repudiated his obligations a final time on March 15, 2023, when he refused to move forward with one restaurant in California and asked for a buyout."

101.    Despite knowing that the allegations the Trematerra-Rothstein Criminal Association made in the Delaware Suit against the Other Members were completely false and baseless, the Trematerra-Rothstein Criminal Association filed them in the Court of Chancery for the State of Delaware in an effort to defraud said court and in an effort to extort the other members into paying money and turn over the Other Members' membership interests in PBM Group to Trematerra, PJT, and PJT Trust.

102.    The Trematerra-Rothstein Criminal Association electronically transmitted and electronically filed and/or utilized the United States Postal Service and/or Federal Express to transmit and file the Delaware Suit in the Court of Chancery for the State of Delaware containing knowingly false statements and made for a wholly improper purpose (extortion) and said Court of Chancery, opened an electronic civil case file, issued a case number, assigned a judge, and provided court services to the Trematerra-Rothstein Criminal Association.

103.    The Trematerra-Rothstein Criminal Association demanded that the Other Members pay to Trematerra, PJT, and PJT Trust, three-hundred thousand dollars ($300,000.00) or they would bankrupt the Other Members by causing them to incur potentially millions in legal fees defending the meritless Delaware Suit.   In actuality, the Other Members incurred legal fees exceeding three-hundred thousand dollars ($300,000.00) in defending against the Trematerra-Rothstein Criminal Association's baseless Delaware Suit but ultimately prevailed on every meritless cause of action alleged against them.

104.    During the trial held for the Delaware Suit in November 2024, Trematerra knowingly committed perjury during his testimony.   Specifically, Trematerra, when asked by defense counsel why he didn't turn over *any* text messages between Trematerra and his agent, Chris Russo, Trematerra falsely testified that Trematerra had deleted all such communications because Trematerra's phone memory was expended and he needed to make extra room by deleting *those* text messages.

105.    Several weeks after the conclusion of the trial in the Delaware Suit, Trematerra, PJT, PJT Trust, and the Trematerra-Rothstein Criminal Association disclosed, filed, and served with the Delaware Court hundreds of text messages between Trematerra, PJT, PJT Trust, and Chris Russo.   These text messages clearly showed that Trematerra, PJT, PJT Trust and Russo were

26

conspiring to take over all of the intellectual property of the Other Members and convert it for their own use to the detriment of the Other Members.

106.    Said text messages contained conversations evincing a conspiracy between Trematerra, PJT, PJT Trust and Chris Russo to breach the agreements with the Other Members to wit:  Trematerra, PJT, PJT Trust and Chris Russo discussed taking the mafia-themed restaurant concept belonging to the Other Members and creating their own, "Mama Mafia Restaurant" without the consent, participation of, and/or sharing of profit with the Other Members in clear violation of the agreements between the parties and in breach of various fiduciary duties owed to the Other Members by Trematerra, PJT, and PJT Trust.

<u>The Fraudulent and Meritless Miami Lawsuit against the Plaintiff (Victim 4).</u>

107.    The Trematerra-Rothstein Criminal Association, utilizing the Team, Neuman, Rothstein, and Dimond, sued Santoro in Florida in June 2023[22] [23].  This suit was styled, *PJT Holdings, LLC v. Albert J. Santoro,* and filed in the Circuit Court for the 11th Judicial District of Florida, Miami-Dade County ("Circuit Court") under Case No. 2023-018796-CA-01 (the "Miami Lawsuit").

108.    The first operative complaint filed by Trematerra-Rothstein Criminal Association falsely claimed that the Plaintiff committed tortious interference, defamation, and related causes of action against Trematerra, PJT, and the PJT Trust.

109.    The Trematerra-Rothstein Criminal Association had actual knowledge that none of the material allegations contained in the first operative complaint were true or grounded in fact.

---

[22] Defendant Neuman filed the original lawsuit and operative complaint against Plaintiff, but Neuman was replaced within days by Rothstein as counsel of record.  Neuman, however, continued his participation in the Trematerra-Rothstein Criminal Association.
[23] The civil case against the Plaintiff in Florida was dismissed.

110.    The Trematerra-Rothstein Criminal Association knowing that the material allegations in the first operative complaint were false, intended to defraud, and did defraud the Miami-Dade Circuit Court ("Circuit Court") to wit: The Trematerra-Rothstein Criminal Association electronically transmitted and electronically filed the first operative complaint using the State of Florida's "Florida Courts E-Filing Portal" ("E-File") containing knowingly false statements and made for a wholly improper purpose (extortion) and the Circuit Court, relying on the statements made by the Trematerra-Rothstein Criminal Association, opened an electronic civil case file, issued a case number, assigned a judge, and provided court services to the Trematerra-Rothstein Criminal Association.

111.    If the Circuit Court was aware that the Trematerra-Rothstein Criminal Association was misusing the judicial system by allowing the Trematerra-Rothstein Criminal Association to use the judicial system to extort the Plaintiff, the Circuit Court would not have opened an electronic civil case file, issued a case number, assigned a judge, and provided court services to the Trematerra-Rothstein Criminal Association.

112.    The Trematerra-Rothstein Criminal Association knowing that the material allegations in the first operative complaint were false, intended to extort, and did extort the Plaintiff by forcing him to resign from Plant Based Mafia.

113.    The Trematerra-Rothstein Criminal Association had actual knowledge that Trematerra, PJT, and the PJT Trust were properly expelled from PBM Group because the Trematerra-Rothstein Criminal Association were in possession of countless documents and communications evincing irrefutable proof that the claims made in the first operative complaint were false.

114.    The Trematerra-Rothstein Criminal Association intentionally, purposely, and with criminal intent, withheld the communications between Trematerra and Chris Russo which clearly demonstrated that Trematerra, PJT, and PJT Trust were properly expelled from PBM Group, in order to defraud the Delaware court in the Delaware Suit and the Florida court in the Miami Lawsuit.

115.    Said first operative complaint, in an effort to embarrass, humiliate and extort the Plaintiff, and without any legal basis for doing so, listed the Plaintiff's *complete* home address, his entire LinkedIn Profile, a magazine article and all documents relating to a conviction for conduct nearly 25 years ago, and other extraneous information and allegations which had no nexus to the causes of action pled in an effort to extort and humiliate the Plaintiff.

116.    The Trematerra-Rothstein Criminal Association had actual knowledge that their claims contained in their first amended complaint that Plaintiff committed tortious interference, aiding and abetting a breach of contract, aiding and abetting conversion of membership interest, and conspiracy to convert membership interest against Trematerra, PJT, and the PJT Trust were false and baseless, yet the Trematerra-Rothstein Criminal Association filed its first amended complaint anyway.

117.    The Trematerra-Rothstein Criminal Association, utilizing the Team, Tannebaum, and Bast Amron, filed multiple meritless UPL complaints against Plaintiff in Florida beginning on June 26, 2023[24] despite having actual knowledge that the conduct alleged in said UPL complaints did not occur and was baseless.

118.    The Trematerra-Rothstein Criminal Association utilizing the Team, Tannebaum, Bast Amron, Frankfurt, and Maulsby, filed UPL and Bar complaints against the Plaintiff in New

---

[24] All UPL Complaints filed against the Plaintiff were closed without any negative finding against Plaintiff.

York beginning on August 8, 2024[25] despite having actual knowledge that the allegations contained in said UPL and Bar Complaints made in New York were false and baseless but filed said allegations anyway.

119.    Tannebaum, Rothstein and Neuman along with Defendant law firms Bast Amron, and Dimond, despite having the unlimited budgets provided to them by the wealthy Trematerra, PJT, and the PJT Trust, intentionally and recklessly chose to forgo even the most cursory investigation into the facts before filing their multiple baseless UPL complaints.

120.    Tannebaum, Rothstein and Neuman along with Defendant law firms Bast Amron, and Dimond made the intentional decision to accept large sums of money from Trematerra, PJT, and the PJT Trust to do whatever was necessary to keep Trematerra satisfied (and their fees beings paid) by decimating Plaintiff's reputation, career, and health by filing false lawsuits, UPL allegations and bar complaints against the Plaintiff.

121.    Defendant attorneys Tannebaum and Neuman along with Defendant law firms Dimond and Bast Amron, disregarded their professional ethics and maliciously authored, published,  and disseminated knowingly false statements about the Plaintiff without any evidence supporting their false claims.

122.    The Trematerra-Rothstein Criminal Association had actual knowledge that the claims it made, specifically that Plaintiff committed the felony of unlicensed practice of law were patently false but filed them anyway in an effort to extort the Plaintiff and to defraud the Florida Bar Unlicensed Practice of Law Department and the Attorney Grievance Committee for the First Department, New York.

---

[25] All UPL and Bar complaints filed against the Plaintiff were closed without any negative finding against the Plaintiff.

123.    Upon information and belief, Trematerra, PJT and PJT Trust have paid more than three million dollars ($3,000,000.00) in legal fees relating to the suits, UPL complaints, and Bar complaints brought against Santoro and the Other Members by the Defendants concerning the worthless and assetless entity, PBM Group.

### The OMMA-Marquis Criminal Association

124.    Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, White, and Doe planned, attended, conducted and participated in meetings, planned and participated in telephone conferences, authored, drafted, edited, published, and exchanged documents and communications both electronically (i.e. emails and text messages) and through the use of the mail and delivery services, including the United States Postal Service and Federal Express, with the object to form, and which did form, the OMMA-Marquis Criminal Association which intended to carry out, conspired to carry out, and which did carry out racketeering activities prohibited by both 18 U.S.C. §§ 1962(c) and 1962(d), and Fl Stat. § 895 such as theft, extortion, illegal surveillance, wire fraud, mail fraud, witness tampering, and witness bribery, which affected interstate commerce in that affected individuals, including the Plaintiff, and owners and residents of the One Miami Condominium, which engage in and operate in interstate commerce in their provision and receipt of services and products to and from individuals and businesses located in multiple states of the United States of America.

125.    The object of the OMMA-Marquis Association and the OMMA-Marquis conspiracy was manifold: a) coverup the theft of paint and painting materials from the owners of such property; b) the extortion of the Plaintiff into resigning from his positions of President and Director of OMMA, c) the installation and use of illegal audio and video eavesdropping devices to illegally record the Plaintiff and others at One Miami; d) the filing of false criminal charges

31

against in the Plaintiff in order to have him arrested and humiliated in front of his neighbors, family, and friends, and e) file false bar complaints, and then share them with Santoro's neighbors, in order to financially decimate, publicly and professionally humiliate, and have the Plaintiff disbarred and barred from practicing law in multiple jurisdictions.

126.     Plaintiff was an officer and director of OMMA from on or about September 2022 until in or about July 2023.

127.     Plaintiff was an officer and director of the One Miami East Condominium Association ("OMECA") from on or about September 2022 until in or about July 2023.

128.     Plaintiff was the President of OMMA from in or about January 2023 until in or about July 2023.

129.     Plaintiff was the Treasurer of OMECA from in or about September 2022 until in or about July 2023.

130.     In the course of his official duties, Plaintiff uncovered strong evidence of fraud, waste, mismanagement, theft, overt racism against employees, vendors, and residents, and employee abuse committed by OMMA, Marquis, Magid, Fenton, Kyriazis, Carlos Ruiz, and other parties.

131.     As a result of his investigations, Plaintiff and OMMA's relationship became strained.

132.     In or about September 2023, Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, and Fenton discussed, agreed to, conspired to and did participate in filing false and meritless criminal allegations against the Plaintiff with the City of Miami Police Department when they falsely alleged that the Plaintiff threatened to harm or kill one or more owners/residents of One Miami.

133.    In or about September 2023, Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, and Fenton discussed, agreed to, conspired to and did participate in filing false and meritless criminal allegations against the Plaintiff with the Miami-Dade State Attorney's Office which falsely alleged that the Plaintiff committed one or more cybercrimes by threatening to harm or kill one or more owners/residents of One Miami.

134.    On or about September 5, 2023, Plaintiff filed suit against Carlos Ruiz, Desai, Robert Szumilas and Violetta Szumilas for defamation in Circuit Court for Miami-Dade County ("Defamation Suit").  Said Defamation Suit is currently pending.

135.    All causes of action alleged against Robert Szumilas and Carlos Ruiz in the Defamation Suit were voluntarily withdrawn by the Plaintiff *without prejudice*.

136.    All of the causes of action against Defendant Violetta Szumilas and Defendant Desai alleged in this Amended Complaint accrued **after** the Defamation Suit was filed.

137.    Directly prior to the Defamation Suit being filed, Marquis and OMMA employee and agent respectively, Carlos Sandoval, gave a sworn statement in his official capacity as One Miami's Operation Manager and Nighttime Security Manager.

138.    Directly prior to the Defamation Suit being filed, OMMA and Marquis' subcontractor, Luis Ruiz, gave a sworn statement in his official capacity as One Miami's Security Supervisor.

139.    Said sworn statements contained information harmful to, and potentially subjecting liability to OMMA, Marquis, Kyriazis, and Magid.

140.    Said sworn statements were made in or about May 2023 and were sworn under the penalty of perjury by Carlos Sandoval and Luis Ruiz.

141.    Carlos Sandoval's employment by OMMA and Marquis was terminated as a result of Carlos Sandoval's sworn statement.

142.    Luis Ruiz was permanently transferred from One Miami to another property unrelated to One Miami as a result of Luis Ruiz' sworn statement.

143.    Sometime in or around 2024, OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White paid nine thousand dollars ($9,000.00) to Carlos Sandoval to encourage, entice, assist and/or coerce Carlos Sandoval to recant his sworn statement.

144.    Sometime in or around 2024, Marquis, offered employment to, and then begin employing, Carlos Sandoval, to encourage, entice, and/or coerce Carlos Sandoval to recant his sworn statement.

145.    In preparation for a deposition in 2025 in relation to the Defamation Suit, OMMA and Marquis suborned perjury and engaged in witness tampering and witness bribery by encouraging, enticing, assisting, and/or coercing Carlos Sandoval to recant his sworn statement and testify falsely at the deposition.

146.    Sometime in or around 2024, Marquis, offered employment to, and then begin employing, Luis Ruiz, to encourage, entice, assist, and/or coerce him to recant his sworn statement.

147.    In preparation for a deposition in 2025 in relation to the Defamation Suit, Marquis suborned perjury and engaged in witness tampering and witness bribery by encouraging, enticing, assisting, and/or coercing Luis Ruiz to recant his sworn statement and testify falsely at the deposition.

### Defendants Rothstein and Dimond "Cross-Over" and Enter the OMMA-Marquis Criminal Association

148.    After the Defamation Suit was filed, Rothstein and Dimond immediately became counsel of record for Defendant Carlos Ruiz.

149.     A business dispute involving the Plaintiff, the Other Members, Trematerra, PJT, and the PJT Trust, where the Plaintiff is a defendant alleged to have "aided and abetted and breach of contract", "tortiously interfered with a business relationship" and other such business-related causes of action, did not have, nor ever had, nor presently have, any connection or "common interest" with OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White's theft, breach of fiduciary duty, defamation of the Plaintiff, etc. yet Rothstein and Dimond engaged in the representation of Carlos Ruiz in order to manipulate and exploit a non-existent "common interest privilege" in order to carry out the object and goals of the Trematerra-Rothstein Criminal Association.

150.     Specifically, Rothstein and Dimond enter the Defamation Suit as counsel for Carlos Ruiz for the express improper purpose of unifying all parties against the Plaintiff in carrying out the goals and unlawful objects of Trematerra-Rothstein Criminal Association to wit: by having access to the Circuit Court for both the Defamation Suit and the Miami Lawsuit, having access to all discovery in both litigations, and by entering into groundless purported "common interest" and "joint interest" agreements with the parties in the unrelated Defamation Lawsuit, the Trematerra-Rothstein Criminal Association was able to further commit extortion by leveraging increased litigation pressure, mounting legal fees, and amplified public defamation and humiliation of the Plaintiff by abusing the judicial process and having all parties abuse litigation privilege by including immaterial and irrelevant but embarrassing and denigrating information in all litigation papers in both the Defamation Suit and the Miami Lawsuit, and were further able to abuse the judicial process by improperly shielding and unlawfully obfuscating otherwise discoverable information helpful to the Plaintiff's litigations by claiming "joint interest" and "common interest" privilege.

151.    The actual "common-interest-in-fact" shared by the plaintiff in *PJT Holdings, LLC v. Albert J. Santoro,* and the defendants in *Albert J. Santoro et al v. Sonali Desai et al* is an all-consuming malicious and vindictive desire and effort by Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, Tannebaum, Bast Amron, OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Fenton, Lasicki, White, Doe, Brown, Beasley, Everman, Cashman,  Robert Szumilas, Violetta Szumilas, and Desai to a) to extort the Plaintiff into leaving his Officer positions at OMMA and OMECA and his Manager and Officer positions at Plant Based Mafia and paying monies, specifically twenty-five thousand dollars ($25,000.00) and four hundred seventy-five thousand dollars ($475,000.00) to Defendants Trematerra, PJT, and PJT Trust; b) have the Plaintiff falsely arrested for fictional criminal charges; c) have the Plaintiff disbarred in each of the jurisdictions he currently practices in and have him barred from ever practicing in any jurisdiction he was applying to or will apply to in the future;  and d) defame, disparage, denigrate, embarrass, and humiliate the Plaintiff in front of his family, friends, neighbors, business associates, clients, and the public at large by using vehicles such as Facebook to reach as large and audience as possible while also abusing litigation privilege in order inject as much irrelevant and immaterial but humiliating, embarrassing, and disparaging information that the Defendants possibly can into each and every legal document ensuring that the Defendants' defamatory words will live on forever in court records that are easily assessed by the public, the Plaintiff's current and future clients, business associates, and familial and social connections.

152.    By exploiting and improperly abusing "common interest privilege", the Trematerra-Rothstein Criminal Association and the OMMA-Marquis Criminal Association were able to withhold discoverable communications, documents, and other evidence proving the illegal, unlawful and/or tortious conduct of Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond,

Tannebaum, Bast Amron, OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Fenton, Lasicki, White, Doe, Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas, and Desai.

153.    By entering into an express conspiracy and express agreement to extort, defame, financially decimate, embarrass and humiliate the Plaintiff under the guise of a "joint interest agreement", Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, Tannebaum, Bast Amron, OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Fenton, Lasicki, White, Doe, Brown, Everman, Robert Szumilas, Violetta Szumilas, and Desai all conspired to agree, and did agree to, and did in fact, aid and abet each other in whatever lawful, unlawful and/or illegal conduct was necessary to "win" against the Plaintiff.

<u>Defendants Violetta Szumilas, Desai, Brown, Beasley, Everman,<br>and Cashman Aid and Abet The Trematerra-Rothstein Criminal Association<br>and Commit Additional Torts Against the Plaintiff and his Family</u>

154.    After the Defamation Suit is filed and commenced against Defendants Violetta Szumilas, Robert Szumilas and Desai for defamation and related causes of action, Violetta Szumilas, Robert Szumilas and Desai then conspire, strategize, and agree to find new and inventive ways to harm the Plaintiff and his family.

155.    Specifically, Defendants Violetta Szumilas and Robert Szumilas recruit and engage their attorney of record, Defendant Everman and Cashman to conspire with and aid and abet the Trematerra-Rothstein Criminal Association to wit: Violetta Szumilas, Robert Szumilas, Everman, and Cashman formed a plan to supply, conspired to supply, and did in fact supply, email communications that were between Plaintiff and Violetta and Robert Szumilas, among other documents, which have no nexus and are not relevant nor material to the Miami lawsuit, to the Trematerra-Rothstein Team in order to support the Trematerra-Rothstein Criminal Association's

efforts in filing false criminal UPL allegations to defame and have the Plaintiff disbarred in NY and barred from practicing in all other jurisdictions in which Plaintiff was applying to.

156.    Specifically, on October 26, 2023, Everman and Cashman shared communications that were between only Plaintiff and Everman and Cashman with Brown, Beasley, Peraza, Rothstein, and Dimond which demonstrated not only Everman and Cashman's express intent to aid them but a malicious enjoyment in doing so as he wrote:

> In case any of this is relevant to your clients, below is the long, self-righteous email that Albert sent me last night.  I don't intend to respond. Enjoy!

157.    Said October 26, 2023, Everman and Cashman email was then circulated to the entire Trematerra-Rothstein Criminal Association and Tyler Maulsby (the ethic's attorney assigned by the Team to prosecute the meritless UPL and Bar complaints against Plaintiff in New York).

158.    The subject matter in the above circulated email was the meritless UPL and Bar complaints that were filed by Maulsby in New York.

159.    The email authored by Everman and Cashman and explicitly authorized by Robert and Violetta Szumilas aided and abetted the Trematerra-Rothstein Criminal Association in defaming the Plaintiff in that it was used by the Trematerra-Rothstein Criminal Association to support their false statements that Plaintiff was illegally practicing law in the Florida.

160.    Everman, as an officer of the court, had an affirmative duty to ascertain that the attorneys and parties that he was actively assisting by supplying otherwise nonpublic documents and communications, and other documents, were pursuing a legally-permissible goal, as well as, making sure that there was at least a scintilla of evidence that Plaintiff indeed committed multiple

felony instances of UPL before pledging his and his clients' support. Everman made no such effort nor conducted any such due diligence.

161.    Robert Szumilas, and Violetta Szumilas, had already made false claims of criminal conduct committed by Plaintiff in their multiple meritless and fraudulent bar complaints in Florida and New York.

162.    Desai, not content with all of the damage she inflicted on the Plaintiff's reputation for which she was being prosecuted for in the Defamation Suit, more recently took aim at the Plaintiff's wife, a recent Florida Bar Applicant, who, after scoring in the top 2% of all Bar applicants (in Federal Civil Procedure), was awaiting admission to the Florida Bar.

163.    Five (5) days prior to receiving her results of the Bar and merely six (6) days prior to her scheduled admission date, she received a letter from the Florida Bar Board of Law Examiner's explaining to her that her Character and Fitness Investigation was reopened due to allegations that she supplied "false affidavits [in the Defamation Suit]".

164.    Plaintiff and his wife contacted for a mandatory "meet and confer" Brown and Beasley in an effort to stave off a motion for contempt and sanctions the Plaintiff and his wife were filing against Brown and Everman on June 11, 2025.

165.    Plaintiff and his wife requested affidavits from Brown, Beasley and Desai that they did not file the new allegations against Plaintiff's wife with relation to her pending Bar application.

166.    Brown then laughed and stated, "that's not going to happen."

167.    Brown then further insulted the Plaintiff's wife by first telling her that her "lawsuit is garbage" and then intimidated her by stating that the Florida Board of Law Examiners "was looking at [Plaintiff's wife's] garbage lawsuit."

168.    Brown then directly threatened Plaintiff's wife that "it's going to get worse for you with the Bar."

169.    Upon information and belief, Brown, Beasley, and Desai, acting in concert and individually, as principals and/or aiding and abetting the principals and/or acting through proxies did file false allegations against the Plaintiff's wife with the Florida Board of Bar Examiner's with the express purpose of causing harm to the Plaintiff and his wife.

170.    Brown, Beasley, and Desai had actual knowledge that Plaintiff's wife was employed first as an intern and then as a legal assistant by the Plaintiff and his law firm.

171.    Brown, Beasley, and Desai had actual knowledge of the business relationship between Plaintiff and Plaintiff's wife.

172.    Brown, Beasley, and Desai had actual knowledge that Plaintiff desired to employ Plaintiff's wife as an attorney working for the Plaintiff.

173.    Brown, Beasley, and Desai had actual knowledge that Plaintiff's wife had taken the Florida Bar and was likely to be admitted shortly.

174.    Plaintiff's wife was scheduled to be admitted to the Florida Bar on or about April 16, 2025.

175.    Upon information and belief, but for Brown, Beasley and Desai's false allegations transmitted by Brown, Beasley, and Desai to the Florida Board of Bar Examiners, Plaintiff's wife would have been immediately admitted to the Florida Bar and would have been immediately employed by the Plaintiff and the Plaintiff's law firm.

176.    In order to manipulate and defraud the court in the Miami Lawsuit, Defendants Desai, Brown, and Beasley intentionally fraudulently claimed that Desai was the attorney for Defendants Violetta Szumilas, Kyriazis, and Lasicki.

177.   Brown, Beasley, and Desai made these false claims in order to improperly invoke "attorney-client privilege" in an improper attempt to shield documents, oral, and written communications which reveal evidence of Desai, Lasicki, Kyriazis, and Violetta Szumilas' unlawful and/or tortious conduct.

178.   Brown, Beasley, and Desai made these false claims in order to abuse the judicial process to wit: in order to obfuscate Desai's tortious and unlawful conduct, Desai falsely claimed to represent several joint tortfeasors to exploit attorney-client privilege to improperly and unlawfully withhold otherwise discoverable evidence.

179.   In order to manipulate and defraud the court in the Miami Lawsuit, Defendants Desai, Beasley, and Brown intentionally fraudulently claim that each attorney working at the Miami-Dade State Attorney's Office ("MSAO") was the attorney for Desai.  These employees included Desai's supervisors, human resource department employees, and former employees of MSAO.

180.   Desai, Beasley, and Brown made these false claims in order to improperly invoke "attorney-client privilege" in an improper attempt to shield documents, oral, and written communications which reveal evidence of Desai's unlawful and/or tortious conduct.

<u>The Trematerra-Rothstein Criminal Association Attempts to<br>Have Plaintiff Disbarred and Criminally Charged with a Felony</u>

The Crime of Unlicensed Practice of Law<br>in Florida is a Third-Degree Felony.

181.   The State of Florida imposes harsh criminal penalties for any person who practices law without a license (or is otherwise not authorized to practice law) within Florida.

182.   Section 454.23 of the Florida Statutes, provides that:

**454.23   Penalties.**—Any person not licensed or otherwise authorized to practice law in this state who practices law in this state or holds himself or herself out to the public as qualified to practice law in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description implying that he or she is qualified, or recognized by law as qualified, to practice law in this state, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

183.    Section 775.082(3)I, Florida Statutes, provides that "[f]or a felony of the third degree, [the perpetrator shall be punished] by a term of imprisonment not exceeding 5 years."

184.    In addition to potentially five (5) years of imprisonment upon conviction of the third-degree felony of practicing law without a license ("UPL"), any such person is also subject to harsh discipline in any other jurisdiction and/or courts in which said person is lawfully admitted to practice law and could be suspended or even permanently disbarred from the practice of law.

The Crime of Perjury in the State of
Florida is a Third-Degree Felony.

185.    The State of Florida imposes harsh criminal penalties for any person who commits the crime of perjury within Florida.

186.    Section 837.02(1), Florida Statutes, provides that:

**837.02   Perjury in official proceedings.**—

**(1)**   Except as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

187.    Section 775.082I(3), Florida Statutes, provides that "[f]or a felony of the third degree, [the perpetrator shall be punished] by a term of imprisonment not exceeding 5 years."

Defendants Trematerra, PJT, PJT Trust,

and Neuman Defame Plaintiff on June 26, 2023.

188.    On or about June 26, 2023, Defendants Trematerra, PJT,  PJT Trust, and Neuman authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law to wit: Trematerra, PJT,  PJT Trust, and Neuman authored, published and delivered to the Florida Bar UPL Department, a written statement falsely claiming that "Albert Santoro…is attempting to practice law in the State of Florida by operating under the guise of 'point person' and newly appointed 'C.O.O.' on behalf of Plant Based Mafia, LLC and PBM Group Holdings, LLC, in their communications with 'all legal counsel'" and falsely claiming that "It appears that Mr. Santoro may have also prepared various legal documents on behalf of the above reference entities, including a 'Notice to Immediately Cease and Desist,' 'Demand to Preserve Evidence' and corporate Resolution of PBM Group Holdings, LLC, all dated June 7, 2023."

189.    Each of the statements made by the named Defendants described in paragraph 145 above was made maliciously and/or with a reckless disregard of the truth.

190.    Trematerra, PJT,  PJT Trust, and Neuman did not engage in any investigation of any of the facts they claimed to have actual knowledge of.

191.    Each of the statements made by the named defendants described in paragraph 145 above was made maliciously and/or with a reckless disregard of the truth in that Trematerra, PJT, PJT Trust, and Neuman made said statements in order to unlawfully gain a strategic advantage in the civil lawsuit that they filed the very next day, June 27, 2023 as described more fully below.

192.    Plaintiff was required to, and did respond to, the "Official Proceeding" opened by the Florida Bar as a result of the false allegations made by Trematerra, PJT,  PJT Trust, and Neuman.

193.    Plaintiff was required to and did submit a sworn response under the penalties of perjury to the "Official Proceeding" opened by the Florida Bar as a result of the false allegations made by Trematerra, PJT, PJT Trust, and Neuman.

Defendants Trematerra, PJT, PJT Trust, and
Neuman File Meritless Civil Litigation on
June 27, 2023 in an Attempt to Extort the Plaintiff.

194.    On or about June 27, 2023, defendants Trematerra, PJT, and PJT Trust through defendant Neuman, filed a civil action in Miami-Dade Circuit Court entitled "PJT Holdings, LLC vs. Albert J. Santoro" under case number 2023-018796-CA-01 ("PJT Action") alleging "Tortious Interference with Business Relationship", "Tortious Interference with Business Expectancy", "Tortious Interference with Contractual Relationship", "Defamation", "Negligence", and "Unjust Enrichment."

195.    Trematerra, PJT, PJT Trust, and Neuman filed said PJT in retribution and retaliation for being properly and lawfully ousted as a member of a business entity in which he was accused of threats, extortion, fraud, breach of contract, and negligence.

196.    Said Trematerra, PJT, and PJT Trust Action contains the same or similar allegations as contained in the June 26, 2023 UPL Complaint in that it alleged that Plaintiff Santoro engaged in the unlicensed practice of law.

Defendants Tannebaum, Bast Amron,
Rothstein, Dimond, Trematerra, PJT, and
the PJT Trust Defame Plaintiff on August 15, 2023.

197.    On or about August 15, 2023, Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, acting alone and in concert, authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law and the third degree felony of

perjury to wit:  Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust authored, published and delivered to the Florida Bar UPL Department, a written statement executed by Tannebaum, and transmitted to the Florida Bar by Bast Amron falsely claiming as fact and not as opinion that:

a.      "Mr. Santoro's response is typical of one who is crafting an explanation for what is otherwise the practice of law in Florida.  That is what [Santoro] is doing – practicing law in Florida and trying to convince the Bar that he plays other roles, that lawyers are in the background, and that everyone else is lying."

b.      "[He] is practicing law in Florida, and lying about it."

c.      "He is representing an entity in Florida and weaving around the fact of doing just that."

d.      "His statement that he was '**engaged** by PBM on June 5, 2023, to serve as a Manager of the LLC and to provide management, accounting, and **business strategy services** is typical of an explanation of someone engaged in the unlicensed practice of law.'" [emphasis in original]

e.      "That he now titles himself 'manager' of PBM is irrelevant.  The Bar should note that he named himself manager only a few days before sending Mr. Trematerra's counsel a cease and desist demand, resolution, and preservation of evidence demand.  He did this because he was acting as a lawyer, and needed to disguise his true role."

f.      "He was acting as a lawyer, while falsely claiming that there were lawyers in the background and calling himself a 'conflict strategist.'"

g.      "He was lawyering without calling himself a lawyer.  That's what people engaged in the unlicensed practice of law do."

h.      "That he makes up this whole story about the fear he has of disclosing certain lawyer's names adds to the falsity of this entire explanation."

i.      "He was engaged in the practice of law in Florida and that is the only issue."

j.      "He was acting as **the** representative of PBM.  There are no lawyers.  He is lying to the Bar." [emphasis in original]

k.      "And the misrepresentations continue."

l.      "Mr. Santoro's unethical conduct is widespread, not only his acting as a lawyer in Florida, but his written threats, of which the Bar has copies."

198.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's conduct in explicitly naming Plaintiff as "liar" and alleging he is "lying" to the Bar in no less than three (3) instances demonstrates the actual malice of said defendants.

199.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust were in possession of information demonstrating the falsity of their statements but intentionally and/or recklessly failed to consider said information or to make a reasonable attempt to investigate said information thereby demonstrating their malicious intent in authoring, publishing and disseminating the above listed defamatory statements.

Defendants Tannebaum, Bast Amron, Rothstein,
Dimond, Trematerra, PJT, and the PJT Trust
Defame Plaintiff on October 23, 2023.

200.    On or about August 15, 2023, Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, acting alone and in concert, authored, published, and disseminated to one or more third parties, written statements that state or imply that Plaintiff committed the third degree felony of unlicensed practice of law and the third degree felony of perjury to wit:  Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust

authored, published and delivered to the Florida Bar UPL Department, a written statement executed by Tannebaum, and transmitted to the Florida Bar by Bast Amron falsely claiming as fact and not as opinion that:

   a.  "I will say again, Mr. Santoro's response, and now supplemental rebuttal, is typical of one who is crafting an explanation for what is otherwise the practice of law in Florida."

   b.  "Mr. Santoro, now through counsel, states that he 'does not advertise or otherwise hold himself out as a lawyer eligible to practice law in this state.' Many violators of the UPL Rules, like Mr. Santoro, don't do that either."

   c.  "That is of no matter, as he is engaging in the practice of law in Florida."

   d.  "The supplemental response states that 'there is no indication that Mr. Santoro has a presence in the Florida for the practice of law, yet his communications – a sample of which are attached – say otherwise.  He is practicing law in Florida."

   e.  "A brief review of these emails show he is acting as a lawyer, while threatening Florida residents."

   f.  "That he is an accountant, businessman and plays various other irrelevant roles, has nothing to do with the fact that he is a lawyer with a past of misconduct who is now violating the Rules Regulating The Florida Bar."

   g.  "Lawyers do that every day.  It is meaningless.  He was not retained and the continued mention of him is evidence of Mr. Santoro's continued efforts to deceive the Bar into thinking there was Florida counsel."

   h.  "It is offered here to show his lack of professionalism and lack of competence to understand basic law – and that he is engaged in the [unlicensed] practice of law."

201.    Despite Tannebaum and Bast Amron each advertising that they practice law in the areas of attorney admission, attorney discipline, and, presumably, including the Unlicensed Practice of Law, they included in their October 23, 2023 diatribe to the UPL Department of the Florida Bar emails and communications authored by the Plaintiff relating to two separate Florida litigation matters where Plaintiff Santoro properly and lawfully appeared as a *pro se* litigant.

202.    Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust had actual knowledge that Plaintiff was a *pro se* litigant in the Defamation Suit because Rothstein was the lawyer for Defendant Carlos Ruiz in the Defamation Suit and the lawyer for Trematerra in the PJT Holdings case.

203.    Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's intentional, blatant, and obvious false statements made to defame the Plaintiff and cause him to either lose his law license or have him suspended from the practice of law, and to never be admitted to the Florida bar, were made with actual malice and a complete disregard for the truth of the facts asserted by those named defendants.

The Florida Bar's UPL Department Closes All UPL
Complaints Filed Against the Plaintiff by the
Defendants on July 1, 2024.

204.    On July 1, 2024, the Florida Bar's Unlicensed Practice of Law Department issued a letter to Plaintiff indicating that it had closed its file on the UPL investigations into Plaintiff.

205.    On July 1, 2024, the investigation(s) by the Florida Bar relating to the Defendants' numerous false UPL complaints were closed without any negative finding, ruling, discipline, or even the smallest criticism of the Plaintiff and/or Plaintiff's conduct.

The Attorney Grievance Committee for the Supreme
Court of the State of New York, First Judicial
Department Closes the UPL and Bar Complaint(s)
Filed Against the Plaintiff by Tannebaum, Bast

Amron, Rothstein, Dimond, Trematerra, PJT, and
the PJT Trust on July 29, 2024.

206.    On July 29, 2024, the Attorney Grievance Committee for the Supreme Court of the State of New York, First Judicial Department issued a letter to Plaintiff stating that, after its investigation into the allegations made by Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust, it is not taking any action whatsoever against the Plaintiff.

207.    On July 29, 2024, the investigation conducted by the Attorney Grievance Committee for the Supreme Court of the State of New York, First Judicial Department relating to Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust's false UPL and Bar complaints was closed without any negative finding, ruling, discipline, or even the smallest criticism of the Plaintiff and/or Plaintiff's conduct.

## VI.  PLAINTIFF'S CAUSES OF ACTION AGAINST THE DEFENDANTS

## ALLEGATIONS COMMON TO FEDERAL RICO CAUSES OF ACTION

208.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 207  as if fully set forth herein.

209.    Defendant Trematerra is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

210.    Defendant Rothstein is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

211.    Defendant Tannebaum is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

212.    Defendant Neuman is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

213.    Defendant Carlos Ruiz is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

214.    Defendant Bast is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

215.    Defendant Magid is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

216.    Defendant Kyriazis is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

217.    Defendant Lasicki is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

218.    Defendant Brown is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

219.    Defendant Desai is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

220.    Defendant Violetta Szumilas is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3.

221.    Defendant Robert Szumilas is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3.

222.    Defendant Fenton is a "culpable person" because he is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

223.   Defendant White is a "culpable person" because she is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

224.   Defendant PJT is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

225.   Defendant PJT Trust is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3.

226.   Defendant Bast Amron is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3). Despite Bast Amron holding itself out as a licensed and authorized limited liability company, after diligent search, no such records evincing registration or authorization to do business in Florida or in any other jurisdiction exist.

227.   Defendant Dimond is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

228.   Defendant Beasley is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

229.   Defendant Cashman is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

230.   Defendant OMMA is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

231.   Defendant Marquis is a "culpable person" because it is an "individual or entity capable of holding a legal or beneficial interest in property" as defined by 18 U.S.C. § 1961(3).

232.   Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman did operate an "enterprise" because the association formed, operated by,

and participated in by each of these Defendants to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (the "Trematerra-Rothstein Criminal Association") as defined by 18 U.S.C. § 1961(4).

233.    Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Doe, Magid, Fenton, White and Lasicki did operate an "enterprise" because the association formed, operated by, and participated in by each of these Defendants to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (the "OMMA Marquis Criminal Association") as defined by 18 U.S.C. § 1961(4).

234.    Defendants Neuman, Trematerra, PJT, and PJT Trust were working together for many years, upon information and belief, commencing as early in 2014, where Defendant Neuman, for pecuniary gain in the form of legal fees, agreed to file meritless civil lawsuits with various courts located in the State of Florida while knowing that the allegations contained therein were false and the true purpose of the lawsuit was not to remedy a wrong to Trematerra, PJT, and/or PJT Trust, but was for the illegal and improper purpose of extorting Trematerra, PJT, and/or PJT Trusts' 'adversaries' into either relieving Trematerra, PJT, and/or PJT Trust from lawful financial obligations or to obtain ill-gotten settlement proceeds.

235.    Neuman, over the past five (5) years, has filed numerous meritless and extortive lawsuits and, upon information and belief, meritless bar complaints for Trematerra, PJT, PJT Trust, and Trematerra-Rothstein Criminal Association.

236.     Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Trematerra, PJT, and PJT Trust have been in a contractual relationship since in or about June 2023 which continues to the present date.

**ALLEGATIONS COMMON TO FLORIDA RICO CAUSES OF ACTION**

237.     The Florida Racketeer Influenced and Corrupt Organization Act ("Florida RICO") was enacted by the Florida Legislature in 1977.

238.     Specifically, Florida's RICO prohibits participating in an enterprise engaged in a pattern of racketeering.

239.     Florida RICO, while initially being modeled after the federal RICO Act, was greatly expanded to address a broader range of criminal conduct than its federal counterpart.

240.     Florida RICO defines "enterprise" very broadly and includes associations of just two individuals agreeing to act together in furtherance of specified illegal conduct.

241.     Florida RICO requires the commission of only two (2) predicate acts of enumerated criminal conduct.

242.     Florida RICO also prohibits individuals and entities from conspiring to commit two (2) or more acts of prohibited criminal conduct.

243.     Florida RICO, like its federal brother, also contains civil remedies for wrongs that caused actual damages to the victims of the perpetrators' criminal activity.

244.     In Florida RICO, a "civil RICO enterprise" refers to an ongoing organization, either formal or informal, where individuals function as a continuing unit to engage in a pattern of racketeering.

245.     A "criminal association" qualifies under Florida RICO as a "criminal enterprise" and is defined as such in Fl. Stat. § 895.02(5):

"Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, **association, or group of individuals associated in fact although not a legal entity;** and it includes illicit **as well as licit enterprises** and governmental, as well as other entities. A criminal gang, as defined in s. 874.03, constitutes an enterprise. [**emphasis** added]

246.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman did operate an "enterprise" because they are, "individuals, sole proprietorships, partnerships, corporations...or other legal entity, association, or group of individuals associated in fact..." as defined by Fl. Stat. § 895.02(5).

247.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman regularly participated in, directed, controlled, and profited from the Trematerra-Rothstein Criminal Association in that these defendants attended meetings, participated in telephone and video conferences, authored, drafted, and reviewed documents together, and formulated and agreed on plans to carry out their frauds on the Courts and the Bar Authorities, and to commit extortion and fraud on the Plaintiff.

248.    Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Fenton, White and Lasicki did operate an "enterprise" because they are, "individuals, sole proprietorships, partnerships, corporations...or other legal entity, association, or group of individuals associated in fact..." as defined by Fl. Stat. § 895.02(5).

249.    Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Fenton, White and Lasicki regularly participated in, directed, controlled, and profited from the OMMA-Marquis Criminal Association in that these defendants attended meetings, participated in telephone and video conferences, authored, drafted, and reviewed documents together, and formulated and agreed on plans to carry out their illegal conduct including, but not limited to, wire fraud, mail

fraud, extortion, tampering and bribing of witnesses, illegal interception of oral communications, and theft.

## PREDICATE CRIMINAL OFFENSES UNDER FEDERAL AND FLORIDA RICO COMMITTED BY THE DEFENDANTS

250.    Wire Fraud is an enumerated Federal and Florida RICO predicate offense under 18 U.S. §1343 and Fl Stat. § 817 ("Wire Fraud").

251.    Trematerra, PJT, PJT Trust, Neuman, and the Trematerra-Rothstein Criminal Association committed Wire Fraud on or about June 27, 2023 when the said Defendants electronically transmitted and electronically E-Filed the "Complaint" in *PJT Holdings, LLC vs. Albert J. Santoro* to the Circuit Court with an intent to defraud the Circuit Court to wit: Trematerra, PJT, PJT Trust, Neuman, and the Trematerra-Rothstein Criminal Association electronically transmitted and electronically E-Filed the Complaint knowing that it contained numerous false statements of fact such as Plaintiff committed: "Tortious Interference with a Business Relationship", "Tortious Interference with a Business Expectancy", "Tortious Interference with a Contractual Relationship", "Defamation", "Negligence", and that the Plaintiff engaged in the felony of unlicensed practice of law.  The Defendants knew or should have known that all of these allegations were false, but they still electronically transmitted such statements in a coordinated effort to defraud the Circuit Court.

252.    Trematerra, PJT, PJT Trust, Neuman, and the Trematerra-Rothstein Criminal Association committed Wire Fraud on or about June 26, 2023 when the said Defendants electronically transmitted and, upon information and belief, electronically E-Filed knowingly false criminal allegations with the Florida Bar Unlicensed Practice of Law Department ("Florida Bar") with an intent to defraud the Florida Bar to wit: Trematerra, PJT, PJT Trust, Neuman, and the Trematerra-Rothstein Criminal Association electronically transmitted and, upon information and

belief, electronically E-Filed the written statements falsely allegation that the Plaintiff held himself out to be an attorney and performed legal services in Florida despite the Plaintiff not being admitted to practice law at the time. The Defendants knew or should have known that all of these allegations were false, but they still electronically transmitted such statements in a coordinated effort to defraud the Florida Bar in an effort to have Plaintiff falsely arrested, disbarred in New York and barred from ever practicing law in Florida or any other jurisdiction.

253. Trematerra, PJT, PJT Trust, Rothstein, Dimond, and the Trematerra-Rothstein Criminal Association committed Wire Fraud on or about June 28, 2023 when the said Defendants electronically transmitted and electronically E-Filed the "Verified Complaint" in *PJT Holdings, LLC vs. Daniel Costanzo, Benjamin Costanzo, and Brian Fitzpatrick, Defendants, and PBM Group Holdings, LLC, Nominal Defendant* to the Court of Chancery of the State of Delaware ("Chancery Court") with an intent to defraud the Chancery Court to wit: Trematerra, PJT, PJT Trust, Rothstein, Dimond, and the Trematerra-Rothstein Criminal Association electronically transmitted and electronically E-Filed the Verified Complaint knowing that it contained numerous false statements of fact such as Other Members "Breach[ed] of the Operating Agreement", and "[e]xpelled PJT without compensating it for its membership interest in [PBM Group]". The Defendants knew or should have known that all of these allegations were false, but they still electronically transmitted such statements in a coordinated effort to defraud the Chancery Court.

254. On or about August 15, 2023, Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust and the Trematerra-Rothstein Criminal Association committed another act of Wire Fraud to wit: said Defendants and Criminal Association transmitted by wire, (i.e. electronic email) to the Florida Bar's Unlicensed Practice of Law Department multiple false statements including,

That is of no matter, as he is engaging in the practice of law in Florida.

The supplemental response states that 'there is no indication that Mr. Santoro has a presence in the Florida for the practice of law, yet his communications – a sample of which are attached – say otherwise.  He is practicing law in Florida.

A brief review of these emails show he is acting as a lawyer, while threatening Florida residents.

255.    Each of the above statements transmitted by wire by Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust and the Trematerra-Rothstein Criminal Association were known by the Defendants to be false, but they transmitted them by wire anyway.   They transmitted these statements to 1) defraud the Florida Bar into referring the Plaintiff's case for criminal review; 2) defraud the Florida Bar to refer the Plaintiff's matter to the New York Bar's Attorney Grievance Committee in order to have the Plaintiff disbarred; and 3) defraud the Florida Bar into barring the Plaintiff from ever gaining admission to the Florida Bar.

256.    Mail Fraud is an enumerated Federal and Florida RICO predicate offense under 18 U.S. §1343 and Fl Stat. § 817 ("Mail Fraud").

257.    Upon information and belief, each instance of wire fraud as detailed above committed by Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and the PJT Trust and the Trematerra-Rothstein Criminal Association was also accompanied by one or more instances of mail fraud, in that, upon information and belief, the Defendants in furtherance of their prohibited racketeering activities utilized the U.S. Postal System and/or Federal Express to transmit one of more documents containing the fraudulent statements and documents described above.

258.    Extortion is an enumerated Federal and Florida RICO predicate offense under 18 U.S. §1951 and Fl Stat. § 836 ("Extortion").

259.    The Trematerra-Rothstein Criminal Association committed Extortion against the Plaintiff to wit: The Trematerra-Rothstein Criminal Association filed a meritless lawsuit seeking millions of dollars against the Plaintiff and filed meritless felony criminal allegations with the Florida Bar's Unlicensed Practice of Law Department seeking to have the Plaintiff disbarred in New York and barred from ever practicing law in Florida or any other jurisdiction to which the Plaintiff may apply.  At all times, the Trematerra-Rothstein Criminal Association knew or should have known that all the allegations contained in the Miami lawsuit and the felony criminal allegations were false and baseless and they expressly intended to use such to force the Plaintiff to do as they demanded or face years of litigation, years of fighting false UPL and Bar complaints, and financial ruin from the expected millions in legal fees for defense.  Immediately after filing such meritless lawsuit and baseless criminal allegations of UPL, the Trematerra-Rothstein Criminal Association demanded a) that the Plaintiff resign all positions and roles with Plant Based Mafia; b) pay twenty-five thousand dollars ($25,000.00) to the Trematerra-Rothstein Criminal Association in exchange for the Trematerra-Rothstein Criminal Association's agreement to dismiss the meritless lawsuit seeking to financially decimate the Plaintiff; and c) pay four hundred and seventy-five thousand dollars ($475,000.00) to the Trematerra-Rothstein Criminal Association in exchange for the Trematerra-Rothstein Criminal Association's agreement to dismiss the meritless lawsuit seeking to financially decimate the Plaintiff.

260.    Defendants OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton did commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach and Fenton did

approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff had a criminal conviction from conduct that occurred nearly twenty-five (25) years ago.

261.    OMMA, Marquis, Carlos Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMMA], [Fenton and the OMMA-Marquis Criminal Association] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

262.    Tampering with a Witness is an enumerated Federal and Florida RICO predicate offense under 18 U.S. §1512 and Fl Stat. § 914 ("Tampering with a Witness").

263.    Bribery of Public Officials and Witnesses is predicate offense under 18 U.S.C § 201 ("Bribery of a Witness").

264.    OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

265.    OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in

violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they offered employment to Carlos Sandoval to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

266.    OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White and the OMMA-Marquis Criminal Association committed witness tampering, in violation of 18 U.S.C. § 1512,  18 U.S.C. § 201, and FL Stat. § 914 when they offered employment to Luis Ruiz to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

267.    Theft is an enumerated Florida RICO predicate offense under Fl Stat. § 812 ("Theft").

268.    Carlos Ruiz' theft and embezzlement are prohibited by FL Stat. § 812.  Carlos Ruiz' embezzlement is prohibited by FL Stat. § 836.  This meets the requirement for predicate criminal conduct as defined by Florida RICO.

269.    Perjury is an enumerated Florida RICO predicate offense under Fl Stat. § 837 ("Perjury").

270.    The Trematerra-Rothstein Criminal Association in furtherance of their racketeering activities as described in more detail *infra* committed Perjury to wit: During the trial held for the Delaware Suit in November 2024, Trematerra knowingly committed perjury during his testimony. Specifically, Trematerra, when asked by defense counsel why he didn't turn over *any* text messages between Trematerra and his agent, Chris Russo, Trematerra testified that Trematerra had deleted all such communications because Trematerra's phone memory was expended and he need to make extra room.

271.     Several weeks after the conclusion of the trial in the Delaware Suit, the Rothstein-Trematerra Criminal Association, then, in direct contradiction to the perjured testimony delivered by Trematerra as described above, disclosed, filed, and served with the Delaware Court hundreds of text messages between Trematerra, PJT, PJT Trust and Chris Russo thereby proving that the testimony supplied by the Trematerra-Rothstein Criminal Association at the trial of the Delaware Suit was indeed knowingly false and evidence of the commission of Perjury.

272.     Conspiracy to violate any provisions of subsection (a), (b), or (c) of 18 U.S.C. § 1962 is a violation of 18 U.S.C. § 1962 (d).

273.     Defendants OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton did conspire to commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff had a criminal conviction from conduct that occurred nearly twenty-five (25) years ago.

274.     Neuman, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false allegations about the Plaintiff with the Circuit Court in order to defraud and materially-mislead the Circuit Court and the State of Florida for pecuniary gain, specifically to be awarded damages against the Plaintiff.

275.     Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false criminal allegations and did file knowingly false criminal allegations about the Plaintiff with the Florida Bar in order to defraud and materially-mislead the Florida Bar and the State of Florida for

pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

276.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, and PJT Trust entered in oral and written agreements to file knowingly false criminal allegations about the Plaintiff with the New York Bar in order to defraud and materially-mislead the New York Bar and the State of New York for pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

277.    Upon information and belief, Defendants Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, were paid more than two million dollars ($2,000,000.00) to prosecute the meritless civil action, FL UPL, and NY UPL and Bar Complaint(s) against the Plaintiff.

278.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond,  Trematerra, PJT, PJT Trust, Neuman, Brown, Beasley, Everman, Cashman, OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, White, Desai, Clark, Doe, Robert Szumilas, and Violetta Szumilas entered into purported "joint interest agreements" which in fact were merely oral and written conspiracy agreements to do whatever was necessary, utilizing both legal and illegal means to a) have the Plaintiff arrested for fictional criminal charges; b) have the Plaintiff disbarred in before all courts he was admitted to practice before and in all jurisdictions he was licensed to practice in; c) to have the Plaintiff denied admission to practice in jurisdictions he was currently applying to; d) to inflict maximum reputation harm to the Plaintiff; e) to cause devastating financial harm to the Plaintiff; and f) to inflict severe emotional distress on the Plaintiff and his family.

279.    Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, Brown, Beasley, Everman, Cashman, OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, White, Desai, Clark, Doe, Robert Szumilas, and Violetta Szumilas

conspired with each other, and participated as a group for a period exceeding eighteen (18) months which continues to the present date.

280.   Defendants Brown, Beasley, and Desai, abusing attorney-client privilege in order to shield Desai from further civil liability, and, potentially criminal liability, unlawfully invoked attorney-client privilege with respect to Defendants Szumilas, Lasicki, and Kyriazis by falsely claiming Desai to be acting as their attorney.

281.   Defendants Brown, Beasley, and Desai, again abusing attorney-client privilege in order to shield Desai from further civil liability, and, potentially criminal liability, again unlawfully invoked attorney-client privilege with respect to critical witnesses (Desai's work colleagues, friends, supervisors, and human resource department staff) in order to obfuscate Desai' role in the various civil and potentially criminal conspiracies.

282.   Defendants Everman, Brown, Violetta Szumilas, Robert Szumilas, Doe, Lasicki, Kyriazis, and Desai entered into purposed "joint interest" agreements (which were nothing more than memorializations of their criminal association and illegal conspiratorial conduct) with Defendants Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, OMMA, Marquis, Carlos Ruiz, Magid, Fenton, White, Clark, Doe, Robert Szumilas, and Violetta Szumilas and actively aided and abetted these Defendants in their illegal efforts to defraud the N.Y. and Florida Bars, the Florida courts, to wit:  Defendants Everman, Brown, Robert Szumilas, Violetta Szumilas, Doe, Lasicki, Kyriazis, and Desai supplied their co-conspirators with documents, communications, illegally-obtained audio and video recordings so that Tannebaum, Bast Amron, Rothstein, Dimond, Trematerra, PJT, PJT Trust, and Neuman can illegally prosecute civil claims, UPL, and bar complaints against the Plaintiff.

283.     Upon information and belief, defendants Rothstein, Dimond, Carlos Ruiz, Marquis, OMMA, Lasicki, Magid, White, Kyriazis, conspired with each other, entered into "joint interest agreements" with, and agreed to aid and abet each other, and did aid and abet each other, specifically, aided Carlos Ruiz, Marquis, and OMMA to place hidden audio and video recording devices in private offices at 335 S. Biscayne Blvd, Miami, FL 33131 for the illegal purpose of surreptitiously recording the Plaintiff and other individuals' conversations without their knowledge in violation of FL Stat. § 934. This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO

284.     Defendants Rothstein, Dimond, Trematerra, PJT, PJT Trust, Neuman, did conspire and agree to aid and abet, and did aid and abet each other, and did enter into a business relationship with each other for the purpose of extorting the Plaintiff into resigning his position with Plant Based Mafia and forgoing revenue and payments for his services by misusing, misleading, and defrauding the courts of the State of Florida, the Florida Bar, and the New York Bar, by filing false and meritless civil litigation, filing false criminal UPL allegations, and filing false bar complaints with the express purpose of forcing Plaintiff to discontinue his business relationship with his client, Plant Based Mafia and the Other Members.  This violates 18 U.S.C. § 1951 and FL Stat. § 836. This meets the standard for a "criminal association" as defined by both Federal and Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

285.     Defendants Carlos Ruiz, OMMA, and Marquis, were in a business relationship for at least 2 years, commencing in or about March 2022, in which OMMA and Marquis, agreed to aid and abet, and aided and abetted, Carlos Ruiz in theft and embezzlement to wit:  Carlos Ruiz took and used for his own personal use at his own personal residence, paint and painting materials

valued at more than one thousand dollars ($1000.00) that belonged to the Plaintiff and other stakeholders of OMMA and the One Miami Condominium.

286.   Defendants Carlos Ruiz, OMMA, and Marquis, were in a business relationship for at least 2 years, commencing in or about March 2022, in which OMMA and Marquis, agreed to aid and abet, and aided and abetted, Carlos Ruiz in theft and embezzlement to wit:  Carlos Ruiz used OMMA and Marquis employees to transport the stolen paint and materials and to provide labor to pain Carlos Ruiz' personal residence, the value of which is more than one thousand dollars ($1000.00), and said labor of said employed 'belonged' to the Plaintiff and other stakeholders of OMMA and the One Miami Condominium.

287.   Defendants OMMA and Marquis disregarded the advice of legal counsel to conduct an independent investigation in Carlos Ruiz' theft and embezzlement, and instead, aided and abetted in the embezzlement and theft by allowing, Carlos Ruiz' employer to conduct the investigation into their own employee's criminal conduct.

288.   Carlos Ruiz' theft and embezzlement are prohibited by FL Stat. § 812.  Carlos Ruiz' embezzlement is prohibited by FL Stat. § 836.  This meets the requirement for predicate criminal conduct as defined by Florida RICO.

289.   Carlos Ruiz' association with, and OMMA and Marquis participation in, and aiding and abetting of Carlos Ruiz meets the standard for a "criminal association" as defined by Florida RICO.

290.   Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White did operate an "enterprise" because the association formed and operated by OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White to conduct racketeering activity is an "individual, partnership, corporation, association, or other legal entity, and any union or group of individuals

associated in fact although not a legal entity" (the " OMMA-Marquis Criminal Association") as defined by 18 U.S.C. § 1961(4) and the Florida Statutes.

291.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman regularly participated in, directed, controlled, and benefited from the Trematerra-Rothstein Criminal Association.

292.    Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White regularly participated in, directed, controlled, and benefited from the OMMA-Marquis Criminal Association.

293.    The racketeering offenses committed by the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman and the Trematerra-Rothstein Criminal Association affect interstate commerce as the Defendants and the Trematerra-Rothstein Criminal Association committed offenses against the Plaintiff and the Plaintiff is engaged in interstate commerce since the Plaintiff transacts his business in and across multiple states in the U.S.

294.    The racketeering offenses committed by the Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White and the OMMA-Marquis Criminal Association affect interstate commerce as the Defendants and the OMMA-Marquis Criminal Association committed offenses against the Plaintiff and the Plaintiff is engaged in interstate commerce since the Plaintiff transacts his business in and across multiple states in the U.S.

295.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra-Rothstein Criminal Association did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) and the Florida Statutes in that they did

engaged in, attempted to engage in and/or conspired to engage in wire fraud, defrauding the courts of the State of Florida, and defrauding the Bar of the State of Florida.

296. Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA-Marquis Criminal Association did engage in "racketeering activity" defined by 18 U.S.C. § 1961(1) and the Florida Statutes in that they did engage in, attempted to engage in and/or conspired to engage in extortion, witness tampering, and illegal surveillance.

297. Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra-Rothstein Criminal Association did engage in "racketeering activity" in that they committed two (2) or more predicate criminal offenses within the five (5) years preceding the filing of this Complaint.

298. Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA-Marquis Criminal Association did engage in "racketeering activity" in that they committed two (2) or more predicate criminal offenses within the five (5) years preceding the filing of this Complaint.

299. The duration of Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and the Trematerra-Rothstein Criminal Association's criminal conduct, association with, and participation in the Trematerra-Rothstein Criminal Association is more than one (1) year.

300. The duration of OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, Fenton, and White, and the OMMA-Marquis Criminal Association's criminal conduct, association with, and participation in the OMMA-Marquis Criminal Association is more than two (2) years.

### COUNT 1 (FEDERAL RICO)
**(Conduct Of Or Participation In The Conduct Of
Enterprise's Affairs Through A Pattern Of Racketeering
Activity In Violation Of 18 U.S.C. §§ 1962(b) and 1962(c) (RICO)**

**(Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman)**

301.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

302.    This Count 1 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 1 Defendants").

303.    The Trematerra-Rothstein Criminal Association formed, operated, and participated in by the Count 1 Defendants engaged in interstate commerce, and whose activities affect, interstate commerce.  The Count 1 Defendants employed by or associated with the Trematerra-Rothstein Criminal Association did manage, operate, and profit from the operations of the Trematerra-Rothstein Association to wit: Trematerra, PJT, and PJT successfully extorted the Plaintiff into resigning from Plant Based Mafia, LLC to Trematerra, PJT, and PJT's benefit and to the Plaintiff's detriment. Tannebaum, Bast Amron, Rothstein, Dimond and Neuman were paid in excess of two million dollars ($2,000,000.00) in legal fees for their role in committing extortion, wire fraud, and mail fraud against the Plaintiff, the Other Members, the courts of Florida and Delaware, and Florida Bar, and the New York Bar.

304.    The Count 1 Defendants, and each of them, took part in directing the affairs of the Trematerra-Rothstein Criminal Association and agreed to and did conduct and participate in the conduct of the Trematerra-Rothstein Association's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding and extorting the Plaintiff. Specifically, the Count 1 Defendants did plan, author, and deliver to the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware, the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First

Department New York, multiple documents and other communications including emails and text messages which contained material misstatements in order to defraud the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, the Court of Chancery of the State of Delaware (collectively as the "Courts"), the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York (Collectively as the "Bar Authorities") and defraud and extort the Plaintiff.

305.    The Count 1 Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Trematerra Rothstein Enterprise are conducted; (3) knowingly implemented decisions of upper management; and (4) was indispensable to the achievement of the Trematerra-Rothstein Criminal Association's goals of defrauding and extorting the Plaintiff.

306.    The Count 1 Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Trematerra Rothstein Enterprise are conducted; (3) knowingly implemented decisions of upper management; and (4) was indispensable to the achievement of the Trematerra-Rothstein Criminal Association's goals of defrauding and extorting the Other Members.

307.    Specifically, Rothstein, Dimond, Tannebaum, Bast Amron, Neuman, Trematerra, PJT, and PJT Trust, each drafted, authored, and electronically transmitted an email chain beginning on or about October 26, 2023 and continuing until on or about October 28, 2023, ("10/28/23 Email Chain") where each Defendant participated, gave directions, took directions, implemented decisions of Rothstein and/and Trematerra ("Upper Management").

308.    In said 10/28/23 Email Chain, the Upper Management, (i.e. Rothstein) wrote "I am authorized to share Santoro's latest (which I mentioned this morning). *See attached* " and then

distributed to the Trematerra-Rothstein Criminal Association emails that were later used in the false criminal allegations of UPL that were supplied by Defendants Robert Szumilas, Violetta Szumilas, Everman, and Cashman.

309.    In said 10/28/23 Email Chain, Tannebaum and Bast Amron responded to the subject entitled, "Revised Reply" and concerning said false criminal allegations and UPL complaint.

310.    In said 10/28/23 Email Chain, Rothstein confirm receipt of Tannebaum and Bast Amron's contributions by stating, "Roger That".

311.    In said 10/28/23 Email Chain, in following directions of Upper Management, Neuman supplied his contributions to the Trematerra-Rothstein Criminal Association and to the false criminal allegations and UPL complaint and stated, "Please see my responses, interlineated below."

312.    In said 10/28/23 Email Chain, Trematerra, PJT, and PJT Trust, forwards information contained in the chain to Tyler Maulsby (who is overseeing the prosecution of the false criminal UPL allegations and meritless Bar complaints in New York), Neuman, Tannebaum, Bast Amron, Rothstein, and Dimond, and inquires of Upper Management, "David, ?" showing Trematerra, PJT, and PJT Trusts, knowledge and participation in the Trematerra-Rothstein Criminal Association.

313.    In said 20/28/23 Email Chain, Tyler Maulsby writes to all the associates of the Trematerra-Rothstein Criminal Association and directs their participation in the preparation of the false criminal allegations and UPL complaint filed against the Plaintiff and electronically emailed (wire communication) ultimately in an effort to defraud the New York Bar, "All: Just following up on the open items below and any additional comments.  I would like to finalize this and get it filed today."

314.    Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related acts of wire fraud in violation of 18 U.S.C. § 1343.

315.    Specifically, the Count 1 Defendants, intended to defraud and did indeed defraud the Court of Chancery of the State of Delaware in that they repeatedly filed fraudulent legal documents and transmitted knowingly false allegations electronically via Delaware E-File system and utilizing email communications to sustain a legally baseless case.

316.    Specifically, the Count 1 Defendants, acting alone and in concert, as principals or aiding and abetting principals, on or about June 28, 2023, filed a false, fraudulent, and meritless lawsuit in the Court of Chancery of the State of Delaware.

317.    Specifically, the Count 1 Defendants, acting alone and in concert, as principals or aiding and abetting principals, on or about June 28, 2023, did transmit electronically and utilize electronic case filing to file the following baseless and knowingly false allegation: "Eventually [the Other Members] decided to take the Company…for themselves." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Court of Chancery of the State of Delaware in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

318.    Specifically, the Count 1 Defendants, acting alone and in concert, as principals or aiding and abetting principals, on or about June 28, 2023, did transmit electronically and utilize electronic case filing to file the following baseless and knowingly false allegation: "[The Other Members] breached the Operating Agreement [of PBM Group] by: (a) expelling PJT without adequate compensation; or, alternatively (b) purporting to expel PJT from PBM Group without complying with the procedural requirements in the Operating Agreement." The Count 1

Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Court of Chancery of the State of Delaware in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

319.    Specifically, the Count 1 Defendants, acting alone and in concert, as principals or aiding and abetting principals, on or about June 28, 2023, did transmit electronically and utilize electronic case filing to file the following baseless and knowingly false allegation: "PJT has performed under the Operating Agreement and/or is ready, willing, and able to perform any outstanding obligations." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Court of Chancery of the State of Delaware in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

320.    Specifically, the Count 1 Defendants, intended to defraud and did indeed defraud the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in that they repeatedly filed fraudulent legal documents and transmitted knowingly false allegations electronically via Florida E-File system and utilizing email communications to sustain a legally baseless case.

321.    Specifically, the Count 1 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In or about June 2023, [Plaintiff] communicated with the Other Members…and influenced, induced and coerced the Other Members to wrongfully and baselessly expel [Trematerra, PJT, and PJT Trust] as a [Member] in breach of the Operating Agreement…" The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless,

yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

322.    Specifically, the Count 1 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] further influenced, induced and coerced the other members [sic]…to effectuate and carry out such wrongful expulsion by proposing, preparing and promulgating a 'Resolution of the Members of PBM Group Holdings, LLC to Expel PJT Holdings, LLC And to Remove LLC Manager Peter Trematerra as Officer and Manager Through the Unanimous Vote And Consent of All Disinterested Members…" The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

323.    Specifically, the Count 1 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] tortiously interfered with the relationship of [Trematerra, PJT, and PJT Trust], the Other Members and [the company], causing the Other Members to alter, sever, or curtail their business dealings with [Trematerra, PJT, and PJT Trust]." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

324.     Specifically, the Count 1 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "The conduct of the [Plaintiff] was unlawful, calculated and predatory, in that it involved a restraint of trade." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

325.     Specifically, the Count 1 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] received payment or other things of value from [the company]…for furnishing legal advice and counsel to [the company]" and "[Plaintiff will be unjustly enriched if he is allowed to retain the benefits resulting from his furnishing legal advice and counsel without a license to practice law." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegations to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

326.     Following the filing of above knowingly false statements in an effort to defraud the court, the Count 1 Defendants then extorted the Plaintiff to wit:  a) on or about July 3, 2023, the Count 1 Defendants electronically transmitted an email message to the Plaintiff demanding "$25,000 and [Plaintiff's] immediate resignation from any position purportedly held with PBM Group Holdings, LLC and any other affiliated entity [otherwise the Count 1 Defendants will

maintain their false allegations and fraudulent lawsuit against the Plaintiff] in violation of 18 U.S.C. § 1951; and b) on or about March 31, 2025, Count 1 Defendants electronically transmitted an email message to the Plaintiff demanding pay four hundred and seventy-five thousand dollars ($475,000.00) to the Trematerra-Rothstein Criminal Association in exchange for the Trematerra-Rothstein Criminal Association's agreement to dismiss the meritless lawsuit seeking to financially decimate the Plaintiff of 18 U.S.C. § 1951.

327.    The Count 1 Defendants then added additional knowingly false allegations in a further attempt to extort the Plaintiff and defraud the Circuit Court.

328.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "Almost immediately, [the Plaintiff] implemented a plan the purpose of which was to seize control of [the company]…by just divorcing [Trematerra, PJT, and PJT Trust] from its equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] with any compensation whatsoever" The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

329.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] was the point man of an attempted *coup*…" [italicization in the original] The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such

information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

330.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] led the charge whereby the [Other Members] tried to just steal what belongs to PJT Holdings." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

331.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] intentionally and without justification, interfered with [Trematerra, PJT, PJT Trust] business relationship with [the company]." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

332.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] rendered substantial assistance, *inter alia,* by serving as the 'point person' in the plan to seize [Trematerra, PJT, PJT Trust] equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] fair compensation for its equity interest." The Count 1

Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

333.    Specifically, the Count 1 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] performed overt acts in pursuance of the conspiracy, *inter alia*, by serving as the 'point person' in the plan to convert [Trematerra, PJT, and PJT Trust] equity interest in [the company] without providing [the company] fair compensation for its equity interest." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

334.    The acts of wire fraud in violation of 18 U.S.C. § 1343 and acts of extortion in violation of 18 U.S.C. § 1951(a) set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

335.    The Count I Defendants regularly participated in, directed, controlled, and profited from participation in the Trematerra-Rothstein Criminal Association.

336.    The racketeering offenses committed by the Count 1 Defendants and the Trematerra-Rothstein Criminal Association in violation of 18 U.S.C. § 1962(c) affect interstate commerce as the Count 1 Defendants committed the enumerated RICO predicate offenses against the Plaintiff and the Plaintiff is engaged in interstate commerce as he practices law in several

states/jurisdictions and operates several businesses that provide products and services to clients and customers located in several states.

337.   The racketeering offenses committed by the Count 1 Defendants and the Trematerra-Rothstein Criminal Association caused the Plaintiff to suffer professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

**COUNT 2 (FEDERAL RICO - CONSPIRACY)**
**(Conspiracy to Conduct Or Participate In The Conduct Of**
**Enterprise's Affairs Through A Pattern Of Racketeering**
**Activity In Violation Of 18 U.S.C. 1962(d) (RICO))**
**(Against Defendants Trematerra, PJT, PJT Trust, Tannebaum,**
**Bast Amron, Rothstein, Dimond and Neuman)**

338.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 337 as if fully set forth herein.

339.   This Count 2 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 2 Defendants").

340.   The Trematerra-Rothstein Criminal Association formed, operated, and participated in by the Count 2 Defendants engaged in interstate commerce, and whose activities affect, interstate commerce.  The Count 2 Defendants employed by or associated with the Trematerra-Rothstein Criminal Association did meet, discuss, agree, and conspire to manage, operate, and profit from the operations of the Trematerra-Rothstein Association to wit: Trematerra, PJT, and PJT successfully extorted the Plaintiff into resigning from Plant Based Mafia, LLC to Trematerra, PJT, and PJT's benefit and to the Plaintiff's detriment. Tannebaum, Bast Amron, Rothstein, Dimond and Neuman were paid in excess of two million dollars ($2,000,000.00) in legal fees for their role in committing extortion, wire fraud, and mail fraud against the Plaintiff, the Other Members, the courts of Florida and Delaware, and Florida Bar, and the New York Bar.

341.    As set forth above, the Count 2 Defendants agreed to and conspired to violate 18 U.S.C. § 1962(c).  Specifically, the Count 2 Defendants conspired to conduct and participate in the conduct of the affairs of the Trematerra-Rothstein Criminal Association through a pattern of racketeering activity alleged hereinabove (18 U.S.C. § 1962(c)).

342.    The Count 2 Defendants have intentionally conspired and agreed to conduct and participate in the conduct of affairs of the Trematerra-Rothstein Criminal Association through a pattern of racketeering activity alleged hereinabove.  The Count 2 Defendants knew that their predicate acts were part of a pattern of racketeering activity set forth hereinabove and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate U.S.C. §§ 1962(b), 1962(c) and 1962(d).

343.    The Count 2 Defendants, and each of them, intended to further the wire fraud endeavors in violation of 18 U.S.C. § 1343.

344.    The Count 2 Defendants, and each of them, intended to further the mail fraud endeavors in violation of 18 U.S.C. § 1341.

345.    The Count 2 Defendants, and each of them, intended to further the extortion endeavors in violation of 18 U.S.C. § 1951(a).

346.    The Count 2 Defendants, and each of them, were during the Relevant Period, and at other times, aware of the essential nature and scope of the Enterprise and intended to participate in it.

347.    The Count 2 Defendants agreed to commit, or participate in, the violation of two or more predicate offenses, namely at least two acts of wire fraud in violation of 18 U.S.C. § 1343, and at least one act of extortion in violation of 18 U.S.C. § 1951.

348.    The Count 2 Defendants, and each of them, conducted meetings, engaged in communications, entered into oral and written agreements and conspired to take part and did in fact took part in directing the affairs of the Trematerra-Rothstein Criminal Association and conspired and agreed to and did conduct and participate in the conduct of the Trematerra-Rothstein Association's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding and extorting the Plaintiff. Specifically, the Count 2 Defendants did conduct meetings, engaged in communications, entered into oral and written agreements and jointly conspired and explicitly agreed to plan, author, and deliver to the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware, the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York, multiple documents and other communications including emails and text messages which contained material misstatements in order to defraud the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware (collectively as the "Courts"), the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York (Collectively as the "Bar Authorities") and defraud and extort the Plaintiff.

349.    The Count 2 Defendants, and each of them, conducted meetings, engaged in communications, entered into oral and written agreements and conspired that each member of the Trematerra-Rothstein Criminal Association (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Trematerra-Rothstein Criminal Association are conducted; (3) knowingly implemented decisions of upper management; and (4) was indispensable to the achievement of the Trematerra-Rothstein Criminal Association's goals of defrauding and extorting the Plaintiff.

350.    Pursuant to and in furtherance of their fraudulent scheme, the Count 2 Defendants conducted meetings, engaged in communications, entered into oral and written agreements and conspired to commit multiple related acts of wire fraud in violation of 18 U.S.C. § 1343.

351.    Specifically, the Count 2 Defendants, conducted meetings, engaged in communications, entered into oral and written agreements and conspired to defraud and did indeed defraud the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in that they repeatedly filed fraudulent legal documents and transmitted knowingly false allegations electronically via Florida E-File system and utilizing email communications to sustain a legally baseless case.

352.    Specifically, the Count 2 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In or about June 2023, [Plaintiff] communicated with the Other Members…and influenced, induced and coerced the Other Members to wrongfully and baselessly expel [Trematerra, PJT, and PJT Trust] as a [Member] in breach of the Operating Agreement…" The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

353.    Specifically, the Count 2 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] further influenced, induced and coerced the other members [sic]…to effectuate and carry out such wrongful expulsion by proposing, preparing and promulgating a 'Resolution of the Members of PBM Group Holdings, LLC to Expel PJT Holdings, LLC And to Remove LLC

Manager Peter Trematerra as Officer and Manager Through the Unanimous Vote And Consent of All Disinterested Members…" The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

354.    Specifically, the Count 2 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] tortiously interfered with the relationship of [Trematerra, PJT, and PJT Trust], the Other Members and [the company], causing the Other Members to alter, sever, or curtail their business dealings with [Trematerra, PJT, and PJT Trust]." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

355.    Specifically, the Count 2 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "The conduct of the [Plaintiff] was unlawful, calculated and predatory, in that it involved a restraint of trade." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

356.    Specifically, the Count 2 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] received payment or other things of value from [the company]…for furnishing legal advice and counsel to [the company]" and "[Plaintiff will be unjustly enriched if he is allowed to retain the benefits resulting from his furnishing legal advice and counsel without a license to practice law." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegations to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

357.    Following the filing of above knowingly false statements in an effort to defraud the court, the Count 2 Defendants then extorted the Plaintiff to wit:  On July 3, 2023, the Count 2 Defendants electronically transmitted an email message to the Plaintiff demanding "$25,000 and [Plaintiff's] immediate resignation from any position purportedly held with PBM Group Holdings, LLC and any other affiliated entity [otherwise the Count 2 Defendants will maintain their false allegations and fraudulent lawsuit against the Plaintiff] in violation of 18 U.S.C. § 1951.

358.    The Count 2 Defendants then added additional knowingly false allegations in a further attempt to extort the Plaintiff and defraud the Circuit Court.

359.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "Almost immediately, [the Plaintiff] implemented a plan the purpose of which was to seize control of [the company]…by just divorcing [Trematerra, PJT, and PJT Trust] from its equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] with any compensation

whatsoever." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

360.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] was the point man of an attempted *coup*..." [italicization in the original] The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

361.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] led the charge whereby the [Other Members] tried to just steal what belongs to PJT Holdings." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

362.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] intentionally and without justification, interfered with [Trematerra, PJT, PJT Trust]

business relationship with [the company]." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

363.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] rendered substantial assistance, *inter alia,* by serving as the 'point person' in the plan to seize [Trematerra, PJT, PJT Trust] equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] fair compensation for its equity interest." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

364.    Specifically, the Count 2 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] performed overt acts in pursuance of the conspiracy, *inter alia,* by serving as the 'point person' in the plan to convert [Trematerra, PJT, and PJT Trust] equity interest in [the company] without providing [the company] fair compensation for its equity interest." The Count 2 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of 18 U.S.C. § 1343.

365.   The acts of wire fraud in violation of 18 U.S.C. § 1343 and acts of extortion in violation of 18 U.S.C. § 1951(a) committed by the Count 2 Defendants as set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

366.   The Count 2 Defendants regularly participated in, directed, controlled, and profited from participation in the Trematerra-Rothstein Criminal Association to wit:  a) Trematerra, PJT, and PJT Trust and the Trematerra-Rothstein Criminal Association were able to successfully extort the Plaintiff into resigning all of his positions with Plant Based Mafia; and b) Rothstein, Dimond, Tannebaum, Bast Amron, and Neuman were able to receive millions of dollars in fees for carrying on the Trematerra-Rothstein Criminal Association's racketeering activities including, but not limited to defrauding the Circuit Court, defrauding the Chancery Court, defrauding the Florida Bar, defrauding the New York Bar, and extorting the Plaintiff.

367.   The racketeering offenses committed by the Count 2 Defendants and the Trematerra-Rothstein Criminal Association in violation of 18 U.S.C. § 1962(d) affect interstate commerce as the Count 2 Defendants committed the enumerated RICO predicate offenses against the Plaintiff and the Plaintiff is engaged in interstate commerce as he practices law in several states/jurisdictions and operates several businesses that provide products and services to clients and customers located in several states

368.   For each and every allegation contained in paragraphs 300 through and including 337 above, each associate of the Trematerra-Rothstein Criminal Association, met, discussed, planned, and agreed to, and conspired to, carry out the conduct and criminal acts constituting illegal racketeering activities as further described herein.

369.   The racketeering offenses committed by the Count 2 Defendants and the Trematerra-Rothstein Criminal Association caused the Plaintiff to suffer professional and

reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 3 (FLORIDA RICO)
**(Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. §§ 895.03(2) and 895.03(3)) (Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)**

370.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 369 as if fully set forth herein.

371.     This Count 3 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 3 Defendants").

372.     The Count 3 Defendants employed by or associated with the Trematerra-Rothstein Criminal Association did manage, operate, and profit from the operations of the Trematerra-Rothstein Criminal Association to wit: Trematerra, PJT, and PJT successfully extorted the Plaintiff into resigning from Plant Based Mafia, LLC to Trematerra, PJT, and PJT's benefit and to the Plaintiff's detriment. Tannebaum, Bast Amron, Rothstein, Dimond and Neuman were paid in excess of two million dollars ($2,000,000.00) in legal fees for their role in committing extortion, wire fraud, and mail fraud against the Plaintiff, the Other Members, the courts of Florida and Delaware, and Florida Bar, and the New York Bar.

373.     The Count 3 Defendants, and each of them, took part in directing the affairs of the Trematerra-Rothstein Criminal Association and agreed to and did conduct and participate in the conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding and extorting the Plaintiff. Specifically, the Count 3 Defendants did plan, author, and deliver to the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of

Delaware, the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York, multiple documents and other communications including emails and text messages which contained material misstatements in order to defraud the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware (collectively as the "Courts"), the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York (Collectively as the "Bar Authorities") and defraud and extort the Plaintiff.

374. The Count 3 Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Trematerra-Rothstein Criminal Association are conducted; (3) knowingly implemented decisions of Upper Management; and (4) was indispensable to the achievement of the Trematerra-Rothstein Criminal Association's goals of defrauding and extorting the Plaintiff.

375. Pursuant to and in furtherance of their fraudulent scheme, the Count I Defendants committed multiple related acts of wire fraud in violation of Fl. Stat. § 817.

376. Specifically, the Count 3 Defendants, intended to defraud and did indeed defraud the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in that they repeatedly filed fraudulent legal documents and transmitted knowingly false allegations electronically via Florida E-File system and utilizing email communications to sustain a legally baseless case.

377. Specifically, the Count 3 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In or about June 2023, [Plaintiff] communicated with the Other Members…and influenced, induced and coerced the Other Members to wrongfully and baselessly expel [Trematerra, PJT, and PJT Trust]

as a [Member] in breach of the Operating Agreement…" The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

378.    Specifically, the Count 3 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] further influenced, induced and coerced the other members [sic]…to effectuate and carry out such wrongful expulsion by proposing, preparing and promulgating a 'Resolution of the Members of PBM Group Holdings, LLC to Expel PJT Holdings, LLC And to Remove LLC Manager Peter Trematerra as Officer and Manager Through the Unanimous Vote And Consent of All Disinterested Members…" The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

379.    Specifically, the Count 3 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] tortiously interfered with the relationship of [Trematerra, PJT, and PJT Trust], the Other Members and [the company], causing the Other Members to alter, sever, or curtail their business dealings with [Trematerra, PJT, and PJT Trust]." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of

the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

380.    Specifically, the Count 3 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "The conduct of the [Plaintiff] was unlawful, calculated and predatory, in that it involved a restraint of trade." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

381.    Specifically, the Count 3 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] received payment or other things of value from [the company]…for furnishing legal advice and counsel to [the company]" and "[Plaintiff will be unjustly enriched if he is allowed to retain the benefits resulting from his furnishing legal advice and counsel without a license to practice law." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegations to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

382.    Following the filing of above knowingly false statements in an effort to defraud the court, the Count 3 Defendants then extorted the Plaintiff to wit:  On July 3, 2023, the Count 3 Defendants electronically transmitted an email message to the Plaintiff demanding "$25,000 and [Plaintiff's] immediate resignation from any position purportedly held with PBM Group Holdings,

LLC and any other affiliated entity [otherwise the Count 3 Defendants will maintain their false allegations and fraudulent lawsuit against the Plaintiff] in violation of Fl. Stat. § 836.05.

383.    The Count 3 Defendants then added additional knowingly false allegations in a further attempt to extort the Plaintiff and defraud the Circuit Court.

384.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "Almost immediately, [the Plaintiff] implemented a plan the purpose of which was to seize control of [the company]…by just divorcing [Trematerra, PJT, and PJT Trust] from its equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] with any compensation whatsoever" The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

385.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] was the point man of an attempted *coup*…" [italicization in the original] The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

386.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] led the charge whereby the [Other Members] tried to just steal what belongs to

PJT Holdings." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

387.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] intentionally and without justification, interfered with [Trematerra, PJT, PJT Trust] business relationship with [the company]." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

388.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] rendered substantial assistance, *inter alia,* by serving as the 'point person' in the plan to seize [Trematerra, PJT, PJT Trust] equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] fair compensation for its equity interest." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

389.    Specifically, the Count 3 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation:

"[Plaintiff] performed overt acts in pursuance of the conspiracy, *inter alia*, by serving as the 'point person' in the plan to convert [Trematerra, PJT, and PJT Trust] equity interest in [the company] without providing [the company] fair compensation for its equity interest." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

390.     The acts of wire fraud in violation of Fl. Stat. § 817 and acts of extortion in violation of Fl. Stat. § 836.05 set forth above constitute a pattern of racketeering activity pursuant to Fl. Stat. § 895.

391.     The Count 3 Defendants regularly participated in, directed, controlled, and profited from participation in the Trematerra-Rothstein Criminal Association.

392.     As a result of the Count 3 Defendants Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 4 (FLORIDA RICO CONSPIRACY)
**(Conspiracy to Conduct or Participate in the Conduct of an Enterprise's Affairs Through
A Pattern of Racketeering Activity in Violation of FL Stat. § 895.03(4))
(Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron,
Rothstein, Dimond, and Neuman)**

393.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 392 as if fully set forth herein.

394.     This Count 4 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 4 Defendants").

395.     As set forth above, the Count 4 Defendants agreed to and conspired to violate FL Stat. §§ 895.03(2) and 895.03(3) and each of the offenses alleged in this Count 4.  Specifically, the Count 4 Defendants conspired to conduct and participate in the conduct of the affairs of the Trematerra-Rothstein Criminal Association through a pattern of racketeering activity alleged hereinabove violate FL Stat. §§ 895.03(2) and 895.03(3).

396.     The Count 4 Defendants have intentionally conspired and agreed to conduct and participate in the conduct of affairs of the Trematerra-Rothstein Criminal Association through a pattern of racketeering activity alleged hereinabove.  The Count 4 Defendants knew that their predicate acts were part of a pattern of racketeering activity set forth hereinabove and agreed to the commission of those acts to further the schemes described above.  That conduct constitutes a conspiracy to violate FL Stat. §§ 895.03(2) and 895.03(3).

397.     The Count 4 Defendants employed by or associated with the Trematerra-Rothstein Criminal Association did manage, operate, and profit from the operations of the Trematerra-Rothstein Criminal Association to wit: Trematerra, PJT, and PJT successfully extorted the Plaintiff into resigning from Plant Based Mafia, LLC to Trematerra, PJT, and PJT's benefit and to the Plaintiff's detriment. Tannebaum, Bast Amron, Rothstein, Dimond and Neuman were paid in excess of two million dollars ($2,000,000.00) in legal fees for their role in committing extortion, wire fraud, and mail fraud against the Plaintiff, the Other Members, the courts of Florida and Delaware, and Florida Bar, and the New York Bar.

398.     The Count 4 Defendants, and each of them, took part in directing the affairs of the Trematerra-Rothstein Criminal Association and agreed to and did conduct and participate in the

conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding and extorting the Plaintiff. Specifically, the Count 4 Defendants did plan, author, and deliver to the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware, the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York, multiple documents and other communications including emails and text messages which contained material misstatements in order to defraud the Circuit Court of the 11th Judicial Circuit in an for Miami-Dade County, the Court of Chancery of the State of Delaware (collectively as the "Courts"), the Florida Bar Unlicensed Practice of Law Department, and the Attorney Grievance Committee for the First Department New York (Collectively as the "Bar Authorities") and defraud and extort the Plaintiff.

399.   The Count 4 Defendants, and each of them, (1) gave or took directions; (2) occupied a position in the "chain of command" through which the affairs of the Trematerra-Rothstein Criminal Association are conducted; (3) knowingly implemented decisions of Upper Management; and (4) was indispensable to the achievement of the Trematerra-Rothstein Criminal Association's goals of defrauding and extorting the Plaintiff.

400.   Pursuant to and in furtherance of their fraudulent scheme, the Count 4 Defendants committed multiple related acts of wire fraud in violation of Fl. Stat. § 817.

401.   Specifically, the Count 4 Defendants, intended to defraud and did indeed defraud the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in that they repeatedly filed fraudulent legal documents and transmitted knowingly false allegations electronically via Florida E-File system and utilizing email communications to sustain a legally baseless case.

402.     Specifically, the Count 4 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In or about June 2023, [Plaintiff] communicated with the Other Members…and influenced, induced and coerced the Other Members to wrongfully and baselessly expel [Trematerra, PJT, and PJT Trust] as a [Member] in breach of the Operating Agreement…" The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

403.     Specifically, the Count 4 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] further influenced, induced and coerced the other members [sic]…to effectuate and carry out such wrongful expulsion by proposing, preparing and promulgating a 'Resolution of the Members of PBM Group Holdings, LLC to Expel PJT Holdings, LLC And to Remove LLC Manager Peter Trematerra as Officer and Manager Through the Unanimous Vote And Consent of All Disinterested Members…" The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

404.     Specifically, the Count 4 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] tortiously interfered with the relationship of [Trematerra, PJT, and PJT Trust], the

Other Members and [the company], causing the Other Members to alter, sever, or curtail their business dealings with [Trematerra, PJT, and PJT Trust]." The Count 1 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

405.    Specifically, the Count 4 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "The conduct of the [Plaintiff] was unlawful, calculated and predatory, in that it involved a restraint of trade." The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

406.    Specifically, the Count 4 Defendants, on or about June 27, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] received payment or other things of value from [the company]…for furnishing legal advice and counsel to [the company]" and "[Plaintiff will be unjustly enriched if he is allowed to retain the benefits resulting from his furnishing legal advice and counsel without a license to practice law." The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegations to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

407.    Following the filing of above knowingly false statements in an effort to defraud the court, the Count 4 Defendants then extorted the Plaintiff to wit:  On July 3, 2023, the Count 4 Defendants electronically transmitted an email message to the Plaintiff demanding "$25,000 and [Plaintiff's] immediate resignation from any position purportedly held with PBM Group Holdings, LLC and any other affiliated entity [otherwise the Count 4 Defendants will maintain their false allegations and fraudulent lawsuit against the Plaintiff] in violation of Fl. Stat. § 836.05.

408.    The Count 4 Defendants then added additional knowingly false allegations in a further attempt to extort the Plaintiff and defraud the Circuit Court.

409.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "Almost immediately, [the Plaintiff] implemented a plan the purpose of which was to seize control of [the company]…by just divorcing [Trematerra, PJT, and PJT Trust] from its equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] with any compensation whatsoever" The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

410.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] was the point man of an attempted *coup*…" [italicization in the original] The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such

information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

411.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "In short, [Plaintiff] led the charge whereby the [Other Members] tried to just steal what belongs to PJT Holdings." The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

412.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] intentionally and without justification, interfered with [Trematerra, PJT, PJT Trust] business relationship with [the company]." The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

413.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] rendered substantial assistance, *inter alia,* by serving as the 'point person' in the plan to seize [Trematerra, PJT, PJT Trust] equity interest in [the company] without providing [Trematerra, PJT, and PJT Trust] fair compensation for its equity interest." The Count 4 Defendants had in their possession documentary evidence clearly demonstrating their allegation

to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

414.    Specifically, the Count 4 Defendants, on or about December 21, 2023, did transmit and utilize electronic case filing to file the following baseless and knowingly false allegation: "[Plaintiff] performed overt acts in pursuance of the conspiracy, *inter alia*, by serving as the 'point person' in the plan to convert [Trematerra, PJT, and PJT Trust] equity interest in [the company] without providing [the company] fair compensation for its equity interest." The Count 3 Defendants had in their possession documentary evidence clearly demonstrating their allegation to be false and baseless, yet they electronically filed, transmitted, and published such information to the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County Florida in an attempt to defraud said court and in violation of Fl. Stat. § 817.

415.    The acts of wire fraud in violation of Fl. Stat. § 817 and acts of extortion in violation of Fl. Stat. § 836.05 set forth above constitute a pattern of racketeering activity pursuant to Fl. Stat. § 895.

416.    The Count 4 Defendants regularly participated in, directed, controlled, and profited from participation in the Trematerra-Rothstein Criminal Association.

417.    As a result of the Count 4 Defendants' conspiracy to conduct or participate in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 5 (FEDERAL RICO)
**(Conduct of or Participation in the Conduct of an**

**Enterprise's Affairs Through A Pattern of Racketeering
Activity in Violation of 18 U.S.C. §§ 1962(b) and 1962(c) (RICO))
(Against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and
White)**

418.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

419.   This Count 5 is against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White (the "Count 5 Defendants").

420.   The Count 5 Defendants are associates and the principals of the OMMA-Marquis Criminal Associates.

421.   The OMMA-Marquis Criminal Association, like many racketeering endeavors began with the noble intentions of successfully governing and managing a large Downtown Miami luxury condominium complex.

422.   But when one takes the time to carefully examine the conduct of the Count 5 Defendants and the Criminal Association they operated and controlled, it becomes readily apparent that they would do whatever was necessary to hide their crimes, malfeasance, ineptitude, and incompetence.

423.   The Count 5 Defendants engaged in a multitude of racketeering activities in an effort obfuscate their fraud, waste, breach of fiduciary duties and mismanagement of the One Miami Master Association.

424.   The Plaintiff was appointed to the Board of OMMA, and nearly immediately raised to the office of President because of his business acumen, investigations background, and forensic accounting experience.

425.    Each time the Plaintiff uncovered evidence of fraud, waste, breach of fiduciary duties, and mismanagement, the Count 5 Defendants sprung into action to "bury" and/or minimize such evidence.

426.    The actions of the Count 5 Defendants went far beyond "closed door deals" and "off the record" conversations…the Count 5 Defendants slid down the slippery slope of increasing criminality.

427.    Defendants Marquis and Carlos Ruiz took, removed, embezzled, and/or transferred without permission or authority, paint and under property belonging to OMMA and the Plaintiff, and used that property to paint the personal residence of Carlos Ruiz without compensating OMMA or the Plaintiff in violation of Fl Stat. § 812.

428.    The Count 5 Defendants did commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach and Fenton did approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff had a criminal conviction from conduct that occurred nearly twenty-five (25) years ago in violation of 18 U.S.C. § 1951 AND FL STAT. § 836.

429.    OMMA, Marquis, Carlos Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMMA], [Fenton and the OMMA-Marquis Criminal Association] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL

Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

430.   The Count 5 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

431.   The Count 5 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they offered employment to Carlos Sandoval to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

432.   The Count 5 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation of 18 U.S.C. § 1512,  18 U.S.C. § 201, and FL Stat. § 914 when they offered employment to Luis Ruiz to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

433.   OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White violated FL Stat. § 934 (Interception of Wire, Oral, or Electronic Communications) to wit: OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White, acting in concert and individually, secreted audio and video recording devices in at least one private office located at One Miami for the unlawful purpose of surreptitiously recording the Plaintiff and other individuals without their knowledge and then use any such audio and/or video recordings for unlawful and tortious purposes such as extortion and defamation.

434.     OMMA, Magid, Lasicki, and White conspired with, authorized, acted with actual knowledge, and did give implied and/or express consent to Marquis and Carlos Ruiz to install hidden audio and video recording devices that did in fact record the video and audio likeness of the Plaintiff without his knowledge or consent.

435.     The Count 5 Defendants attempted to have the Plaintiff falsely arrested by making a false criminal complaint to the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

436.     The Count 5 Defendants attempted to have the Plaintiff falsely arrested by making a false criminal complaint to the Miami-Dade State Attorney's Office's Cyber Crimes Division that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

437.     The Count 5 Defendants filed false written allegations and transmitted them via wire to the Florida Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Florida Bar (Wire Fraud).

438.     The Count 5 Defendants filed false written allegations and transmitted them via wire to the New York Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the New York Bar (Wire Fraud).

439.     The Count 5 Defendants filed used the telephone to transmit voice and information via wire to the Attorney General of Washington, D.C. that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Attorney General of Washington, D.C. (Wire Fraud).

440.     As a result of the Count 5 Defendants Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of 18 U.S.C.

§§ 1962(b) and 1962(c), the Plaintiff has suffered professional and reputational damage, financial, emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 6 (FEDERAL RICO CONSPIRACY)
**(Conduct of or Participation in the Conduct of an
Enterprise's Affairs Through A Pattern of Racketeering
Activity in Violation of 18 U.S.C. § 1962(d) (RICO)
(Against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki,
Fenton, and White)**

441.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through and including 300 and paragraphs 418 through and including 440 as if fully set forth herein.

442.    This Count 6 is against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White (the "Count 6 Defendants")

443.    The Count 6 Defendants are associates and the principals of the OMMA-Marquis Criminal Associates.

444.    The OMMA-Marquis Criminal Association, like many racketeering endeavors began with the noble intentions of successfully governing and managing a large Downtown Miami luxury condominium complex.

445.    But when one takes the time to carefully examine the conduct of the Count 6 Defendants and the Criminal Association they operated and controlled, it becomes readily apparent that they would do whatever was necessary to hide their crimes, malfeasance, ineptitude, and incompetence.

446.    The Count 6 Defendants conducted meetings, conducted phone conferences, conducted video conferences, exchanged electronic communications including, but not limited to emails, text messages, and FaceBook "chats" in which they planned, agreed, conspired, to engage in and carry out the conduct listed above in and paragraphs 418 through and including 440 in order

to achieve the goals of the OMMA-Marquis Criminal Association to wit: to hide from the public the fraud, mismanagement, malfeasance, ineptitude, incompetence, and theft of the OMMA-Marquis Criminal Association from the Plaintiff, the owners of the One Miami Condominium, and the public in general.  In addition, the Count 6 Defendants meet, discussed, agreed, and delegated the duty to extort the Plaintiff to OMMA-Marquis Criminal Association associate Martin Fenton and indeed Fenton did extort the Plaintiff by threatening to expose potentially embarrassing and damaging information about the Plaintiff's criminal conviction for conduct that occurred 25 years ago.

447.    The Count 6 Defendants conspired to engage in a multitude of racketeering activities in an effort obfuscate their fraud, waste, breach of fiduciary duties and mismanagement of the One Miami Master Association.

448.    The Plaintiff was appointed to the Board of OMMA, and nearly immediately raised to the office of President because of his business acumen, investigations background, and forensic accounting experience.

449.    Each time the Plaintiff uncovered evidence of fraud, waste, breach of fiduciary duties, and mismanagement, the Count 6 Defendants sprang into action and conspired to "bury" and/or minimize such evidence.

450.    The actions of the Count 6 Defendants went far beyond "closed door deals" and "off the record" conversations…the Count 6 Defendants slid down the slippery slope of increasing criminality.

451.    Defendants Marquis and Carlos Ruiz conspired and agreed to take, remove, embezzle, and/or transfer without permission or authority, paint and under property belonging to

OMMA and the Plaintiff, and use that property to paint the personal residence of Carlos Ruiz without compensating OMMA or the Plaintiff in violation of Fl Stat. § 812.

452.    The Count 6 Defendants did conspire and agree to commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach and Fenton did approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff had a criminal conviction from conduct that occurred nearly twenty-five (25) years ago in violation of 18 U.S.C. § 1951 AND FL STAT. § 836.

453.    OMMA, Marquis, Carlos Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMMA], [Fenton and the OMMA-Marquis Criminal Association] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

454.    The Count 6 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to commit** witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

455.    The Count 6 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to commit** witness tampering and witness bribery, in violation 18 U.S.C. § 1512, 18 U.S.C. § 201, FL Stat. § 914 when they offered employment to Carlos Sandoval to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

456.    The Count 6 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to** commit witness tampering and witness bribery, in violation of 18 U.S.C. § 1512, 18 U.S.C. § 201, and FL Stat. § 914 when they offered employment to Luis Ruiz to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

457.    OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White violated FL Stat. § 934 (Interception of Wire, Oral, or Electronic Communications) to wit: OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White, acting in concert and individually, met, agreed, and conspired to secrete audio and video recording devices in at least one private office located at One Miami for the unlawful purpose of surreptitiously recording the Plaintiff and other individuals without their knowledge and then use any such audio and/or video recordings for unlawful and tortious purposes such as extortion and defamation.

458.    OMMA, Magid, Lasicki, and White conspired with, authorized, acted with actual knowledge, and did give implied and/or express consent to Marquis and Carlos Ruiz to install hidden audio and video recording devices that did in fact record the video and audio likeness of the Plaintiff without his knowledge or consent.

459.    The Count 6 Defendants met, agreed, and conspired to attempt to have the Plaintiff falsely arrested by making a false criminal complaint to the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

460.    The Count 6 Defendants met, agreed, and conspired to attempt to have the Plaintiff falsely arrested by making a false criminal complaint to the Miami-Dade State Attorney's Office's Cyber Crimes Division that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

461.    The Count 6 Defendants met, agreed, and conspired to attempt to file false written allegations and transmitted them via wire to the Florida Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Florida Bar (Wire Fraud).

462.    The Count 6 Defendants met, agreed, and conspired to attempt to file false written allegations and transmitted them via wire to the New York Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the New York Bar (Wire Fraud).

463.    The Count 6 Defendants met, agreed, and conspired to attempt to use the telephone to transmit voice and information via wire to the Attorney General of Washington, D.C. that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Attorney General of Washington, D.C. (Wire Fraud).

464.    As a result of the Count 6 Defendants' conspiracy to Conduct or Participate in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of 18 U.S.C. § 1962(d), the Plaintiff has suffered professional and reputational damage, financial,

emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 7 (FLORIDA RICO)
### (Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895)
### (Against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White)

465.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through and including 300 and paragraphs 418 through and including 464 as if fully set forth herein.

466.    This Count 7 is against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White (the "Count 7 Defendants").

467.    The Count 7 Defendants engaged in wire fraud, extortion, illegal surveillance, witness tampering, and falsification of business records all in violation of the criminal statutes of Florida.

468.    The Count 7 Defendants are associates and the principals of the OMMA-Marquis Criminal Associates.

469.    The OMMA-Marquis Criminal Association, like many racketeering endeavors began with the noble intentions of successfully governing and managing a large Downtown Miami luxury condominium complex.

470.    But when one takes the time to carefully examine the conduct of the Count 7 Defendants and the Criminal Association they operated and controlled, it becomes readily apparent that they would do whatever was necessary to hide their crimes, malfeasance, ineptitude, and incompetence.

471.    The Count 7 Defendants engaged in a multitude of racketeering activities in an effort obfuscate their fraud, waste, breach of fiduciary duties and mismanagement of the One Miami Master Association.

472.    The Plaintiff was appointed to the Board of OMMA, and nearly immediately raised to the office of President because of his business acumen, investigations background, and forensic accounting experience.

473.    Each time the Plaintiff uncovered evidence of fraud, waste, breach of fiduciary duties, and mismanagement, the Count 7 Defendants sprang into action to "bury" and/or minimize such evidence.

474.    The actions of the Count 7 Defendants went far beyond "closed door deals" and "off the record" conversations…the Count 7 Defendants slid down the slippery slope of increasing criminality.

475.    Defendants Marquis and Carlos Ruiz took, removed, embezzled, and/or transferred without permission or authority, paint and under property belonging to OMMA and the Plaintiff, and used that property to paint the personal residence of Carlos Ruiz without compensating OMMA or the Plaintiff in violation of Fl Stat. § 812.

476.    The Count 7 Defendants did commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach and Fenton did approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff had a criminal conviction from

conduct that occurred nearly twenty-five (25) years ago in violation of 18 U.S.C. § 1951 AND FL STAT. § 836.

477.    OMMA, Marquis, Carlos Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMMA], [Fenton and the OMMA-Marquis Criminal Association] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

478.    The Count 7 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

479.    The Count 7 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they offered employment to Carlos Sandoval to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

480.    The Count 7 Defendants and the OMMA-Marquis Criminal Association committed witness tampering and witness bribery, in violation of 18 U.S.C. § 1512,  18 U.S.C. § 201, and FL Stat. § 914 when they offered employment to Luis Ruiz to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

481.    OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White violated FL Stat. § 934 (Interception of Wire, Oral, or Electronic Communications) to wit: OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White, acting in concert and individually, secreted audio and video recording devices in at least one private office located at One Miami for the unlawful purpose of surreptitiously recording the Plaintiff and other individuals without their knowledge and then use any such audio and/or video recordings for unlawful and tortious purposes such as extortion and defamation.

482.    OMMA, Magid, Lasicki, and White conspired with, authorized, acted with actual knowledge, and did give implied and/or express consent to Marquis and Carlos Ruiz to install hidden audio and video recording devices that did in fact record the video and audio likeness of the Plaintiff without his knowledge or consent.

483.    The Count 7 Defendants attempted to have the Plaintiff falsely arrested by making a false criminal complaint to the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

484.    The Count 7 Defendants attempted to have the Plaintiff falsely arrested by making a false criminal complaint to the Miami-Dade State Attorney's Office's Cyber Crimes Division that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

485.    The Count 7 Defendants filed false written allegations and transmitted them via wire to the Florida Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Florida Bar (Wire Fraud).

486.     The Count 7 Defendants filed false written allegations and transmitted them via wire to the New York Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the New York Bar (Wire Fraud).

487.     The Count 7 Defendants filed used the telephone to transmit voice and information via wire to the Attorney General of Washington, D.C. that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Attorney General of Washington, D.C. (Wire Fraud).

488.     As a result of the Count 7 Defendants Conduct of or Participation in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of 18 U.S.C. §§ 1962(b) and 1962(c), the Plaintiff has suffered professional and reputational damage, financial, emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

489.     As a result of the Count 7 Defendants' violation of the Florida RICO Statute, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 8 (FLORIDA RICO CONSPIRACY)
**(Conspiracy to Conduct or Participate in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of FL Stat. § 895.03(4))**
**(Against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White)**

490.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through and including 300 and paragraphs 418 through and including 489 as if fully set forth herein.

491.     This Count 8 is against Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White (the "Count 8 Defendants").

492.    The Count 8 Defendants are associates and the principals of the OMMA-Marquis Criminal Associates.

493.    The OMMA-Marquis Criminal Association, like many racketeering endeavors began with the noble intentions of successfully governing and managing a large Downtown Miami luxury condominium complex.

494.    But when one takes the time to carefully examine the conduct of the Count 8 Defendants and the Criminal Association they operated and controlled, it becomes readily apparent that they would do whatever was necessary to hide their crimes, malfeasance, ineptitude, and incompetence.

495.    The Count 8 Defendants conducted meetings, conducted phone conferences, conducted video conferences, exchanged electronic communications including, but not limited to emails, text messages, and FaceBook "chats" in which they planned, agreed, conspired, to engage in and carry out the conduct listed above in and paragraphs 418 through and including 440 in order to achieve the goals of the OMMA-Marquis Criminal Association to wit: to hide from the public the fraud, mismanagement, malfeasance, ineptitude, incompetence, and theft of the OMMA-Marquis Criminal Association from the Plaintiff, the owners of the One Miami Condominium, and the public in general.  In addition, the Count 6 Defendants meet, discussed, agreed, and delegated the duty to extort the Plaintiff to OMMA-Marquis Criminal Association associate Martin Fenton and indeed Fenton did extort the Plaintiff by threatening to expose potentially embarrassing and damaging information about the Plaintiff's criminal conviction for conduct that occurred 25 years ago.

496.    The Count 8 Defendants conspired to engage in a multitude of racketeering activities in an effort obfuscate their fraud, waste, breach of fiduciary duties and mismanagement of the One Miami Master Association.

497.    The Plaintiff was appointed to the Board of OMMA, and nearly immediately raised to the office of President because of his business acumen, investigations background, and forensic accounting experience.

498.    Each time the Plaintiff uncovered evidence of fraud, waste, breach of fiduciary duties, and mismanagement, the Count 8 Defendants sprang into action and conspired to "bury" and/or minimize such evidence.

499.    The actions of the Count 8 Defendants went far beyond "closed door deals" and "off the record" conversations…the Count 8 Defendants slid down the slippery slope of increasing criminality.

500.    Defendants Marquis and Carlos Ruiz conspired and agreed to take, remove, embezzle, and/or transfer without permission or authority, paint and under property belonging to OMMA and the Plaintiff, and use that property to paint the personal residence of Carlos Ruiz without compensating OMMA or the Plaintiff in violation of Fl Stat. § 812.

501.    The Count 8 Defendants did conspire and agree to commit Extortion to wit: Defendants OMMA, Marquis, Magid, Kyriazis, and Fenton did meet, discuss, agree, plan, and participate in a plan whereas Fenton would approach and Fenton did approach the Plaintiff and threaten the Plaintiff that if the Plaintiff did not resign from his position as President of OMMA, then OMMA, Marquis, Carlos Ruiz, Magid, Kyriazis, and Fenton would orally and in writing inform Plaintiff's neighbors, constituents, family, friends and the public in general that Plaintiff

had a criminal conviction from conduct that occurred nearly twenty-five (25) years ago in violation of 18 U.S.C. § 1951 AND FL STAT. § 836.

502.    OMMA, Marquis, Carlos Ruiz, Kyriazis, and Magid, did conspire and agree to aid and abet, and did aid and abet Fenton in his extortion of the Plaintiff when Fenton threatened the Plaintiff that "if [Plaintiff] do[esn't] quietly resign [as President of OMMA], [Fenton and the OMMA-Marquis Criminal Association] will make sure the entire community knows all about [Plaintiff's conviction for a licensing crime that occurred nearly 25 years ago]". This violates FL Stat. § 836.   This meets the standard for a "criminal association" as defined by Florida RICO. This meets the requirement for predicate criminal conduct as defined by Florida RICO.

503.    The Count 8 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to commit** witness tampering and witness bribery, in violation 18 U.S.C. § 1512,  18 U.S.C. § 201, FL Stat. § 914 when they paid Carlos Sandoval nine thousand ($9,000.00) to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

504.    The Count 8 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to commit** witness tampering and witness bribery, in violation 18 U.S.C. § 1512, 18 U.S.C. § 201, FL Stat. § 914 when they offered employment to Carlos Sandoval to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

505.    The Count 8 Defendants and the OMMA-Marquis Criminal Association met, discussed, agreed, and **voted to** commit witness tampering and witness bribery, in violation of 18 U.S.C. § 1512,  18 U.S.C. § 201, and FL Stat. § 914 when they offered employment to Luis Ruiz

to entice, encourage, convince, aid, and/or coerce him to recant his sworn statement and commit perjury at his deposition by testifying falsely.

506.   OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White violated FL Stat. § 934 (Interception of Wire, Oral, or Electronic Communications) to wit: OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White, acting in concert and individually, met, agreed, and conspired to secrete audio and video recording devices in at least one private office located at One Miami for the unlawful purpose of surreptitiously recording the Plaintiff and other individuals without their knowledge and then use any such audio and/or video recordings for unlawful and tortious purposes such as extortion and defamation.

507.   OMMA, Magid, Lasicki, and White conspired with, authorized, acted with actual knowledge, and did give implied and/or express consent to Marquis and Carlos Ruiz to install hidden audio and video recording devices that did in fact record the video and audio likeness of the Plaintiff without his knowledge or consent.

508.   The Count 8 Defendants met, agreed, and conspired to attempt to have the Plaintiff falsely arrested by making a false criminal complaint to the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

509.   The Count 8 Defendants met, agreed, and conspired to attempt to have the Plaintiff falsely arrested by making a false criminal complaint to the Miami-Dade State Attorney's Office's Cyber Crimes Division that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

510.   The Count 8 Defendants met, agreed, and conspired to attempt to file false written allegations and transmitted them via wire to the Florida Bar that Plaintiff threatened to kill or

otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Florida Bar (Wire Fraud).

511.    The Count 8 Defendants met, agreed, and conspired to attempt to file false written allegations and transmitted them via wire to the New York Bar that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the New York Bar (Wire Fraud).

512.    The Count 8 Defendants met, agreed, and conspired to attempt to use the telephone to transmit voice and information via wire to the Attorney General of Washington, D.C. that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium in an effort to defraud the Attorney General of Washington, D.C. (Wire Fraud).

513.    As a result of the Count 8 Defendants' conspiracy to Conduct or Participate in the Conduct of an Enterprise's Affairs Through A Pattern of Racketeering Activity in Violation of Fl Stat. § 895.03(4), the Plaintiff has suffered professional and reputational damage, financial, emotional, mental, and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 9
### (Civil Conspiracy to Defame the Plaintiff)
### (Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Everman, Cashman, Brown, Beasley, Desai, Robert Szumilas, and Violetta Szumilas)

514.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

515.    This Count 9 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Everman, Cashman, Brown, Beasley, Desai, Robert Szumilas, and Violetta Szumilas (the "Count 9 Defendants").

516.    The Count 9 Defendants entered into oral and written agreements for the purpose of extorting and defaming the Plaintiff to wit:

517.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Carlos Ruiz, Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas and Desai entered into oral and written agreements entitled "Joint Interest Agreements", which, in actuality, were express conspiracy agreements for the purpose of defaming the Plaintiff to wit:  Each Defendant aided and abetted Tannebaum and Rothstein in the filing of false felony UPL allegations with the Florida and New York Bars by supplying them with documents and communications, participating in email chains, and attending "Team" meetings to plan and execute plans to prosecute meritless and false UPL Complaints.

518.    Said "Team" met, conducted organized meetings, conspired, and agreed that they will aid and abet each other in any and all conduct necessary to destroy the Plaintiff's professional reputation, and to cause the New York and Washington, D.C. Bars to disbar the Plaintiff and bar the Plaintiff from practicing law in those and other jurisdictions.

519.    Specifically, Defendants Violetta Szumilas, Robert Szumilas, Everman and Cashman supplied Tannebaum and Rothstein with multiple email messages in which Plaintiff was properly and lawfully representing himself *pro se* in litigation concerning Robert Szumilas, Violetta Szumilas and Desai.  Said emails were then added to the documents Tannebaum supplied to the Florida Unlicensed Practice of Law Department, and, indirectly, to New York Bar Grievance Committee which he then highlighted and falsely stated that they were examples of Plaintiff committing the felony of Unlicensed Practice of Law.

520.    As a result of Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Neuman, Rothstein, Dimond, Marquis, Carlos Ruiz, Brown, Beasley, Everman, Cashman, Robert Szumilas,

Violetta Szumilas and Desai's civil conspiracy to defame, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 10
### (Abuse of Process)
### (Against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)

521.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

522.    This Count 10 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 10 Defendants").

523.    Defendants Trematerra, PJT, PJT Trust and Neuman filed the first meritless UPL complaint with the Florida Bar's Unlicensed Practice of Law Department.

524.    Said complaint falsely alleged that Plaintiff was committing the felony of unlicensed practice of law by giving legal advice to persons located in Florida.

525.    After Plaintiff responded to said Complaint, Defendants Tannebaum and Bast Amron, at the direction, with the aid of, and under the supervision of, Defendants Rothstein and Dimond, submitted additional false allegations of additional instances of Plaintiff committing felony unlicensed practice of law.  There was neither truth to these allegations nor were they based in law (i.e. the Defendants claimed that Plaintiff, in representing himself *pro se* was illegally practicing law in Florida).

526.    Defendants Tannebaum and Bast Amron were experienced and recognized "experts" in the areas of attorney discipline, and, presumably, unlicensed practice of law, and therefore knew their statements to be not only false, but unsupported by the law.

527.     The Count 10 Defendants committed abuse of process by filing false, fraudulent, and baseless claims that the Plaintiff was committing multiple felonies and practicing law without a license in Florida.

528.     As a result of Count 10 Defendant's abuse of process, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 11
**(Abuse of Process – Miami Lawsuit)**
**(Against Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman)**

529.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

530.     This Count 11 is against Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond and Neuman (the "Count 11 Defendants").

531.     On or about June 27, 2023, Trematerra, PJT, PJT Trust, and Neuman filed the Miami Lawsuit against the Plaintiff.

532.     On or about December 21, 2023, Trematerra, PJT, PJT Trust, Rothstein, and Dimond filed the "Plaintiff's First Amended Complaint" in the Miami Lawsuit.

533.     The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business relationship of Trematerra, PJT, and PJT Trust.

534.     The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business expectancy of Trematerra, PJT, and PJT Trust.

535.     The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a contractual relationship of Trematerra, PJT, and PJT Trust.

536.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff defamed Trematerra, PJT, and PJT Trust.

537.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff committed negligence against Trematerra, PJT, and PJT Trust.

538.    The Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff committed the felony of Unlicensed Practice of Law and that Plaintiff was unjustly enriched by such to the detriment of Trematerra, PJT, and PJT Trust.

539.    The Plaintiff did not "tortiously interfere" with Trematerra, PJT, and/or PJT Trust's business relationships and/or contractual relationships, did not defame Trematerra, PJT, and/or PJT Trust, did not commit negligence against Trematerra, PJT, and/or PJT Trust, and did not commit the felony of Unlicensed Practice of Law therefore all statements made by Trematerra, PJT, and/or PJT Trust were false and the use of the legal and court system to adjudicate them was for an improper and unlawful purpose

540.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff tortiously interfered with a business relationship of Trematerra, PJT, and PJT Trust.

541.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, aided and abetted a breach of contract involving Trematerra, PJT, and PJT Trust.

542.    The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, aided and abetted a conversion of Trematerra, PJT, and PJT Trust membership interest in PBM Group.

543. The First Amended Complaint in the Miami Lawsuit falsely, and without a scintilla of evidence, alleged that Plaintiff, conspired to convert Trematerra, PJT, and PJT Trust membership interest in PBM Group.

544. All of the allegations made in the Miami Lawsuit are false and were made without any regard for the truth.

545. All of the allegations made in the Miami Lawsuit were made with the improper purpose of embarrassing, humiliating, and damaging the professional reputation of the Plaintiff.

546. All of the allegations made in the Miami Lawsuit were made with the improper purpose of extorting the Plaintiff into terminating his business relationship with the Other Members and Plant Based Mafia LLC.

547. All of the allegations made in the Miami Lawsuit were made with the improper purpose of defrauding the courts of the State of Florida.

548. The Count 11 Defendants intentionally misused the legal process in filing and prosecuting the Miami Lawsuit.

549. Count 11 Defendants intentionally misused the legal process in filing and prosecuting the Miami Lawsuit for the ulterior motives of defamation, coercion, extortion, and harassment.

550. As a result of Count 11 Defendant's abuse of the legal process, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 12
### (Invasion of Privacy)
**(Against Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Brown, and Beasley)**

551.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

552.    This Count 12 is against Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Brown, and Beasley (the "Count 12 Defendants").

553.    The Count 13 Defendants discussed, agreed, and conspired to secretly, illegally, and without the Plaintiff's consent, record embarrassing and humiliating audio and video recordings of the Plaintiff and then utilize said audio and video recordings to the Plaintiff's detriment.

554.    The Count 12 Defendants secretly, illegally, and without the Plaintiff's consent, recorded embarrassing and humiliating audio and video recordings of the Plaintiff and then utilized said audio and video recordings to the Plaintiff's detriment.

555.    Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White surreptitiously hid audio and video recording devices in a private office located at One Miami for the purpose of illegally recording the Plaintiff and others.

556.    Once the illegal recordings were made, Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White supplied the recordings to Defendants Brown, Beasley, and Desai for the express purpose of using the recording to harm the reputation of and to embarrass and humiliate the Plaintiff.

557.    Specifically, Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White were sophisticated enough to understand that OMMA was not permitted to release personal, confidential or embarrassing information and/or recordings of an OMMA owner (the Plaintiff) without a lawful subpoena or court order.

558.    Despite Brown, Beasley and Desai not possessing nor serving on Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, and White a lawful subpoena or court order, OMMA, Marquis, Magid, Lasicki, and White agreed to turn over, and did indeed turn over the unlawfully obtained recordings of the Plaintiff for the sole purpose of humiliating and embarrassing the Plaintiff.

559.    Despite Brown, Beasley, and Desai both being sophisticated attorneys familiar with the process of lawfully obtaining evidence, they knowingly accepted the illegal recordings and did publish them for the sole purpose of humiliating and embarrassing the Plaintiff while unlawfully relying on their pretextual use of "litigation privilege".

560.    These recordings were taken and distributed by the Count 12 Defendants in violation of FL STAT. § 934.

561.    These recordings were in the possession and control of the Count 12 Defendants.

562.    These recordings were of private conversations and actions of the Plaintiff and once in the possession of the Count 12 Defendants, the Count 12 Defendants had a duty to the Plaintiff to keep said recordings confidential.

563.    OMMA, Marquis, Carlos Ruiz, Lasicki, Magid, and White, without lawful subpoena or court order, distributed, published, and disseminated said recording to Defendants Desai, Beasley and Brown who then published said recordings by placing them in communications with other defendants and by utilizing them in motions and other court filings for the unlawful purpose of humiliating and embarrassing the Plaintiff.

564.    Despite Desai, Beasley and Brown's actual knowledge that the recordings were made and distributed in violation of FL STAT. § 934, Brown and Desai, for the sole purpose of

humiliating the Plaintiff, and in clear violation of "litigation privilege", distributed, published, and disseminated these recordings to the public by using them in a sham motion.

565.    As a result of the Count 12 Defendants invasion of the Plaintiff's privacy, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

**COUNT 13**
**(Civil Conspiracy to Commit Invasion of Privacy)**
**(Against Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Brown and Beasley)**

566.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

567.    This Count 13 is against Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Beasley and Brown (the "Count 13 Defendants").

568.    The Count 13 Defendants discussed, agreed, and conspired to secretly, illegally, and without the Plaintiff's consent, record embarrassing and humiliating audio and video recordings of the Plaintiff and then utilize said audio and video recordings to the Plaintiff's detriment.

569.    These recordings were taken and distributed by the Count 13 Defendants in violation of FL STAT. § 934.

570.    These recordings were in the possession and control of the Count 13 Defendants.

571.    These recordings were of private conversations and actions of the Plaintiff and once in the possession of the Count 13 Defendants, the Count 13 Defendants had a duty to the Plaintiff to keep said recordings confidential.

572.    OMMA, Marquis, Carlos Ruiz, Lasicki, Magid, and White, without lawful subpoena or court order, distributed, published, and disseminated said recording to Defendants Desai and Brown who then published said recordings by placing them in communications with other defendants and by utilizing them in motions and other court filings for the unlawful purpose of humiliating and embarrassing the Plaintiff.

573.    Despite Desai, Beasley, and Brown's actual knowledge that the recordings were made and distributed in violation of FL STAT. § 934, Brown and Desai, for the sole purpose of humiliating the Plaintiff, and in clear violation of "litigation privilege", distributed, published, and disseminated these recordings to the public by using them in a sham motion.

574.    As a result of the Count 13 Defendants invasion of the Plaintiff's privacy, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 14
### (Aiding and Abetting Defamation)
### (Against Defendants Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas, and Desai)

575.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

576.    This Count 14 is against Defendants Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas, and Desai (the "Count 14 Defendants")

577.    Defendants Trematerra, PJT, PJT Trust, Tannebaum, Rothstein, Dimond, Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas and Desai entered into oral and written agreements entitled "Joint Interest Agreements", which, in actuality, were express conspiracy agreements for the purpose of defaming the Plaintiff to wit: Brown, Beasley, Everman,

Cashman, Robert Szumilas, Violetta Szumilas and Desai aided and abetted Tannebaum and Rothstein in the filing of false felony UPL allegations with the Florida and New York Bars by supplying them with documents and communications.

578.   Specifically, Defendants Robert Szumilas, Violetta Szumilas, Cashman and Everman supplied Tannebaum and Rothstein with multiple email messages in which Plaintiff was properly and lawfully representing himself *pro se* in litigation concerning Robert Szumilas, Violetta Szumilas and Desai.  Said emails were then circulated among the associates of the Trematerra-Rothstein Criminal Association and Tyler Maulsby.

579.   The Trematerra-Rothstein Criminal Association through Tannebaum and Bast Amron then added said documents to the documents supplied to the Florida Unlicensed Practice of Law Department, and, indirectly, to New York Bar Grievance Committee which he then highlighted and falsely stated that they were evidence of Plaintiff committing the felony of Unlicensed Practice of Law.

580.   With the help, support, communications, and documents supplied by the Count 14 Defendants to Trematerra, PJT, PJT Trust, Tannebaum, Rothstein, and Dimond, the Trematerra-Rothstein Criminal Association were able to prosecute the false allegations of felony Unlicensed Practice of Law and the meritless Bar complaints made by those defendants to the Florida and New York Bars.

581.   As a result of the Count 14 Defendants' aiding and abetting of defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 15
### (Defamation)

**(Against Defendants Doe, Kyriazis, Lasicki, Magid, White, and Fenton)**

582.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

583.     This Count 15 is against Defendants Doe, Kyriazis, Lasicki, Magid, White, and Fenton (the "Count 15 Defendants").

584.     At all times relevant to this Amended Complaint, Kyriazis, Lasicki, and White operated, moderated, and controlled all content contained on, a Facebook Group entitled One Miami Condominium.

585.     Specifically, Kyriazis, Lasicki, and White were at all times relevant to this Amended Complaint the administrators (the "Administrators") of the "One Miami Condo Homeowners" Facebook Group (the "Group") which had over two hundred (200) members ("Members").

586.     These Members were the owners, residents, neighbors, friends, and family of the Plaintiff.

587.     The "About this Group" section of the Group stated:

> One Miami homeowners that are looking to improve our condo community and increase One Miami property value. Not affiliated with the One Miami board of directors or association. Our group is here to foster community building by sharing information, ideas, and happenings in our surrounding area. Posts that contain profanity, personal attacks, and legal implications will not be tolerated.

588.     When Facebook users who were not recognized by the Administrators as neighbors or residents of One Miami attempted to join the group, the Administrators would decline their membership requests. They would then provide feedback indicating that public records do not confirm that the user is an owner at the One Miami condominium.

589.     However, several accounts within the Group were clearly sham accounts using equally obvious pseudonyms. One such account, "Astrid Sounds," features a profile photo of a former Miss Russia beauty pageant winner. Another account, "Alex War," displays a misleading photo of a shirtless, tattooed UFC fighter. These accounts have no friends or shared photos.

590.     Kyriazis, Lasicki, and White approved, aided, promoted and encouraged these sham accounts to post defamatory content about the Plaintiff, despite the Group's policy of not allowing unknown individuals to join.

591.     Kyriazis, Lasicki, and White were, at all times, aware of the true identities behind said sham accounts. Kyriazis, Lasicki, and White admitted these sham accounts into the Group knowing in advance that the users intended to post defamatory statements about the Plaintiff. Kyriazis, Lasicki, and White encouraged them to do so in order to "make [Plaintiff] pay for what he has done."

592.     Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, the Count 14 Defendants authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] is a liar."

593.     Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, the Count 14 Defendants authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] launder[ed] drug money [from the sale of drugs] that will end up in [children's] hands…"

594.    Upon information and belief, in or around the end of June 2023 and beginning of July 2023, and upon information and belief on multiple other occasions, the Count 14 Defendants authored, published, and disseminated to owners and residents of One Miami and to other third parties, written statements on the social media platform Facebook, and in other writings that falsely state that "[Plaintiff] stated that he did not mind laundering drug money…"

595.    Plaintiff has never made any statements that Plaintiff "did not mind laundering drug money…"

596.    Plaintiff has never been accused of, charged with, indicted for, nor convicted of laundering "drug money [from the sale of drugs] that will end up in [children's] hands.

597.    As a result of the Count 15 Defendants' defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 16
### (Aiding and Abetting Defamation)
### (Against Defendants Kyriazis, Lasicki, and White)

598.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

599.    This Count 16 is against Defendants Kyriazis, Lasicki, and White (the "Count 16 Defendants").

600.    At all times relevant to this Amended Complaint, the Count 16 Defendants operated, moderated, and controlled all content contained on, a Facebook Group entitled One Miami Condominium.

601. Specifically, the Count 16 Defendants were at all times relevant to this Amended Complaint the administrators (the "Administrators") of the "One Miami Condo Homeowners" Facebook Group (the "Group") which had over two hundred (200) members ("Members").

602. These Members were the owners, residents, neighbors, friends, and family of the Plaintiff.

603. The "About this Group" section of the Group states:

> One Miami homeowners that are looking to improve our condo community and increase One Miami property value. Not affiliated with the One Miami board of directors or association. Our group is here to foster community building by sharing information, ideas, and happenings in our surrounding area. Posts that contain profanity, personal attacks, and legal implications will not be tolerated.

604. When Facebook users who were not recognized by the Administrators as neighbors or residents of One Miami attempted to join the group, the Administrators would decline their membership requests. They would then provide feedback indicating that public records do not confirm that the user is an owner at the One Miami condominium.

605. However, several accounts within the Group were clearly sham accounts using equally obvious pseudonyms. One such account, "Astrid Sounds," features a profile photo of a former Miss Russia beauty pageant winner. Another account, "Alex War," displays a misleading photo of a shirtless, tattooed UFC fighter. These accounts have no friends or shared photos.

606. The Count 16 Defendants approved, aided, promoted and encouraged these sham accounts to post defamatory content about the Plaintiff, despite the Group's policy of not allowing unknown individuals to join.

607. The Count 16 Defendants were, at all times, aware of the true identities behind said sham accounts. The Count 16 Defendants admitted these sham accounts into the Group knowing

in advance that the users intended to post defamatory statements about the Plaintiff. The Count 16 Defendants encouraged them to do so in order to "make [Plaintiff] pay for what he has done."

608.  The Count 16 Defendants aided and abetted that person or those persons that intended to publish and did indeed publish the following false statements about the Plaintiff:

> [Plaintiff] is a liar.

> [Plaintiff] launder[ed] drug money [from the sale of drugs] that will end up in [children's] hands…

> [Plaintiff] stated that he did not mind laundering drug money…

609.  The person or the persons who posted said false statements about the Plaintiff would not be able to do so but for the access, aid, encouragement, and promotion of the Count 16 Defendants.

610.  As a result of the Count 16 Defendants' aiding and abetting defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 17
### (Defamation)
### (Against Defendant Kyriazis)

611.  Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

612.  This Count 17 is against Defendant Kyriazis (the "Count 17 Defendant").

613.  In or about September 2023, the Count 17 Defendant authored, published, and disseminated a false written statement to the Florida Board of Bar Examiners and Florida Grievance committee ("Florida Bar") that Plaintiff a) threatened to kill or hurt Defendant

Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was removed as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

614.    All statements made to the Florida Bar by Kyriazis about the Plaintiff are false, were intended to "make Plaintiff pay" and to prevent Plaintiff from being admitted to Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

615.    In or about September 2023, Kyriazis authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

616.    All statements made to the New York Bar by Kyriazis about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

617.    In or about September 2023, Kyriazis authored, published, and disseminated a false oral statement to the Attorney General for Washington, District of Columbia, that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

618.    All statements made to the Attorney General for Washington, District of Columbia by Kyriazis about the Plaintiff are false were intended to have Plaintiff barred from practicing law in Washington, District of Columbia, or have him falsely arrested, and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

619.    In or about Summer 2023, Kyriazis made a false criminal complaint against the Plaintiff with the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

620.    Kyriazis' actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

621.    Kyriazis' actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

622.    Kyriazis' false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

623.    Kyriazis' false statements about the Plaintiff have caused both physical and mental injury to the Plaintiff, including, but not limited to, weight loss of more than fifteen (15) pounds, hair loss, depression, sleeplessness, anxiety, decreased libido, decreased appetite and enjoyment in eating, and lack of energy.

624.    As a result of Kyriazis defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 18
### (Defamation)
### (Against Defendant Robert Szumilas)

625.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

626.    This Count 18 is against Defendant Robert Szumilas (the "Count 18 Defendant")

627.    In or about September 2023, the Count 18 Defendant authored, published, and disseminated a false written statement to the Florida Bar that Plaintiff a) threatened to kill or hurt

Defendant Violetta Szumilas; b) threatened to kill or hurt other owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

628.    On September 9, 2023, the Count 18 Defendant then, in writing, informed several board members and a Defendant Lasicki, Defendant Kyriazis, and Defendant Desai "[I] directly wrote a letter to the FL bar [making false claims that Plaintiff threatened to kill or hurt Defendant Violetta Szumilas]."

629.    All statements made to the Florida Bar by the Count 18 Defendant about the Plaintiff are false, were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

630.    In or about September 2023, the Count 18 Defendant authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Violetta Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

631.    All statements made to the New York Bar by the Count 18 Defendant about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

632.    On September 9, 2023, the Count 18 Defendant authored, published, and disseminated a written false statement to Kyriazis, Lasicki, Violetta Szumilas, and Desai that

Plaintiff "threaten[ed] violence at [another homeowner]…something about wanting to bash his head into the pavement or something like that."

633.   The Count 18 Defendant's actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

634.   The Count 18 Defendant's actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

635.   The Count 18 Defendant's false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

636.   As a result of The Count 18 Defendant's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 19
### (Civil Conspiracy to Defame Plaintiff)
### (Against Defendants Lorraine Kyriazis and Robert Szumilas)

637.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

638.   The Count 19 Defendants ("Count 19 Defendants") are Lorraine Kyriazis and Robert Szumilas.

639.   In or about September 2023, the Count 19 Defendants, together and with Defendant Violetta Szumilas conducted meetings, exchanged documents, and exchanged communications, including, but not limited to email and text messages with each other for the purpose of defaming the Plaintiff to the Florida Bar, the New York Bar, and the Washington, D.C. Bar.

640.   In or about September 2023, the Count 19 Defendants met, made "files" about Plaintiff, communicated by text message and email messages, and communicated over the

telephone, and conspired to enact a common plan, and did indeed enact a common plan to recruit other parties to a) make false criminal allegations against the Plaintiff, and to b) file false bar complaints against the Plaintiff.

641.    On September 9, 2023, Defendant Robert Szumilas requested a meeting with several individuals, including Desai, Kyriazis and Lasicki so that "[the civil conspirators against Plaintiff will] prevail."

642.    Specifically, the Count 19 Defendants agreed to author, publish, send, and communicate statements that they knew were false with the intention of harming the Plaintiff's reputation and having him either disbarred or prevented from practicing law in the jurisdictions where they published the false statements about the Plaintiff.  Specifically:

643.    In or about September 2023, Kyriazis authored, published, and disseminated a false written statement to the Florida Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

644.    All statements made to the Florida Bar by Kyriazis about the Plaintiff are false, were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

645.    In or about September 2023, Kyriazis authored, published, and disseminated a false written statement to the New York Bar and others that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

646.    All statements made to the New York Bar by Kyriazis about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New

York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

647.    In or about September 2023, Kyriazis authored, published, and disseminated a false oral statement to the Attorney General for Washington, District of Columbia, that Plaintiff a) threatened to kill or hurt Defendant Violetta Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

648.    All statements made to the Attorney General for Washington, District of Columbia by Kyriazis about the Plaintiff are false were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Washington, District of Columbia and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

649.    In or about Summer 2023, Kyriazis made a false criminal complaint against the Plaintiff with the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

650.    Kyriazis' actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

651.    Kyriazis' actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

652.    In or about September 2023, Robert Szumilas authored, published, and disseminated a false written statement to the Florida Bar that Plaintiff a) threatened to kill or hurt Defendant Violetta Szumilas; b) threatened to kill or hurt other owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

653.    All statements made to the Florida Bar by Robert Szumilas about the Plaintiff are false, were intended prevent Plaintiff from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

654.    In or about September 2023, Robert Szumilas authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Violetta Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

655.    All statements made to the New York Bar by Robert Szumilas about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

656.    Robert Szumilas' actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

657.    Robert Szumilas' actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

658.    Robert Szumilas' false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

659.    As a result of the Count 19 Defendants' civil conspiracy to defame, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 20
### (Abuse of Process)

**(Against Defendant Kyriazis)**

660.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

661.    This Count 20 is against Defendant Kyriazis (the "Count 20 Defendant").

662.    In or about September 2023, the Count 20 Defendant authored, published, and disseminated a false written statement to the Florida Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

663.    All statements made to the Florida Bar by the Count 20 Defendant about the Plaintiff are false, were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

664.    In or about September 2023, the Count 20 Defendant authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

665.    All statements made to the New York Bar by the Count 20 Defendant about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

666.    In or about September 2023, the Count 20 Defendant authored, published, and disseminated a false oral statement to the Attorney General for Washington, District of Columbia,

that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

667.    All statements made to the Attorney General for Washington, District of Columbia by the Count 20 Defendant about the Plaintiff are false were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Washington, District of Columbia and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

668.    In or about Summer 2023, the Count 20 Defendant made a false criminal complaint against the Plaintiff with the City of Miami Police Department that Plaintiff threatened to kill or otherwise harm owners and residents at One Miami Condominium.

669.    The Count 20 Defendant's actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

670.    The Count 20 Defendant's actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

671.    The Count 20 Defendant's filed the bar complaints containing patently false statements about the Plaintiff in effort to force Plaintiff to resign from his official positions with OMMA.

672.    The Count 20 Defendant's filed the bar complaints containing patently false statements about the Plaintiff in effort to force the Plaintiff to drop the lawsuit he was prosecuting against Kyriazis' "daughter" Violetta Szumilas.

673.    The Count 20 Defendant's filed the bar complaints containing patently false statements about the Plaintiff in effort have Plaintiff wrongfully disbarred or barred from

practicing law in each jurisdiction that the Count 20 Defendant's filed her false bar complaints containing material misstatements of fact.

674. All of the allegations made by the Count 20 Defendant are false and were made without any regard for the truth.

675. All of the allegations made by the Count 20 Defendant were for the improper purpose of embarrassing, humiliating, and damaging the professional reputation of the Plaintiff.

676. All of the allegations made by the Count 20 Defendant were made with the improper purpose of defrauding the Florida Bar, the New York Bar, and the Bar of Washington, District of Columbia.

677. The Count 20 Defendant intentionally misused the legal process in filing and prosecuting the false bar complaints made to the Florida Bar, the New York Bar, and the Bar of Washington, District of Columbia.

678. The Count 20 Defendant intentionally misused the legal process in filing and prosecuting the Florida Bar complaint(s), the New York Bar Complaint(s), and the Washington, D.C. Bar complaints in for the ulterior motives of defamation, coercion, extortion, and harassment of the Plaintiff.

679. As a result of the Count 20 Defendant's abuse of the legal process, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 21
### (Abuse of Process)
### (Against Defendant Robert Szumilas)

680. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

681. This Count 21 is against Defendant Robert Szumilas (the "Count 21 Defendant").

682. In or about September 2023, the Count 21 Defendant authored, published, and disseminated a false written statement to the Florida Bar and others that Plaintiff a) threatened to kill or hurt Defendant Violetta Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

683. All statements made to the Florida Bar by the Count 21 Defendant about the Plaintiff are false, were intended to have Plaintiff either wrongly disbarred or barred from practicing law in Florida and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

684. In or about September 2023, the Count 21 Defendant authored, published, and disseminated a false written statement to the New York Bar that Plaintiff a) threatened to kill or hurt Defendant Szumilas; b) threatened to kill or hurt owners/residents at One Miami; c) was recalled as a Director of OMMA for threatening owners and/or residents at OMMA with physical violence.

685. All statements made to the New York Bar by the Count 21 Defendant about the Plaintiff are false and were intended to have Plaintiff either wrongly disbarred or barred from practicing law in New York and are defamatory *per se* as they allege Plaintiff's commission of one or more violent felonies.

686. The Count 21 Defendant's actions were intentional and deliberately calculated to damage the Plaintiff's professional and social reputation.

687. The Count 21 Defendant's actions were intentional and deliberately calculated to have the Plaintiff falsely arrested and falsely charged with criminal conduct.

688.   The Count 21 Defendant filed the bar complaints containing patently false statements about the Plaintiff in effort to force the Plaintiff to drop the lawsuit he was prosecuting against Robert Szumilas' wife, Defendant Violetta Szumilas.

689.   The Count 21 Defendant filed the bar complaints containing patently false statements about the Plaintiff in effort have Plaintiff wrongfully disbarred or barred from practicing law in each jurisdiction that the Count 19 Defendant filed hi false bar complaints containing material misstatements of fact.

690.   All of the allegations made by the Count 21 Defendant are false and were made without any regard for the truth.

691.   All of the allegations made by the Count 21 Defendant were for the improper purpose of embarrassing, humiliating, and damaging the professional reputation of the Plaintiff.

692.   All of the allegations made by the Count 21 Defendant were made with the improper purpose of defrauding the Florida Bar, and the New York Bar.

693..   The Count 21 Defendant intentionally misused the legal process in filing and prosecuting the false bar complaints made to the Florida Bar and the New York Bar.

694.   The Count 21 Defendant intentionally misused the legal process in filing and prosecuting the Florida Bar complaint(s), and the New York Bar Complaint(s), for the ulterior motives of defamation, coercion, extortion, and harassment of the Plaintiff.

695.   As a result of the Count 21 Defendant's abuse of the legal process, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

**COUNT 22**
**(Conversion)**
**(Against Defendants Carlos Ruiz and Marquis)**

696.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

697.    This Count 22 is against Defendants Carlos Ruiz and Marquis (the "Count 22 Defendants")

698.    The Plaintiff, as a partial owner of the One Miami Condominium, was the lawful owner of paint and painting materials stored at One Miami at 335 S. Biscayne Blvd, Miami, Fl 33131.

699.    In or about May 2023, the Count 22 Defendants removed, transported, and used, for Carlos Ruiz' personal use at Carlos Ruiz' own personal residence, paint and painting materials owned by the Plaintiff thus permanently depriving the Plaintiff of their use and value without the permission of the Plaintiff.

700.    As a result of the Count 22 Defendants' conversion, the Plaintiff has been damaged in an amount of no less than $1,000.00.

## COUNT 23
### (Breach of Fiduciary Duty)
### (Against Defendants OMMA, Kyriazis, Magid, Lasicki, Fenton, and White)

701.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

702.    This Count 23 is against Defendants OMMA, Kyriazis, Magid, Lasicki, Fenton, and White (the "Count 23 Defendants).

703.    The Count 23 Defendants, at all times relevant to this Complaint, were directors of OMMA, and, as such, owed fiduciary duties to the Plaintiff.

704.    The Count 23 Defendants, at all times relevant to this Complaint were officers of OMMA, and, as such, owed fiduciary duties to the Plaintiff.

705.    The Count 23 Defendants had actual knowledge that the General Manager provided to OMMA by Marquis, Defendant Carlos Ruiz, within the two (2) years immediately preceding his employment with Marquis, on or about February 18, 2021, had defrauded more than sixty (60) creditors for more than $400,000.00 and went bankrupt. Yet they allowed Carlos Ruiz to continue as General Manager with access to all of the financial accounts of OMMA.

706.    The Count 23 Defendants had actual knowledge that the General Manager provided to OMMA by Marquis, Defendant Carlos Ruiz, was alleged to have stolen assets belonging to OMMA and the Plaintiff and was further alleged to have used human resources belonging to OMMA and the Plaintiff for his own personal use, yet they allowed Carlos Ruiz to continue as General Manager with access to all of the financial accounts of OMMA

707.    The Count 23 Defendants had actual knowledge that Truist Bank had unlawfully distributed and published the social security numbers and other private, sensitive information about the Plaintiff and the other Officers and Board Members of OMMA, but disregarded the advice of OMMA's CPA and auditor, and continued to allow Truist to maintain tens of millions of dollars of OMMA's funds belonging to the Plaintiff and other stakeholders of OMMA.

708.    The Count 23 Defendants had actual knowledge that Marquis employee Roberto Duarte verbally terrorized and abused Amada Reyes in that Duarte screamed at her:

a.    "You are a dumb bitch."

b.    "You know nothing and are worthless."

c.    "Don't let those dirty Blacks sit at my computer."

d.    "I don't want any n****** sitting on my chair."

709.    Despite having acknowledge of such conduct and statements, and against the advice of legal counsel, the Count 23 Defendants allowed Marquis to conduct the entire investigation (which cleared Duarte).

710.    The Count 23 Defendants had actual knowledge that U.S. Parking and its manager were committing various frauds against OMMA resulting in financial losses to OMMA and the Plaintiff, possessed video evidence that the U.S. Parking Manager was submitting false time sheets, were aware of allegations that U.S. Parking and its Manager were stealing payroll taxes from its employees, were advised by counsel to conduct an audit of the records of U.S. Parking, yet a) failed to investigate any of the allegations, and b) renewed the OMMA / U.S. Parking contract in 2024.

711.    A reasonable person of average intelligence acting as a director and officer of a condominium complex with approximately 900 units and 1500 owners/residents would take action or request further investigation into one or more of the above listed allegations, but the Count 21 Defendants took no action to the detriment of the Plaintiff, OMMA, and its stakeholders thereby breaching the fiduciary duties they had to the Plaintiff, OMMA, and its stakeholders.

712.    As a result of the Count 23 Defendants' breaches of fiduciary duties owed to the Plaintiff, the value of Plaintiff's apartment has significantly diminished.

713.    As a result of the Count 23 Defendants' breaches of fiduciary duties owed to the Plaintiff, the Plaintiff has been damaged in an amount of no less than seventy-five thousand dollars ($75,000.00) as to be determined in the trial of this lawsuit.

## COUNT 24
### (Intentional Infliction of Emotional Distress)
### (Against Defendant Clark)

714.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

715.    This Count 24 is against Defendant Clark (the "Count 24 Defendant").

716.    The Count 24 Defendant threatened to murder the Plaintiff's wife and infant son by striking and running over them with his Bentley automobile.

717.    In or about July 2023, the Count 24 Defendant authored, published, and delivered the written threat, "If I see your lying whore wife and bastard son in the garage, I might run over them with my [Bentley]" to the Plaintiff by placing the threat under the door of the residence of the Plaintiff, his wife, and his infant son.

718.    On June 19, 2025, the Count 24 Defendant again threatened to murder the Plaintiff's wife and infant son by striking and running over them with his Bentley automobile when he stated to the Plaintiff, "Where is your whore wife walking? Let me go find the bitch!"

719.    The Count 24 Defendant's statements and actions were deliberate and intentional and done with the purpose of causing severe emotional distress in the Plaintiff.

720.    The Count 24 Defendant's statements and actions were extreme and outrageous and considered intolerable in a civilized community.

721.    The Count 24 Defendant's statements and actions directly caused the Plaintiff immediate anxiety, fear for the lives of his wife and infant son, terror, and sustain emotion distress beyond what a reasonable person should have to endure.  It was substantial and not mild.

722.    As a result of the Count 24 Defendant intentional infliction of emotional distress, the Plaintiff has suffered emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

**COUNT 25**
**(Defamation Per Se)**

**(Against Defendant Clark)**

723.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

724.    This Count 25 is against Defendant Clark (the "Count 25 Defendant").

725.    The Count 25 Defendant, on July 13, 2023, during a board meeting conducted by OMMA and in the presence of approximately twenty (20) of Plaintiff's neighbors and former constituents, falsely stated to the room, "[Plaintiff] Santoro threatened to shoot me in the head."

726.    As this false statement implies that Plaintiff threatened to commit a felony (i.e. attempted murder, murder and/or manslaughter) against the Count 25 Defendant, the statement is defamation *per se.*

727.    The Count 25 Defendant's false statement about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

728.    As a result of the Count 25 Defendant's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 26
### (Defamation By Implication)
### (Against Defendant Clark)

729.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

730.    This Count 26 is against Defendant Clark (the "Count 26 Defendant").

731.    The Count 26 Defendant, on July 13, 2023, during a board meeting conducted by OMMA and in the presence of approximately twenty (20) of Plaintiff's neighbors and former constituents, falsely stated to the room, "[Plaintiff] Santoro threatened to shoot me in the head."

732.    As this false statement implies that Plaintiff threatened to commit a felony (i.e. attempted murder, murder and/or manslaughter) against the Count 26 Defendant, the statement is defamation *per se*.

733.    The Count 26 Defendant's false statement about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

734.    As a result of the Count 26 Defendant's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 27
### (Defamation Per Se)
### (Against Defendant Magid)

735.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

736.    This Count 27 is against Defendant Magid (the "Count 27 Defendant").

737.    Defendant Clark, on July 13, 2023, during a board meeting conducted by OMMA and in the presence of approximately twenty (20) of Plaintiff's neighbors and former constituents, falsely stated to the room, "[Plaintiff] Santoro threatened to shoot me in the head."

738.    Immediately following Clark's statement, the Count 27 Defendant then stated to the entire room, consisting of other board members, employees, and Plaintiff's neighbors, "He threatened me the same way.  Now I'm scared to get in the elevators."

739.    The Count 27 Defendant does not reside in the same building tower with the Plaintiff and has never ridden in the same elevator with the Plaintiff.

740.    The Plaintiff has never threatened physical violence or "to shoot [Magid] in the head."

741.    As this false statement implies that Plaintiff threatened to commit a felony against the Count 27 Defendant, the statement is defamation *per se.*

742.    The Count 27 Defendant's false statement about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

743.    As a result of the Count 27 Defendant's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

### COUNT 28
### (Defamation By Implication)
### (Against Defendant Magid)

744.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

745.    This Count 28 is against Defendant Magid (the "Count 28 Defendant").

746.    Defendant Clark, on July 13, 2023, during a board meeting conducted by OMMA and in the presence of approximately twenty (20) of Plaintiff's neighbors and former constituents, falsely stated to the room, "[Plaintiff] Santoro threatened to shoot me in the head."

747.    Immediately following Clark's statement, the Count 28 Defendant then stated to the entire room, consisting of other board members, employees, and Plaintiff's neighbors, "He threatened me the same way.  Now I'm scared to get in the elevators."

748.    The Count 28 Defendant does not reside in the same building tower with the Plaintiff and has never ridden in the same elevator with the Plaintiff.

749.    The Plaintiff has never threatened physical violence or "to shoot [Magid] in the head."

750.    As this false statement implies that Plaintiff threatened to commit a felony against the Count 28 Defendant, the statement is defamation *per se.*

751. The Count 28 Defendant's false statement about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

752. As a result of the Count 28 Defendant's defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 29
### (Defamation)
### (Against Defendants Carlos Ruiz and Marquis)

753. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

754. This Count 29 is against Defendants Carlos Ruiz and Marquis (the "Count 29 Defendants")

755. In or about July 2023, the Count 29 Defendants did falsely state to Defendant Desai and others, "[Plaintiff] Santoro is a liar."

756. In or about July 2023, the Count 29 Defendants did falsely state to Desai and others that, "[Plaintiff] Santoro fabricated the story that he has sworn affidavits of One Miami employees."

757. In or about July 2023, the Count 29 Defendants did falsely state to Desai and others that, "[Plaintiff] Santoro lied about having physical evidence."

758. As each and every false statement made by the Count 29 Defendants and described above relates to Plaintiff's professional career and tends to injure the Plaintiff in his trade, business, or professional by imputing conduct, characteristics, or a condition incompatible with the proper exercise of his profession, all such false statements are defamation *per se*.

759. The Count 29 Defendants' false statements about the Plaintiff exposed Plaintiff to hatred, ridicule, distrust, contempt, embarrassment, and disgrace.

760.    As a result of the Count 29 Defendants' defamation, the Plaintiff has suffered professional and reputational damage, financial, emotional, mental and physical damages exceeding seventy-five thousand dollars ($75,000.00) as to be determined at trial of this lawsuit.

## COUNT 30
### (Unjust Enrichment)
### (Against Defendants Tannebaum, Bast Amron, Bast, Rothstein, Dimond, and Neuman)

761.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

762.    This Count 30 is against Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 30 Defendants").

763.    The Count 30 Defendants collectively were paid more than two million dollars ($2,000,000.00) for providing 'legal services' to Trematerra, PJT, and PJT Trust.

764.    Said 'legal services' were not truly legal services and instead paid in order to commit criminal and tortious conduct against the courts of the State of Florida, Florida Bar, and the New York Bar.

765.    Specifically, the Count 30 Defendants agreed to file knowingly false criminal allegations and did file knowingly false criminal allegations about the Plaintiff with the Florida Bar in order to defraud and materially-mislead the Florida Bar and the State of Florida for pecuniary gain, specifically to be paid monies in legal fees, in addition to attempting to cause Plaintiff to lose a valuable property right, his law license.

766.    The Count 30 Defendants accepted and have unjustly benefited from the monies paid to them by Trematerra, PJT and PJT Trust for their fraudulent, unlawful, illegal, and tortious conduct.

767.   As a direct and foreseeable result of the Count 30 Defendants having received compensation for carrying out Trematerra, PJT, and PJT Trust's improper, illegal, and unlawful requests and directions, the Count 30 Defendants have been unjustly enriched at the Plaintiff's expenses.

768.   Wherefore, the Plaintiff respectfully demands judgment for unjust enrichment against the Count 30 Defendants, compelling reimbursement and disgorgement of all compensation received by the Count 30 Defendants.

### COUNT 31
**(Tortious Interference with a Business Relationship)**
**(Against Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman)**

769.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

770.   This Count 31 is against Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 31 Defendants").

771.   Plaintiff enjoyed a profitable and rewarding business relationship with the Other Members and Plant Based Mafia.

772.   As a result of Plaintiff's business relationship with the Other Members and Plant Based Mafia, LLC, they engaged the Plaintiff's company, the Tranquility Group, LLC, and paid said company ten thousand dollars ($10,000.00) for business consultancy services.

773.   The Count 31 Defendants had direct knowledge of Plaintiff's business relationship with the Other Members and Plant Based Mafia, LLC.

774.   The Count 31 Defendants, intentionally and without justification, interfered with the Plaintiff's business relationship by filing false and meritless litigation and false criminal allegations of Unlicensed Practice of Law against the Plaintiff with the express intention of

damaging, and ultimately, terminating, the Plaintiff's financially favorable relationship with the Other Members and Plant Based Mafia, LLC.

775.     As a direct and proximate result of the Count 31 Defendants' intentional and unjustified interference with his business relationship with the Other Members and Plant Based Mafia, Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

## COUNT 32
### (Defamation *Per Se*)
### (Against Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman)

776.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 300 as if fully set forth herein.

777.     This Count 32 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 32 Defendants").

778.     Under common law, "it is established…that [a false statement] is actionable *per se* – that is, without a showing of special damages – if it imputes to another (a) criminal offense amounting to a felony…or (c) conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession, or office…" Wolf v. Kirk, 273 So. 2d 774, 777 (Fla. 4th DCA 1973).

779.     The Count 32 Defendants authored, published and disseminated numerous misleading and false statements to third parties that stated or implied that Plaintiff committed multiple felony criminal offenses including perjury and practicing law without a license in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

780.    The Count 32 Defendants authored, published and disseminated numerous misleading and false statements to third parties that Plaintiff's "conduct, characteristics or a condition [is] incompatible with the proper exercise of his lawful business, trade, profession, or office" in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

781.    The statements made by the Count 32 Defendants are demonstrably false.

782.    These false and misleading statements were published with actual malice, as the Count 32 Defendants knew that they were false and misleading, and/or at a minimum acted and published with a reckless disregard for the truth.

783.    Defendants Tannebaum and Bast Amron advertise that they practice law in the area of attorney ethics and attorney discipline and therefore knew that Plaintiff representing himself in multiple matters as a *pro se* litigant is lawful, proper, and constitutionally-protected conduct yet they still falsely and with actual malice, authored, published and disseminated said defamatory statements in their multiple UPL complaints in order to have Plaintiff suspended or disbarred from the practice of law.

784.    These false and misleading statements were published with malice, as the Count 32 Defendants made these statements in retribution and retaliation for Trematerra, PJT, and PJT Trust's lawful ouster as a member of a business he was associated with.

785.    The Count 32 Defendants did not have any applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

786.     As a direct and proximate result of the Count 32 Defendants' defamation *per se*, the Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

## COUNT 33
### (Defamation)
### (Against Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman)

787.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through and including paragraph 300 above as if fully set forth herein.

788.     This Count 33 is against Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman (the "Count 33 Defendants").

789.     The Count 33 Defendants authored, published and disseminated numerous misleading and false statements to third parties that stated or implied that Plaintiff committed multiple felony criminal offenses including perjury and practicing law without a license in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

790.     The Count 33 Defendants authored, published and disseminated numerous misleading and false statements to third parties that Plaintiff's "conduct, characteristics or a condition [is] incompatible with the proper exercise of his lawful business, trade, profession, or office" in order to severely harm and damage Plaintiff's mental and physical health, reputation, licensure, businesses, and ability to earn a living to provide for his family.

791.     The statements made by the Count 33 Defendants are demonstrably false.

792.     The Count 33 Defendants did not have any applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

793.     Defendants Tannebaum and Bast Amron advertise that they practice law in the area of attorney ethics and attorney discipline and therefore knew that Plaintiff representing himself in multiple matters as *pro se* litigant is lawful, proper, and constitutionally-protected conduct yet they still falsely and with actual malice, authored, published and disseminated said defamatory statements in their multiple UPL complaints in order to have Plaintiff suspended or disbarred from the practice of law.

794.     As a direct and proximate result of the Count 33 Defendants' defamation, the Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit

### COUNT 34
### (Negligent Supervision)
### (Against Defendants Bast and Bast Amron)

795.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through and including paragraph 300 above as if fully set forth herein.

796.     This Count 34 is against Defendants Bast and Bast Amron (the "Count 34 Defendants").

797.     The Count 34 Defendants are well-respected and well-known as a Miami litigation firm consisting of approximately twelve (12) attorneys.

798.     The name "Bast Amron" has instant recognition in the South Florida area and is associated with competent and aggressive litigators.

799.     The Count 34 Defendants engaged, retained, employed, and/or contracted with Defendant Tannebaum to serve as their "Special Counsel" during the days and times relevant to this Amended Complaint.

800.    The Count 34 Defendants engaged, retained, employed, contracted with, and/or appointed Tannebaum as their "Chair of [the Count 34 Defendant's] Ethics, Professional Responsibility, and White Collar [sic] Defense Group".

801.    The Count 34 Defendants not only publicly advertised Defendant Tannebaum as being a part of their law firm, Bast Amron, L.L.P, but dedicated an entire page of their website to Tannebaum's training, experience, and accomplishments.

802.    By advertising Tannebaum on the Count 34 Defendants' website, the Count 34 Defendants stated to the public that Tannebaum is part of Bast Amron and maintains a senior role as the only legal ethic's 'specialist' employed by Bast Amron.

803.    By allowing Tannebaum to use the physical office address of the Count 34 Defendants in Tannebaum's email signature, letterhead, and even his Florida Bar registration, the Count 34 Defendants desired current and potential clients, adversaries, and the public at large to know and understand that the Count 34 Defendants retained, employed, engaged, and/or contracted with Tannebaum for the provision of legal ethic's related legal advice and legal services.

804.    The Count 34 Defendants either knew or should have known that Tannebaum was representing to his clients, the Florida Bar, and the general public that he was acting as "Brian Tannebaum, Special Counsel to Bast Amron" as that exact language is contained in each and every electronic communication (i.e. email) authored, drafted, transmitted, and published by Tannebaum.

805.    The Count 34 Defendants either knew or should have known that Tannebaum was identifying himself as having actual authority on behalf of the Count 34 Defendants as they were advertising such to the general public.

806.   The Count 34 Defendants either knew or should have known that Tannebaum was using the Count 34 Defendants' name, reputation, good will, clout, and name recognition as a legitimate and respected law firm while Tannebaum was committing illegal and/or tortious conduct in relation to the Plaintiff.

807.   Specifically, in each and every communication with The Florida Bar, Unlicensed Practice of Law Department, Tannebaum represented that he was acting on the behalf of and as a part of the Count 34 Defendants.

808.   Specifically, each and every time Tannebaum transmitted false allegations that the Plaintiff was committing the felony of unlicensed practice of law, Tannebaum used his "Bast Amron" signature. One such example follows:

> Ms. Needelman, for the benefit of Mr. Santoro, attached is your letter to Mr. Trematerra giving until today to file a rebuttal.
>
> Thank you.
>
> **Brian Tannebaum**
> Special Counsel to Bast Amron
>
> 1 S.E. 3rd Avenue | Suite 2410 | Miami, Florida 33131
> 553 E. Tennessee Street | Tallahassee, Florida 32308
> 305.374.7850
> www.tannebaum.com

809.   The above email was authored and published by Tannebaum to Jacquelyn P. Needelman, Bar Counsel to the Florida Bar Unlicensed Practice of Law Department.

810.   Defendant Tannebaum not only identifies that he acting as "Special Counsel to Bast Amron" but also identifies the legal address of the Count 34 Defendants as 1 S.E. 3rd Avenue, Suite 2410, Miami, Florida 33131 which is the legal address of the Count 34 Defendants.

811.   In addition to Tannebaum's signature stating that he is acting as an employee, agent, fiduciary, and/or counsel, Tannebaum's signature also contains the following language:

CONFIDENTIALITY NOTE: This is my "I'm a big bad lawyer" paragraph.This e-mail may be privileged and confidential, or it may just be in good fun and some of that typical banter that friends send around the Internet. If you are not the intended recipient, pretend you didn't read it, ignore it, delete it, but please don't forward it. I could say that "dissemination, distribution or copying of this communication is strictly prohibited," but I'm not sure by whom.

812.  The above language is contained in each and every email communication authored, drafted, transmitted, and published by Tannebaum.

813.  After Tannebaum self-identifies as "a big bad lawyer" he then seemingly jokes about what an unintended recipient of potentially privileged communications should do (i.e. "pretend you didn't read it").

814.  The Count 34 Defendants held Tannebaum out to their clients, potential clients, adversaries, and the general public as being employed, engaged, and/or contracted with to act as their agent in fact.

815.  The Count 34 Defendants, upon information and belief, received countless emails from Tannebaum containing the wholly inappropriate and rogue-attorney language from Tannebaum and knew or should've known that Tannebaum was projecting a very unprofessional and unethical image to clients, potential clients, adversaries, the Florida Bar, and the general public that he was a "big bad lawyer" who believed keeping privileged information confidential was a joke (i.e. "pretend you didn't read it").

816.  The Count 34 Defendants were on notice of Tannebaum's unethical and rogue behavior.

817.  The Count 34 Defendants had a duty to diligently supervise Tannebaum once they retained, engaged, employed, and/or contracted with Tannebaum and advertised him on their website.

818.  The Count 34 Defendants had a duty to diligently supervise Tannebaum once they received any email communication from Tannebaum where he identifies himself as a "big bad

lawyer" and then flippantly makes a joke out of keeping confidential and privileged communications confidential and privileged (i.e. "pretend you didn't read it").

819.     The Count 34 Defendants allowed Tannebaum to act on their behalf in the filing of multiple false and meritless felony unlicensed practice of law allegations against the Plaintiff.

820.     The Count 34 Defendants owed a duty of care to the Plaintiff in making sure that their law firm did not take part in the violation of federal and state RICO statutes.

821.     The Count 34 Defendants owed a duty of care to the Plaintiff in making sure that their law firm was not filing false accusations of felony unlicensed practice of law against the Plaintiff.

822.     The Count 34 Defendants owed a duty of care to the Florida Bar and to the Plaintiff to ensure that Tannebaum was not using the Count 34 Defendants' reputation, clout, name recognition and good will to make sure that the Florida Bar did not use such in determining the outcome of their investigations into the Plaintiff.

823.     The Count 34 Defendants did not monitor Tannebaum's use of their email signature, Tannebaum's use of the website page on the Count 34 Defendants' website, or Tannebaum's communications with the Florida Bar.

824.     The Count 34 Defendants had a duty to ensure that Tannebaum did not use their law firm for illegal and/or tortious conduct.

825.     The Count 34 Defendants failed to adequately supervise Tannebaum this allowing him to use the Count 34 Defendants' law firm to violate federal and state RICO statutes, conspire with others to commit unlawful conduct such as extortion, wire and mail fraud.

826.     As a direct and proximate result of the Count 34 Defendants negligent supervision of Tannebaum, Plaintiff suffered financial, reputational, mental and physical damages in an

amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

## COUNT 35
### (Tortious Inference with Business Relationship)
### (Against Defendants Brown, Beasley, and Desai)

827.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through and including paragraph 300 above as if fully set forth herein.

828.    This Count 35 is against Defendants Brown, Beasley, and Desai (the "Count 35 Defendants").

829.    The Count 35 Defendants had direct knowledge of Plaintiff's business relationship with Plaintiff's wife and had direct knowledge that the Plaintiff employed Plaintiff's wife first as an intern and then as his legal assistant.

830.    The Count 35 Defendants knew or should have known that submitting false allegations to the Florida Board of Bar Examiners would indefinitely delay Plaintiff's wife's admission to the Florida Bar.

831.    The Count 35 Defendants knew or should have known that by submitting false allegations to the Florida Board of Bar Examiners would harm the Plaintiff's law practice.

832.    The Count 35 Defendants, intentionally and without justification, interfered with the Plaintiff's business relationship with Plaintiff's wife by filing false allegations with the Florida Board of Bar Examiners with the express intention of damaging the business relationship Plaintiff enjoyed with Plaintiff's wife.

833.    The Count 35 Defendants, intentionally and without justification, interfered with the Plaintiff's business relationship with Plaintiff's wife by filing false allegations with the Florida Board of Bar Examiners with the express intention of damaging the Plaintiff's law practice.

834.    As a direct and proximate result of the Count 35 Defendants' intentional and unjustified interference with his business relationship with the Plaintiff's wife, Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

<u>**COUNT 36**</u>
**(Loss of Consortium)**
**(Against Defendants Brown, Beasley, and Desai)**

835.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through and including paragraph 300 above as if fully set forth herein.

836.    This Count 346is against Defendants Brown, Beasley, and Desai (the Count 36 Defendants(.

837.    The Count 36 Defendants made false allegations and defamed the Plaintiff's wife to the Florida Board of Bar Examiners.

838.    The Count 36 Defendants knew or should have known that submitting false allegations to the Florida Board of Bar Examiners would indefinitely delay Plaintiff's wife's admission to the Florida Bar.

839.    The Count 36 Defendants knew or should have known that defaming and indefinitely delaying the Plaintiff's wife's admission to the Florida Board of Bar Examiners would cause Plaintiff's wife humiliation, embarrassment, stress, physical suffering, and financial distress but still submitted such false statements to the Florida Board of Bar Examiners.

840.    As a direct result of the harm cause to the Plaintiff's wife by the Count 36 Defendants, the Plaintiff has suffered a loss of consortium, loss of affection, solace, comfort, companionship, fellowship, society, and assistance needed for a successful marriage.

841.    As a direct and proximate result of the Count 36 Defendants' intentional harm to the Plaintiff's wife and the resulting loss of consortium suffered by the Plaintiff, Plaintiff suffered damages in an amount of no less than seventy-five thousand dollars ($ 75,000.00) to be determined at trial of this lawsuit.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Albert J. Santoro, Esq., respectfully requests that this Court:

(a)     On Count 1, enter a judgment that Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, conducted or participated in the conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(b) and 1962(c);

(b)     On Count 2, enter a judgment that Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, conspired to conduct or participate in the conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d);

(c)     On Count 3, enter a judgment that Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, conducted or participated in the conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity in violation of Fl Stat. §§ 895.03(2) and 895.03(3) (RICO);

(d)     On Count 4, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, conspired to

conduct or participate in the conduct of the Trematerra-Rothstein Criminal Association's affairs through a pattern of racketeering activity in violation of Fl Stat. § 895.03(4) (RICO);

(e)    On Count 5, enter a judgment that Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White, and each of them, conducted or participated in the conduct of the OMMA-Marquis Criminal Association's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(b) and 1962(c);

(f)    On Count 6, enter a judgment that Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White, and each of them, conspired to conduct or participate in the conduct of the OMMA-Marquis Criminal Association's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d);

(g)    On Count 7, enter a judgment that the Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White, and each of them, conducted or participated in the conduct of the OMMA-Marquis Criminal Association's affairs through a pattern of racketeering activity in violation of Fl Stat. §§ 895.03(2) and 895.03(3) (RICO);

(h)    On Count 8, enter a judgment that the Defendants OMMA, Marquis, Carlos Ruiz, Kyriazis, Magid, Lasicki, Fenton, and White, and each of them, conducted or participated in the conduct of the OMMA-Marquis Criminal Association's affairs through a pattern of racketeering activity in violation of Fl Stat. § 895.03(4) (RICO);

(i)    On Count 9, enter a judgment that Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, Neuman, Everman, Cashman, Brown, Beasley, Desai, Robert Szumilas, and Violetta Szumilas, and each of them engaged in a civil conspiracy to defame the Plaintiff;

(j) On Count 10, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman and each of them, engaged in abuse of process against the Plaintiff;

(k) On Count 11, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Rothstein, Dimond, and Neuman and each of them, engaged in abuse of process against the Plaintiff;

(l) On Count 12, enter a judgment that the Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Brown, and Beasley, and each of them, engaged in invasion of privacy against the Plaintiff;

(m) On Count 13, enter a judgment that the Defendants OMMA, Marquis, Carlos Ruiz, Magid, Lasicki, White, Desai, Brown, and Beasley, and each of them, engaged in a civil conspiracy to commit invasion of privacy against the Plaintiff;

(n) On Count 14, enter a judgment that the Defendants Brown, Beasley, Everman, Cashman, Robert Szumilas, Violetta Szumilas and Desai, and each of them, engaged in aiding and abetting defamation against the Plaintiff;

(o) On Count 15, enter a judgment that the Defendants Doe, Kyriazis, Lasicki, Magid, White and Fenton, and each of them, engaged in defamation against the Plaintiff;

(p) On Count 16, enter a judgment that the Defendants Kyriazis, Lasicki, and White, and each of them, engaged in aiding and abetting defamation against the Plaintiff;

(q) On Count 17, enter a judgment that the Defendant Kyriazis engaged in defamation against the Plaintiff;

(r) On Count 18, enter a judgment that the Defendant Robert Szumilas engaged in defamation against the Plaintiff;

(s)      On Count 19, enter a judgment that the Defendants Kyriazis and Robert Szumilas, and each of them, engaged in a civil conspiracy to commit defamation against the Plaintiff;

(t)      On Count 20, enter a judgment that the Defendant Kyriazis engaged in abuse of process against the Plaintiff;

(u)      On Count 21, enter a judgment that the Defendant Robert Szumilas engaged in abuse of process against the Plaintiff;

(v)      On Count 22, enter a judgment that the Defendants Marquis and Carlos Ruiz, and each of them, engaged in conversion against the Plaintiff;

(w)      On Count 23, enter a judgment that the Defendants OMMA, Kyriazis, Magid, Lasicki, Fenton, and White, and each of them, engaged in breach of fiduciary duty against the Plaintiff;

(x)      On Count 24, enter a judgment that the Defendant Clark engaged in intentional infliction of emotional distress against the Plaintiff;

(y)      On Count 25, enter a judgment that the Defendant Clark engaged in defamation *per se* against the Plaintiff;

(z)      On Count 26, enter a judgment that the Defendant Clark engaged in defamation by implication against the Plaintiff;

(aa)     On Count 27, enter a judgment that the Defendant Magid engaged in defamation *per se* against the Plaintiff;

(ab)     On Count 28, enter a judgment that the Defendant Magid engaged in defamation by implication against the Plaintiff;

(ac)     On Count 29, enter a judgment that the Defendants Marquis and Carlos Ruiz, and each of them, engaged in defamation against the Plaintiff;

(ad)     On Count 30, enter a judgment that the Defendants Tannebaum, Bast Amron, Bast, Rothstein, Dimond, and Neuman, and each of them, were unjustly enriched at the expense, and to the detriment, of the Plaintiff;

(ae)     On Count 31, enter a judgment that the Defendants Tannebaum, Bast Amron, Rothstein, Dimond, and Neuman, and each of them, tortiously interfered with a business relationship of the Plaintiff;

(af)     On Count 32, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, and each of them, engaged in defamation *per se* against the Plaintiff;

(ag)     On Count 33, enter a judgment that the Defendants Trematerra, PJT, PJT Trust, Tannebaum, Bast Amron, Rothstein, Dimond and Neuman, and each of them, engaged in defamation against the Plaintiff;

(ah)     On Count 34, enter a judgment that the Defendants Bast and Bast Amron, and each of them, negligently supervised Defendant Tannebaum to the detriment of the Plaintiff;

(ai)     On Count 35, enter a judgment that the Defendants Brown, Beasley, and Desai, and each of them, tortiously interfered with a business relationship of the Plaintiff;

(aj)     On Count 36, enter a judgment that the Defendants Brown, Beasley, and Desai, and each of them, defamed and/or committed other torts against the Plaintiff's wife cause Plaintiff to suffer a loss of consortium with his wife;

(ak)     award the Plaintiff compensatory and other damages against all Defendants, and each of them, jointly and severally in an amount exceeding seventy-five thousand dollars ($75,000.00);

(al)    on each Federal RICO violation, award the Plaintiff treble damages against all Defendants, and each of them, jointly and severally as allowed by law;

(am)    on each Florida RICO violation, award the Plaintiff treble damages against all Defendants and each of them, jointly and severally, as allowed by law;

(an)    award the Plaintiff exemplary and punitive damages against all Defendants, and each of them, jointly and severally, as allowed by law;

(ao)    award reasonable attorney fees, costs and prejudgment interest to the Plaintiff and against all Defendants, and each of them, jointly and severally, as allowed by law;

(ap)    award the Plaintiff such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38, Plaintiff Albert J. Santoro, Esq. hereby demands trial by jury of all issues triable of right to a jury.

Dated: July 15, 2025

Respectfully submitted,

Albert J. Santoro, Esq.
(Admitted in N.Y., D.C., and PA only)

c/o
The Bear Firm, P.C.
45 Rockefeller Plaza, 20th Floor
New York, N.Y. 10111
Telephone:    (212) 970-1099
asantoro@bearfirm.law

Plaintiff *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S FIRST AMENDED COMPLAINT was filed with the Court in person and Notice of this filing will be sent to all counsel of record through the Court's Electronic Case Filing System. I hereby further certify that I have served the following known counsel of record: Christopher Brown, Esq., Marcus A. Nielsen, Esq., and Richard Jones, Esq. via electronic mail on this 15th day of July 2025.

Dated: July 15, 2025

Miami, Florida

Albert J. Santoro, Esq.